UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLYMPIA LEVINSON STIEGELE,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD C. BAILEY, PAUL T. PRINCIPATO,<br>PETER NESSEN, THOMAS J. REILLY, DENIS<br>K. BERUBE, B.G. BECK, CHARLES E. LEVINE,<br>and WILLIAM K. AULET,<br><br>Defendants,<br><br>v.<br><br>VIISAGE TECHNOLOGY, INC.,<br><br>Nominal Defendant. | Case No. 05-10677 (MLW) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, and WILLIAM K. AULET

By their attorneys,

Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Aloknanda S. Bose (BBO #658108
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

## Table of Contents

Page(s)

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ............................................................................................................... 1

III.  SUMMARY OF ARGUMENT ........................................................................... 5

IV.   ARGUMENT ...................................................................................................... 5

      A.    For Demand To Be Excused, The Plaintiff Must Establish That A Majority
            Of The Board Have A Disabling Interest In The Putative Claim Or Are
            Dominated By An Interested Director. ................................................................ 5

      B.    Plaintiff Has Not Alleged That *Any* Director Is Interested. ...................................... 7

            1.    Plaintiffs Conclusory Allegations That Directors Failed To
                  Prevent/Correct Misrepresentations And/Or Ensure That The
                  Company Had Adequate Internal Controls Are Insufficient. ....................... 8

            2.    There Are No Allegations That Any Director's Action Caused
                  Injury To Viisage. ........................................................................ 12

            3.    Defendants' Alleged Financial Dealings With Or Concerning The
                  Company Do Not Demonstrate That Any Director Had A
                  Disabling Interest Or Potential Liability To The Company. ..................... 15

      C.    Plaintiff Has Not Alleged That *Any* Defendant Lacked Independence. ................. 18

      D.    The Exculpatory Provision In Viisage's By-Laws Requires Dismissal Of
            Plaintiff's Complaint. .......................................................................... 19

V.    CONCLUSION ............................................................................... 22

## Table of Authorities

**Page(s)**

### Cases

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ......................................................*passim*

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996)..........................................................12

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004).................................................................................................................6, 7, 18

*Boateng v. InternAmerican Univ., Inc.*, 210 F.3d 56 (1st Cir. 2000) ............................13

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .............................................................6, 18

*Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) .......................9, 10, 20

*Dellastatious v. Williams*, 242 F.3d 191 (4th Cir. 2001)..............................................20

*Gagliardi v. TriFoods Int'l Inc.*, 683 A.2d 1049 (Del. Ch. 1996)....................................9

*Goodwin v. Live Entm't, Inc.*, No. Civ. A. 15765, 1999 WL 64265 (Del. Ch. Jan. 25, 1999) , *aff'd* 741 A.2d 16 (Del. 1999)...........................................................................20

*Green v. Phillips*, C.A. No. 14436, 1996 WL 342093 (Del. Ch. June 19, 1996).........................19

*Grimes v. Donald*, 673 A.2d 1207 (Del. 1996) ...............................................................8

*Guttman v.Huang*, 823 A.2d 492 (Del. Ch. 2003).........................................6, 7, 10, 11

*Haber v. Bell*, 465 A.2d 353 (Del. Ch. 1983)................................................................17

*Heit v. Baird*, 567 F.2d 1157 (1st Cir. 1977)...................................................................6

*In re Baxter Int'l Inc. S'holders Litig.*, 654 A.2d, 1268 (1995) ....................................20

*In re CitiGroup Inc. S'holders Litig.*, No. 19827, 2003 WL 21384599 (Del. Ch. June 5, 2003) , *aff'd Rabinovitz v. Shapiro*, 839 A.2d 666, 2003 WL 22701635 (Del. Nov. 12, 2003).............................................................................................................................10

*In re Focus Enhancements, Inc. Sec. Litig.*, 309 F. Supp. 2d 134 (D. Mass. 2001).....................14

*In re Frederick's of Hollywood, Inc.*, No. C.A. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ...........................................................................................................21

*In re Lukens, Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).........................................................................20, 21

*In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160 (D. Or. 2002)...................................16

**Table of Authorities**
**Cont'd**

**Page(s)**

*In re party City Sec. Litig.*, 147 F. Supp. 2d 282 (D.N.J. 2001) .....................................16

*In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp.2d 211 (D. Mass. 1999) ...................14

*In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005)......................................21

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ...........................17

*In re Vantive Corp. Sec. Litig.* 283 F.3d 1079 (9th Cir. 2002)......................................16

*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991) .............................................5, 6

*Kaufman v. Belmont*, 479 A.2d 282 (Del. Ch. 1984) .............................................7

*Kohls v. Duthie*, 765 A.2d 1274 (Del. Ch. 2000) ..........................................19

*Landy v. D'Alessandro,* 316 F. Supp.2d 49 (D. Mass. 2004).......................................10

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001)................................................20

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998).......................1

*McMillan v. Intercargo Corp.*, 768 A.2d 492 (Del Ch. 2000) ......................................20

*Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005) .................9

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ...................................................6, 7, 18

*Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 30, 2003) ...................7

*Resolution Trust Corp. v. Driscoll*, 985 F.2d 44 (1st Cir. 1993)....................................12

*Sachs v. Sprague*, 401 F. Supp.2d 159 (D. Mass. 2005) ...................................5, 6, 7, 11

*Schaer v. Brandeis Univ.*, 432 Mass. 474 (2000) ..........................................20

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) .................................................12

*Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682 (N.D. Tex. Jan. 26, 2004).........17

*Stein v. Royal Bank of Canada*, 239 F.3d 389 (1st Cir. 2001) ......................................12

*Taddy v. Singh*, No. 1:04cv1051 slip op. at 16 (E.D. Va. December 8, 2004).......................14, 16

## Table of Authorities
### Cont'd

Page(s)

### Statutes

8 Del. C. Ann. § 102(b)(7)................................................................................................20

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 19

Fed. R. Civ. P. 23.1................................................................................................1, 6

## I.    INTRODUCTION

It is a basic tenet of corporate law that, absent extraordinary circumstances, directors -- not shareholders -- are entrusted with the decision of whether to initiate litigation on a company's behalf, and, therefore, before a shareholder can commence a derivative action in the company's name, he or she must first generally make demand on the company's board. In this case, Plaintiff has neither made a pre-suit demand nor alleged any "extraordinary circumstances" that would excuse her from doing so. Because the Complaint contains none of the particularized allegations of director interestedness or lack of independence necessary to satisfy Fed. R. Civ. P. 23.1, it must be dismissed. Additionally, the claims alleged against the director defendants, at best, amount to nothing more than putative violations of the duty of care, and the corporation's by-laws preclude liability for money damages for breach of such duty. Finally, Plaintiff has failed to allege the existence of any damage causally related to the acts of any defendant. The Complaint should, therefore, also be dismissed because it simply fails to state a claim on which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    FACTS[1]

This is a shareholder derivative action. Complaint ¶ 1. Plaintiff, Olympia Levinson Stiegele ("plaintiff") is a common stockholder in Viisage Technology, Inc. ("Viisage" or the "Company"). *Id.* ¶ 12. Nominal defendant Viisage is a Massachusetts-based technology company organized under the laws of Delaware, in the business of designing, developing, marketing, and implementing integrated software and hardware solutions that produce secure identification credentials and other biometric technologies used to deter criminal and terrorist activities. *Id.* ¶¶ 4, 13. Its products and services are geared toward creating difficult to

---

[1] Defendants take, as they must, the facts as alleged in plaintiff's Complaint as true for the purposes of this motion only. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

reproduce documents, including driver's licenses, and toward producing technology for authenticating documents and preventing identity theft. *Id.* ¶ 5. Plaintiff names seven of Viisage's then nine directors as defendants: Bernard Bailey (Viisage's CEO), Paul Principato, Peter Nessen, Thomas Reilly, Denis Berube, B.G. Beck, and Charles Levine. *Id.* ¶¶ 14, 16-21. Two Viisage directors during the relevant period, Harriet Mouchly-Weiss and Christoph von der Malsburg, are not named as defendants in the action. *Id.* ¶¶ 26, 58.[2] The eighth defendant, William Aulet, was Viisage's Senior Vice President and Chief Financial Officer, but did not serve on Viisage's board. *Id.* ¶¶ 15, 26.

Viisage suffered a $17.7 million loss in 2003. *Id.* ¶ 6. During that year, it borrowed approximately $5 million on its $7 million credit facility provided then by Lau Acquisition Corp. ("Lau"), its controlling shareholder.[3] *Id.* The Company repaid the loan from Lau with the proceeds of an August 5, 2004 follow-on pubic offering. *Id.* ¶ 42. Viisage's losses continued until the third quarter of 2004, when, on October 26, 2004, the Company reported a net profit and increased its EBITDA (earnings before interest, taxes, depreciation and amortization) projections for 2004 from a previously announced $11.5 million to $12.5 million. *Id.* ¶ 8. The Company also announced that during the third quarter it had secured a $25 million line of credit from Citizens Bank. *Id.* ¶ 44.

On December 27, 2004, Viisage issued a press release concerning litigation in Georgia regarding its contract to provide drivers licenses in that state. *Id.* ¶ 45. It announced that it had learned that day that a Georgia court had issued a summary judgment ruling that permitted Viisage to participate in a re-bid of the contract, awarded Viisage $500,000 to compensate for

---

[2] Mr. von der Malsburg was replaced in June 2004 on Viisage's board by Marcel Yon. Mr. Yon is not named as a defendant in this action.

[3] The Complaint elsewhere alleges that Lau owns only 13.8% of Viisage's common stock. Complaint ¶ 24.

monies spent by the Company under the original contract, but enjoined the State of Georgia from paying Viisage a $2 million contract termination fee previously agreed upon by the parties. *Id.*

On February 7, 2005, Viisage announced its preliminary results for the fourth quarter of 2004. *Id.* ¶¶ 10, 48. The Company reported that it would suffer a loss for that quarter. *Id.* While Viisage reported that it would meet its revenue projections, it revised downward its previous 2004 EBITDA projections of $12.5 million to $8 million - $9 million. *Id.* ¶ 46. The Company cited as reasons for the downward revision certain non-recurring charges. The largest of these charges were (i) a $2 million impairment charge related to the Georgia court's summary judgment decision and (ii) another non-cash item, the recording of a $900,000 deferred tax asset associated with a tax election related to its acquisition of a company called Trans Digital Technologies Corporation during the first quarter of 2004. *Id.* Other charges included items such as greater than expected costs associated with Sarbones-Oxley Section 404 compliance and unanticipated legal fees. *Id.*

One month later, on March 2, 2005, Viisage reported a $5.2 million loss for the fourth quarter of 2004. *Id.* ¶¶ 11, 47. It also reported that in connection with its preparation of its 2004 financials, it had determined that it had two internal control deficiencies, constituting material weaknesses. *Id.* ¶ 48. It attributed these deficiencies to insufficient personnel resources and technical accounting expertise within the accounting department to resolve non-routine or complex accounting matters and to weaknesses in its information technology systems as well. *Id.*

Less than one month later, this action was filed, without any prior demand having been made on Viisage's Board. Plaintiff brings five separate claims: breach of fiduciary duty (Second Cause of Action); abuse of control (Third Cause of Action); gross mismanagement

(Fourth Cause of Action); waste of corporate assets (Fifth Cause of Action); and unjust enrichment (Sixth Cause of Action). *See* Complaint ¶¶ 66-88. Although separately pleaded, all of plaintiff's claims are essentially the same and stem from the very same allegations of wrongful conduct. The gravamen of all of plaintiff's claims is that the defendants conspired to misrepresent the Company's true third quarter finances in an effort to secure more favorable financing for the Company, to sell personally held stock at artificially inflated prices, and to protect and enhance their directorial and executive positions at the Company. *Id.* ¶¶ 7, 38, 43. There exists, however, no meaningful allegation that this conduct actually caused Viisage any cognizable damage. It is not alleged that the financing obtained from Citizens was revoked or impaired in any way when "the Company began to admit the truth" (¶ 46) or that any defendant received a bonus, raise or other identified benefit as a result of their alleged misrepresentation of Viisage's financial position.[4]

At bottom, Plaintiff contends that she was relieved of the obligation to make pre-suit demand on the board because she named as defendants the three outside directors who constitute Viisage's audit committee, even though she alleges no specific facts regarding their conduct. This is readily apparent as the three audit committee members, together with the two other independent directors not named as defendants, constitute a majority of the then nine member board. In fact, the Complaint fails to allege with the requisite specificity a disabling interest on the part of any director defendant.

---

[4] The Complaint alleges that as a "proximate result" of defendants conduct "Viisage has sustained significant damages in excess of tens of millions of dollars" but fails to allege what these damages are, how they were sustained or what caused them. ¶ 79. Elsewhere the Complaint alleges that Defendants "caused Viisage to waste valuable corporate assets by paying bonuses," without identifying this supposed bonus or alleging any connection between third quarter results and any benefit given to any officer. ¶ 83.

### III.   SUMMARY OF ARGUMENT

On the facts alleged in the Complaint, pre-suit demand on the board of directors is *not* excused. Plaintiff's Complaint lacks the particularized allegations of director interestedness, or domination of the board by an interested director, necessary to sustain a claim of demand futility. Plaintiff has not sufficiently alleged that *any* director had a disabling financial interest that would preclude him from considering whether to file the claims set forth in this action on behalf of the Company, let alone that a *majority* of the board of directors did. Certainly, plaintiff has not alleged that *any* group of directors was under the domination of an interested director such that they would be unable to exercise their independence in making a decision. Instead, plaintiff relies on the type of generalized, conclusory allegations consistently rejected by courts in this Circuit, Delaware, and elsewhere. Finally, the director defendants are insulated from liability for the types of claims plaintiff has brought by the exculpatory provision of Viisage's by-laws and, in any event, the Complaint utterly fails to allege any injury to Viisage actually caused by any defendant. The Complaint should therefore be dismissed in its entirety, and with prejudice.

### IV.   ARGUMENT

**A.    For Demand To Be Excused, The Plaintiff Must Establish That A Majority Of The Board Have A Disabling Interest In The Putative Claim Or Are Dominated By An Interested Director.**

Derivative claims are extraordinary remedies that impinge on the "cardinal precept" of corporate law that the "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[5] A shareholder plaintiff may usurp the

---

[5] Because Viisage is a Delaware corporation, Delaware law applies to the demand analysis. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-09 (1991) (applying substantive law of state of incorporation to demand analysis); *Sachs v. Sprague*, 401 F. Supp.2d 159, 163 (D. Mass. 2005).

board's traditional role only if he or she can demonstrate, by making particularized allegations, that the board wrongfully refused, or would have wrongfully refused, "to proceed after suitable demand." *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 95-96 (1991). This demand requirement "insure[s] that a stockholder exhausts his intracorporate remedies, and . . . provide[s] a safeguard against strike suits." *Aronson*, 473 A.2d at 811-12. *See also Sachs v. Sprague*, 401 F. Supp.2d 159, 163 (D. Mass. 2005).

A plaintiff who foregoes pre-suit demand on the board must then "allege with particularity . . . the reasons . . . for not making the effort." *See* Fed. R. Civ. P. 23.1; *see also Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) ("Rule 23.1 is not satisfied by conclusory statements or mere notice pleading . . . What the pleader must set forth are particularized factual statements that are essential to the claim.") (citations omitted). This is also known in the case law as "demand futility." To establish demand futility the plaintiff must plead with particularity facts which cast a "reasonable doubt" as to a *majority* of the board's disinterestedness or independence. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993); *Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003). Plaintiff must consider each director individually and cannot rely on wholesale allegations made against the board or a group of directors as a whole. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046, 1049-50 (Del. 2004). These Rule 23.1 requirements have "been vigorously enforced" in the First Circuit. *See Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977).

Turning first to the question of "interest," in the context of pre-suit demand, directors are entitled to a presumption of disinterest. *Sachs*, 410 F. Supp.2d at 164 (*citing, Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004). Where, as here, no specific board action is challenged (such as the Board's approval of an identified corporate transaction) to plead adequately that a

director is "interested," a complaint must allege specific facts demonstrating that the director faces a substantial likelihood of personal liability in the present lawsuit. *Id. See also, Rales*, 634 A.2d at 936; *Aronson*, 473 A.2d at 815 ("mere threat of personal liability . . . is insufficient").

With respect to independence, to plead a director's lack of independence, a plaintiff must allege specific facts that create reasonable doubt as to whether that director is "so 'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'" *Beam*, 845 A.2d at 1050 (*quoting Rales*, 634 A.2d at 936). Essentially, a plaintiff must allege that the director is dominated by the interested director to such a degree that he or she would be "more willing to risk his or her reputation than risk the relationship with the interested director." *Id.* at 1052.

If a derivative plaintiff fails to carry the burden of demonstrating that a majority of the Board is either "interested" or dominated by an interested director, then demand is not excused, and the complaint must be dismissed. *Kaufman v. Belmont*, 479 A.2d 282, 286, 289 (Del. Ch. 1984).

**B.    Plaintiff Has Not Alleged That *Any* Director Is Interested.**

Plaintiff attempts to allege that the director defendants were interested in two ways.

*First*, plaintiff alleges that there is a substantial likelihood that 7 of Viisage's then 9 directors would be found liable for breaches of their fiduciary duties because of their intentional misconduct and/or failing to perform certain oversight duties. *See* Complaint ¶ 26.[6] Plaintiff

---

[6] As mentioned previously, plaintiff does not name two of Viisage's nine directors -- Harriet Mouchly-Weiss and Christoph von der Malsburg (or his replacement, Marcel Yon) -- as defendants, thereby conceding their disinterestedness and independence. Defendants' analysis, therefore, will focus exclusively on the seven directors who are named as defendants and whose disinterestedness and/or independence plaintiff attempts to challenge. For the purposes of the demand requirement, defendant William Aulet's disinterestedness and independence is irrelevant because he was not on the Viisage board and therefore was not in a position to consider any pre-suit demand. *See Guttman v. Huang*, 823 A.2d at 503 n.22 (three non-director defendants have "little bearing on the demand excusal analysis for an obvious reason: they are not on the board"); *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *9 n.47 (Del. Ch. Oct. 30, 2003) ("for purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant").

contends that each of the seven defendants breached his/her duty by failing to prevent the Company's material misrepresentations and then failing to correct them after they were made. *Id.* ¶ 59(d). She further singles out defendants Nessen, Reilly and Levine because they served on the board's audit committee, which allegedly failed in its accounting oversight function. *Id.* ¶ 59(c).

More specifically, plaintiff alleges that defendants: (1) artificially inflated the Company's third quarter 2004 financials to make the Company more attractive to potential lenders (Complaint ¶ 7); (2) caused the Company to conceal the facts that it was misrepresenting its financial performance from operations and its future business prospects (Complaint ¶¶ 33, 43); (3) caused the Company to conceal certain other facts, including that the Company was not likely to receive a $2 million payment from the State of Georgia in connection with the settlement of the Georgia litigation (Complaint ¶ 51); and (4) failed to ensure that the Company maintained adequate internal controls and systems necessary for accurate reporting of financial results. (Complaint ¶ 59).

*Second*, plaintiff attempts to allege that certain directors were interested because there is a substantial likelihood that they would be found liable based on their financial dealings with the Company. *See* Complaint ¶¶ 59(a) and (b).

Neither attempt by plaintiff succeeds in adequately alleging the interestedness of any director, let alone a majority of the board.

      **1.**    **Plaintiffs Conclusory Allegations That Directors Failed To Prevent/Correct Misrepresentations And/Or Ensure That The Company Had Adequate Internal Controls Are Insufficient.**

As an initial matter, demand is not excused simply because the directors cannot be expected to sue themselves. *Aronson*, 473 A.2d at 818. *See also Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996) ("[d]emand is not excused simply because plaintiff has chosen to sue

all directors . . . To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets."), *overruled in part on other grounds by Brehm*, 746 A.2d at 253; *Gagliardi v. TriFoods Int'l Inc.*, 683 A.2d 1049, 1055 (Del. Ch. 1996) ("[I]t is well-established that the simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy etc., will not [excuse demand].").

Plaintiff, therefore, must rely on her allegations of the directors' wrongdoing. She does not, however, allege that any non-officer defendant made a misrepresentation of any kind and therefore is likely to incur liability for it.[7] Rather, plaintiff alleges that each defendant director failed to fulfill his directorial duties by failing to prevent misrepresentations made by the Company concerning its financials or to correct those misrepresentations once they had been made. Plaintiff also alleges that three defendants -- Messrs. Nessen, Reilly, and Levine -- as members of the board's audit committee, are likely to incur liability based on the Company's failure to maintain adequate internal controls and financial reporting systems.

Both types of claims fall within the rubric of *Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). Under *Caremark* and its significant progeny, a derivative plaintiff attempting to plead a failure to supervise claim must plead specific facts demonstrating that the directors were aware of or recklessly disregarded the internal control deficiencies or manipulation of financial results. *See Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966, at *6 (N.D. Cal. Jan. 14, 2005) (complaint failed to show that directors "face a substantial likelihood of liability under a *Caremark* claim theory" where "nothing alleged with particularity that reasonably raises the inference that the director defendants were aware of any possible

---

[7] Certain alleged misrepresentations are attributed to Bernard Bailey the only officer of Viisage who was a member of the board. *See* Complaint ¶ 44.

9

manipulation of the financial results."); *In re CitiGroup Inc. S'holders Litig.*, No. 19827, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) (demand not excused where no allegations "that the directors either knew or should have known that there were material inadequacies in the corporation's internal controls"), *aff'd Rabinovitz v. Shapiro*, 839 A.2d 666, 2003 WL 22701635, at *1 (Del. Nov. 12, 2003). *See also Guttman*, 823 A.2d at 507 (rejecting as inadequate purported *Caremark* claim where no "red flags" brought alleged accounting irregularities to the directors' attention.). This type of failure to supervise claim is especially difficult to plead and prove because it "premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs." *Landy v. D'Alessandro*, 316 F. Supp.2d 49, 74 (D. Mass. 2004) (*quoting Guttman*, 823 A.2d at 506). In the words of the *Caremark* court, "[t]he claim . . . that the directors . . . violated a duty to be active monitors of corporate performance . . . is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967. This is especially so where, like this case, all but one of the Company's directors (Bailey) were true outside directors, *i.e.*, they had no role as an officer or employee of the Company and were not involved in its day-to-day affairs.

Here, specifics regarding any "red flags" are completely missing from the Complaint. Instead, the Complaint relies on the wholly generic allegation that "[a]s a result of their access to and review of internal corporate documents; conversations and connections with corporate officers, employees and directors; and attendance at management and Board meetings," each defendant "knew the adverse non-public information which made the representations made by the Company false and misleading." Complaint ¶ 59. The Complaint, however, fails to identify in even the most cursory way any internal corporate document, conversation, or meeting that allegedly revealed adverse non-public information to any defendant, or what information was

supposedly revealed.  Nor does plaintiff describe the internal controls in place at the Company, how they were deficient, what the audit committee did or did not do to review them or what effect, if any, the deficiencies had on the Company's financial statements.  *Cf. Guttman*, 823 A.2d at 507 (complaint failed to excuse lack of demand on audit committee members because, among other reasons, it failed to plead that the committee "devoted patently inadequate time to its work, or . . . had clear notice of serious accounting irregularities.").

A recent case from this Circuit drives home this point.  *See Sachs v. Sprague*, 401 F. Supp.2d 159 (D. Mass. 2005).  In *Sachs*, the court dismissed the shareholder plaintiff's derivative suit because he failed to make pre-suit demand.  That plaintiff had alleged that a majority of the board was interested because they faced a substantial likelihood of liability stemming from their failure to assure that the Company had in place an adequate system of internal controls.  The court found plaintiff's allegations wanting:  "[h]ere, there are no allegations concerning the absence of such a system [of internal controls] that might give rise to the inference that there was a sustained and systematic failure of the board to exercise oversight . . . .  Nor are there any particularly pled facts supporting an inference that the directors . . . possess[ed] knowledge of facts suggesting potential . . . improprieties . . . and took no action to respond to them."  *Id.* at 165 (quotations and citations omitted).  The court went on to explain "[w]hen offering a lawsuit *on behalf of* a corporation, plaintiffs have an obligation to show clearly, as a preliminary matter, that the corporation lacks the capacity to protect its own interests.  When they fail to do this, dismissal is proper."  *Id.* at 169.

The instant case is no different.  Here, like in *Sachs*, the Complaint contains only generalized, conclusory allegations and no specifics.  The Court need not accept plaintiff's unsupported conclusions, bald assertions, or legal interpretations.  *See, e.g., Stein v. Royal Bank*

*of Canada*, 239 F.3d 389, 392 (1st Cir. 2001); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (1st Cir. 1993). In the absence of well-pled factual allegations, plaintiff's claim of failed board oversight amounts to mere conjecture. *See Seminaris v. Landa*, 662 A.2d 1350, 1354, 1355 (Del. Ch. 1995) (allegations that directors failed to prevent CEO from misrepresenting company's financial condition did not demonstrate a substantial likelihood of personal liability.). Conclusory allegations about participation and knowledge of the sort on which the Complaint relies are not enough. *See Aronson*, 473 A.2d at 817.

### 2.    There Are No Allegations That Any Director's Action Caused Injury To Viisage.

These conclusory allegations also fail to explain how any directors caused monetary loss to Viisage. Plaintiff suggests that the Company inflated its third quarter 2004 financial results in order to secure more favorable bank financing than it had in place. *See* Complaint ¶ 7. But plaintiff also alleges that the Company repaid its previous loan to Lau in the middle of the third quarter with the proceeds of a secondary offering that closed in August. *See* Complaint ¶ 42. Moreover, in the very Analysts Conference in which the Company announced its third quarter 2004 financial results, it also announced that it had already reached agreement with Citizens Bank on a new line of credit. *See id.* ¶¶ 43, 44. There exists no allegation that this line was dependant on certain third quarter results. In consequence, the allegations of the Complaint actually preclude any inference that the Company used artificially inflated third quarter financial results to obtain funds to pay off the Lau loan or to obtain more favorable financing. The financing had already been secured by the time the results were announced.

Even more significantly, for the allegedly false representations to give rise to liability, they must have caused injury. There are no allegations in the Complaint that Citizens took any

steps to withdraw or foreclose its line of credit when the fourth quarter results were announced, or even that Citizens ever expressed dissatisfaction with its decision to enter into a banking relationship with Viisage or with Viisage's financial reporting.

Plaintiff's pleading problems run deeper than just those relating to the bank loan. In her Complaint, plaintiff heralds the fact that the Company reported in March, 2005, material weaknesses in its internal controls and systems. *See* Complaint ¶¶ 48, 59(c). Yet, nowhere does plaintiff explain the significance of these material weaknesses or whether they ever had any effect on the Company's reported financial results. They did not. *See* Viisage Technology Inc.'s Form 10-K for the year ended December 31, 2004, which was filed with the Securities and Exchange Commission on June 30, 2005. A copy of the Form 10-K is attached to the Affidavit of Aloknanda S. Bose ("Bose Aff.") submitted herewith as Exhibit A.[8] The Company's reported financial results did not change even after the internal control weaknesses were identified and addressed. *See* Form 10-K at 46 ("There were no changes to any reported financial results that have been released by the Company in this or any other filing as a result of these identified deficiencies. The impact of the above conditions was relevant to the fiscal year ended December 31, 2004 only and did not affect the results of this period or any prior period.").

Nor do plaintiff's allegations of overly optimistic EBITDA projections for the fourth quarter 2004 support a substantial likelihood of directorial liability. *See* Complaint ¶ 46. The mere fact that actual EBITDA for the quarter was less than that projected is an insufficient basis, in and of itself, from which to infer that the directors knew or should have known that the projections were faulty. *See In re Focus Enhancements, Inc. Sec. Litig.*, 309 F. Supp. 2d 134,

---

[8] The Court can take judicial notice of the Company's SEC filings because they are in the public record. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) ("court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment").

160 (D. Mass. 2001) ("clearly insufficient" for plaintiffs to allege "that because of the announced restatement, the defendants must have known of the problems at the time they occurred."); and *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp.2d 211, 223 (D. Mass. 1999) (fact that reporting errors subsequently corrected does not "suffice to show that [] misstatements occurred knowingly or recklessly"). And, once again, there is no allegation that Viisage suffered loss as a result of the fact that the fourth quarter forecast was not achieved.

Finally, all that is left is a general allegation that the Company should have taken a $2 million charge to earnings relating to the Georgia litigation before the fourth quarter and vague allegations that the Company was forced to spend thousands of dollars on attorney and accounting fees relating to the internal control deficiencies and a securities class action lawsuit based thereon. Neither supports a substantial likelihood of director liability. Again, plaintiff alleges no particularized facts to support an inference that the directors should have known that the Company should have taken the $2 million charge to earnings earlier than it did.[9] And exposure to securities lawsuits does not excuse demand. As the court explained in *Taddy v. Singh ("Primus")*, if the filing of a federal securities lawsuit were sufficient by itself to excuse demand, a shareholder could "always be assured of avoiding the demand requirement simply by including allegations of securities violations," or by filing two complaints instead of one. *Primus*, No. 1:04cv1051 slip op. at 16 n.13 (E.D. Va. December 8, 2004). A copy of this case is attached to the Bose Aff. as Exhibit B.[10]

---

[9]  It may be noted that Viisage's outside auditors concluded that the $2 million impairment charge was recorded in the proper quarter as they rendered their opinion that the Company's 2004 financial statements were fairly presented according to GAAP without requiring any restatement. *See* Ex. A, at 51.

[10]  Plaintiff herself seems to doubt the merits of the federal securities class action lawsuit filed against the Company and certain of its officers and directors, seeking, unsuccessfully, to stay her derivative claim pending the Court's determination as to whether those class action plaintiffs had pled a cognizable claim. *See* Docket Item # 3 (Plaintiff's Motion to Stay).

3. **Defendants' Alleged Financial Dealings With Or Concerning The Company Do Not Demonstrate That Any Director Had A Disabling Interest Or Potential Liability To The Company.**

Perhaps cognizant of the Complaint's shortcomings in alleging directorial misconduct, plaintiff claims disabling director interest by alleging that that there is a substantial likelihood that two directors would be found liable based on financial transactions with or concerning the Company. *See* Complaint ¶¶ 59(a) and (b). She does not, however, allege any such disabling financial interest with respect to the other five director defendants and the two non-defendant directors, and so falls far short of demonstrating that there is a substantial likelihood that a majority of the board faces liability on this basis. The Court therefore need not parse these financial transaction allegations further to determine whether they establish demand futility. However, if the Court were to consider them, it would quickly discern that they are equally flawed.

Plaintiff alleges that defendant Denis Berube's company, Lau Acquisition sold $2.8 million of Viisage stock during the relevant period and had a financial interest in the Company's performance. *See* Complaint ¶¶ 19, 59(a), (d). She also alleges that defendant B.G. Beck received a payment of principal and interest equaling one-third of a $15.3 million loan he made to the Company and, therefore, similarly had a financial interest in the Company's performance. *Id.* ¶¶ 59(b), (d).[11] Finally, she alleges obliquely that defendants Bernard Bailey and Paul Principato similarly had stakes in the Company's performance, Bailey because he was Viisage's

---

[11] Plaintiff also alleges that both Berube and Beck were paid consultants to the Company, *see* Complaint ¶¶ 19, 20, but does not allege that they are disinterested by reason of those consulting arrangements, nor could she. *See id.* ¶ 59.

15

CEO, and Principato because he was an executive at Lau. *Id.* at ¶ 59(d).[12]  None of these

financial ties disables any of these defendants from considering plaintiff's demand.

Plaintiff's allegation that defendant Berube indirectly benefited from Lau Acquisition's

sale of $2.8 million of Viisage stock lacks the specifics necessary to demonstrate a disqualifying

interest.  The Complaint does not allege when the sale was made, whether Mr. Berube or Lau

possessed material non-public information at the time of the sale, and if they did, what that

information was.  Indeed, the Complaint does not even allege what percentage of its Viisage

holdings Lau sold or retained.  In fact, the Complaint alleges that Lau owns approximately

13.8% of the Viisage's common stock (*see* Complaint ¶ 24), although Viisage's SEC filings

reflect only an 11.8% ownership interest.  In any event, it seems clear that Lau actually sold a

very small percentage of its holdings in Viisage.  Without these specifics, plaintiff's insider sale

allegations do not allege wrongdoing.  Plaintiff must allege either particular facts showing that

the insider trading was made on the basis of material non-public information or particular facts

from which wrongful intent can be inferred, such as trading at suspicious times and in suspicious

amounts. *See Primus*, slip op. at 14-15; *In re Vantive Corp. Sec. Litig.* 283 F.3d 1079, 1094 (9th

Cir. 2002) (sale of only 13% of shares "belies any intent to rid himself of a substantial portion of

his holdings"); *In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160, 1169-70 (D. Or. 2002) (two-

month gap between sales and adverse disclosure negates any inference of scienter); *In re party

City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) ("A broad temporal distance between

stock sales and a disclosure of bad news defeats any inference of scienter.").  Because there are

---

[12] Plaintiff apparently confuses interestedness with independence when she alleges, without explanation, that these stakes render these two defendants "not independent," rather than interested. *See* Complaint ¶ 59(d).  The fact that a director may not be "independent" because he is also an officer and employee of the company, does not mean that he is "interested" in the claims at issue and cannot fairly decide, as a director, whether it is in the corporation's best interest to pursue them.

no such allegations here, Lau's stock sales do not make Mr. Berube an interested director. *See also Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682, at *5 (N.D. Tex. Jan. 26, 2004).

Nor does Viisage's partial repayment of a loan to defendant B.G. Beck render him "interested." Again, plaintiff's cryptic allegation is woefully short on specifics. Plaintiff does not bother to allege when the loan was made, its purpose, or even when it was partially repaid; even though the details of this loan are fully explained in the Company's SEC filings.[13] The most that can be read into this allegation is that Viisage repaid indebtedness to Mr. Beck when due and in the ordinary course. There is nothing suspicious about a lender receiving partial repayment in such circumstances, and nothing from which the Court can infer any wrongdoing by Mr. Beck.

Nothing alleged concerning Mr. Berube's or Mr. Beck's financial transactions suggest that either may be liable to Viisage as a result of anything alleged in the Complaint. In consequence, they are not "interested directors."

In sum, plaintiff's conclusory allegations, unsupported by any allegations of particularized facts, do not show a substantial likelihood that a majority of the defendant directors will be liable such that the directors can be said to be interested and pre-suit demand excused. *See also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) (under Delaware law, "general allegation that the Board participated in the fraudulent scheme . . . [is] insufficient to demonstrate that the Board engaged in conduct that resulted in a substantial risk of personal liability."); *Haber v. Bell*, 465 A.2d 353, 359 (Del. Ch. 1983).

---

[13]  Viisage entered into the loan in partial payment for Mr. Beck's interest in TDT in connection with Viisage's acquisition of that company in February 2004. *See* Exhibit A at 66.

Finally, as discussed below in Section D, the exculpatory provision in Viisage's by-laws insulates the director defendants from the types of liability plaintiff alleges, thereby further diminishing, if not altogether eliminating, any likelihood that they could be found liable to Viisage and therefore "interested."

### C.    Plaintiff Has Not Alleged That *Any* Defendant Lacked Independence.

The second prong of the *Aronson* analysis, and the second way in which a shareholder plaintiff can satisfy Rule 23.1 and plead demand futility in the absence of an identifiable pecuniary interest, is to allege that a majority of the board's directors lacked independence from an interested director. A director lacks independence where he or she is so "beholden" to another director who is interested that he or she would be willing to risk his or her reputation rather than sue the interested director. *Beam*, 845 A.2d at 1052. If the Court concludes that *no* director is interested, it need not consider the question: is any director dominated by another director? *See Rales*, 634 A.2d at 936 (court considered independence of presumptively disinterested directors only after finding other directors interested); *Brehm*, 746 A.2d at 258 (no need to determine director's independence from individual once determination was made that individual was disinterested).

As the Complaint contains no particularized allegations that any director was interested, the Court could end its analysis there. In any event, the Complaint also contains no particularized allegations that any director or group of directors was controlled by, or dominated, any other. Instead, it alleges obliquely that two of the directors, Messrs. Berube and Principato, had ties to Lau. Under Delaware Law, directors do not lack independence simply because they share outside professional or personal associations or relationships. *See Beam*, 845 A.2d at 1050 ("to render a director unable to consider demand, a relationship must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside business relationship, standing

alone, are insufficient to raise a reasonable doubt about a directors' independence."). *See also Kohls v. Duthie*, 765 A.2d 1274, 1284 (Del. Ch. 2000) (the "law is clear that evidence of personal and/or business relationships does not raise an inference of self-interest.") (quotations and citations omitted); *Green v. Phillips*, C.A. No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996) ("long-standing personal and business ties . . . are insufficient to overcome the directors' presumption of independence"). Clearly, the Complaint's allegations are not enough to raise a reasonable doubt as to the independence of these two directors. But more to the point, the Complaint does include any allegation that challenges the independence of seven of the then nine board members. Clearly, demand is not excused due to lack of directorial independence.

**D.    The Exculpatory Provision In Viisage's By-Laws Requires Dismissal Of Plaintiff's Complaint.**

Apart from the fact that plaintiff has failed to plead demand futility, she has also failed to plead a cognizable claim on the part of Viisage against any defendant. The Complaint is therefore also subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failing to state a claim on which relief may be granted.

Although plaintiff brings five separate causes of action (breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment), in the absence of any *factual* allegation allowing a reasonable inference of bad faith or knowing violation of law, the Complaint, at best, charges a breach of the duty of care. *Compare In re Lukens, Inc. S'holders Litig.*, 757 A.2d 720, 728-29 (Del. Ch. 1999) (at most complaint alleged breaching duty of care where complaint contained "only the most meager allegations" about the

19

director defendants), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).[14] Under Delaware law, corporations are permitted to adopt bylaws that eliminate liability for monetary injury arising from a breach of the duty of care. *See* 8 Del. C. Ann. § 102(b)(7); *see also, Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del. 2001) ("[W]here the factual basis for a claim *solely* implicates a violation of the duty of care, [the courts have] indicated that the protections of [an exculpatory provision in a corporate charter] may properly be invoked and applied." (citations omitted)). As noted above, Viisage has adopted just such a charter provision:

> No director of Viisage shall be personally liable to the Corporation or to any of its stockholders for monetary damages for breach of fiduciary duty as a director [within the bounds of Delaware law] . . . .

*See* Restated Certificate of Incorporation of Viisage Technology, Inc., Article VIII, attached to the Bose Aff. as <u>Exhibit C</u>.[15] Because Viisage's corporate charter explicitly exculpates its directors from any liability for breach of the duty of care, this Complaint must be dismissed as to them. *See, e.g., Malpiede*, 780 A.2d at 1094 (upholding 12(b)(6) dismissal of derivative action on basis of exculpatory charter provision); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 501-02 (Del Ch. 2000) (dismissing claim because of exculpatory charter provision, effect of which "is to guarantee that the defendant directors do not suffer discovery or a trial simply because the plaintiffs have stated a non-cognizable damages claim for a breach of the duty of care"); *In re*

---

[14] A breach of a director's duty of care is characterized by Delaware law as "gross negligence" towards the corporation and does not involve self-interest. *See Aronson*, 473 A.2d at 812. *See also In re Caremark*, 698 A.2d at 967, 968-69 (classifying allegation that directors "violated a duty to be active monitors of corporate performance" as violation of duty of care rather than duty of loyalty); *Dellastatious v. Williams*, 242 F.3d 191, 196 (4th Cir. 2001) (citing *Caremark* in applying duty of care standard to directors' alleged failure to monitor); *Goodwin v. Live Entm't, Inc.*, No. Civ. A. 15765, 1999 WL 64265, at *19 n.10 (Del. Ch. Jan. 25, 1999) ("[e]xciting rhetoric about 'double double crosses' does not substitute for record evidence from which inferences of bad faith, intentional non-disclosures can be drawn."), *aff'd* 741 A.2d 16 (Del. 1999).

[15] It is proper for courts to take judicial notice of the Company's certificate of incorporation in deciding a motion to dismiss. *See Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000) (court can consider "matters of public record" in evaluating motion to dismiss); *In re Baxter Int'l Inc. S'holders Litig.*, 654 A.2d, 1268, 1270 (1995) (noting propriety of taking judicial notice of certificate of incorporation in deciding a motion to dismiss).

*Frederick's of Hollywood, Inc.*, No. C.A. 15944, 2000 WL 130630, at *6 n.12 (Del. Ch. Jan. 31, 2000) ("It is well established [under] Delaware law that an exculpatory provision in a certificate of incorporation . . . shields the corporation's directors against a judgment for money damages" for breach of a duty of care); *In re Lukens Inc. S'holders Litig.*, 757 A.2d at 734 (dismissal on grounds of exculpatory provision is warranted where "[c]omplaint alleges, if anything, only a breach of the duty of care").

As explained above, the Complaint contains no allegation that any director had a financial interest in a transaction or even that he personally made some factual misrepresentation. At bottom, the Complaint does nothing more than allege a failure to monitor -- a paradigm example of an allegation that implicates only the duty of care.

As to defendants Bailey and Aulet, respectively, CEO and CFO of Viisage, the Complaint makes no allegation that they undertook any act as an officer that caused injury to Viisage. To the extent that the Complaint is read to include allegations that they made material misrepresentations that artificially inflated the price of Viisage's stock, this might give rise to direct claims by shareholders who purchased stock at inflated prices, but not to derivative claims. *See, e.g., In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 3 (1st Cir. 2005) (claim of inflated share price alleged in 10b-5 class action).

## V.    CONCLUSION

For the foregoing reasons, plaintiff's Complaint should be dismissed in its entirety and with prejudice.

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, and WILLIAM K. AULET

By their attorneys,


/s/ John R. Baraniak, Jr.
Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Aloknanda S. Bose (BBO #658108
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated:  February 13, 2006

4038733_1.DOC