UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OLYMPIA LEVINSON STIEGELE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| BERNARD C. BAILEY, PAUL T. PRINCIPATO, PETER NESSEN, THOMAS J. REILLY, DENIS K. BERUBE, B.G. BECK, CHARLES E. LEVINE, and WILLIAM K. AULET, | ) ) ) ) | Case No. 05-10677 (MLW) |
| Defendants, | ) ) ) | |
| v. | ) ) ) | |
| VIISAGE TECHNOLOGY, INC., | ) ) ) | |
| Nominal Defendant. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, and WILLIAM K. AULET

By their attorneys,

Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Aloknanda S. Bose (BBO #658108)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

## TABLE OF CONTENTS

Page(s)

I.    ARGUMENT ............................................................................................................. 2

    A.    Plaintiff Does Not Allege Particularized Facts Indicating Any Defendant
        Was Involved in Any Fraudulent Scheme. ............................................................ 3

        1.    Plaintiff does not identify the fraud. ........................................................ 3

        2.    Plaintiff does not allege particularized facts of any defendants'
            knowledge of the fraud. ............................................................................. 7

    B.    Plaintiff Does Not Allege A Lack Of Board Oversight That Would Give
        Rise To Director Liability Under *Caremark*. ..................................................... 10

    C.    Plaintiff's Allegations of Stock Sales By Certain Defendants Do Not Give
        Rise To A Substantial Likelihood Of Their Personal Liability And
        Therefore A Disabling Interest. .......................................................................... 12

    D.    Plaintiff Has Not Alleged That Any Director Lacks Independence. ..................... 16

    E.    Plaintiff Has Not Alleged That Any Defendant Conduct Has Caused The
        Company Damage. .............................................................................................. 17

II.    CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Beam ex rel Martha Stewart Living Omnimedia, Inc. v. Stewart,*
   845 A.2d 1040 (Del. 2004) .................................................................................. 8, 16, 18

*Felker v. Anderson,*
   No. 04-0372-CV-W-ODS, 2005 WL 602974 (W.D. Mo. February 11, 2005) ......... 12

*Fina v. Calarco,*
   No. X01CV030180263S, 2005 WL 3112894 (Conn. Super. Sept. 16, 2005) ............ 8

*Guttman v. Huang,*
   823 A.2d 492 (Del. Ch. 2003) ........................................................................... 8, 12

*In re Abbott Lab. Derivative S'holders Litig.,*
   325 F.3d 795 (7th Cir. 2003) .................................................................................. 11

*In re Apple Computer Sec. Litig.,*
   886 F.2d 1109 (9th Cir. 1989) .................................................................................. 6

*In re Biogen Sec. Litig.,*
   179 F.R.D. 25 (D. Mass. 1997) ................................................................................ 6

*In re Cendant Corp. Derivative Action Litig.,*
   189 F.R.D. 117 (D.N.J. 1999) ....................................................................... 9, 12, 18

*In re Computervision Corp. Sec. Litig.,*
   869 F. Supp. 56 (D. Mass. 1994) ............................................................................. 7

*In re First Energy S'holder Derivative Litig.,*
   320 F. Supp. 2d 621 (N.D. Ohio 2004) .................................................................. 12

*In re Oracle Corp.,*
   867 A.2d 904 (Del. Ch. 2004) ................................................................................ 18

*In re Oxford Health Plans, Inc. Sec. Litig.,*
   187 F.R.D. 133 (S.D.N.Y. 1999) ........................................................................... 11

*In re Oxford Health Plans, Inc. Sec. Litig.,*
   192 F.R.D. 111 (S.D.N.Y. 2000) ..................................................................... 10, 11

*In re Polymedica Corp. S'holder Derivative Litig.,*
   No. 01-3446, 2002 WL 1809095 (Mass. Super. July 16, 2002) .............................. 14

*In re Seachange Int'l, Inc. Sec. Litig.,*
   No. 02-12116, 2004 U.S. Dist. LEXIS 1687 (D. Mass. February 6, 2004) ............... 5

## TABLE OF AUTHORITIES
### (Cont'd)

*In re Stratosphere Corp. Sec. Litig.*,
   No. CV-S-96-708-PMP, 1997 U.S. Dist. LEXIS 14621 (D. Nev. May 20, 1997) ...................7

*In re Taser Int'l S'holder Derivative Litig.*,
   No. CV-05-123-PHX-SRB, 2006 WL 687033 (D. Ariz. March 17, 2006) ...............................9

*In re Viisage Technology, Inc. Sec. Litig.*,
   Civil Action No. 05-cv-10438-MLW ...........................................................................6, 10

*In re White Elec. Designs Corp. Sec. Litig.*,
   No. CV04-1499PHX-SRB, 2006 U.S. Dist. LEXIS 6961 (D.Ariz. Feb. 14, 2006)...................7

*Kaplan v. Kahn*,
   No. C-93-020015 RPA, 1994 WL 618473 (N.D. Cal. Oct. 25, 1994) ........................................6

*Keane v. Navarro*,
   345 F. Supp. 2d 9 (D. Mass. 2004)..........................................................................................1

*McSparran v. Larson*,
   No. 04 C 0041, 04 c 4778, 2006 WL 250698 (N.D. Ill. January 27, 2006) .......................12, 15

*Miller v. Suffolk County House of Correction*,
   No. CIV.A.01-11331-DPW, 2002 WL 31194866 (D. Mass. Sept. 27, 2002)...........................1

*Rand v. Cullinet Software, Inc.*,
   847 F. Supp. 200 (D. Mass. 1994)...........................................................................................6

*Saito v. McCall*,
   No. Civ. A. 17132-NC, 2004 WL 3029876 (Del. Ch. Dec. 20, 2004) ......................................12

*Taam Assocs., Inc. v. Housecall Medical Res., Inc.*,
   No. 1:96CV2214 A JEC, 1998 U.S. Dist. LEXIS 22372 (N.D. Ga. March 31, 1998) ..............7

*Taddy v. Singh ("Primus")*,
   No. 1:04cv1051 slip op. at 16 (E.D. Va. Dec. 8, 2004)...........................................................17

*Waterson v. Page*,
   978 F.2d 1 (1st Cir. 1993) ........................................................................................................5

*White v. H&R Block, Inc.*,
   No. 02-CV-8965, 2004 WL 1698628 (S.D.N.Y. July 28, 2004)................................................6

*Wieglos v. Commonwealth Edison Co.*,
   892 F.2d 509 (7th Cir. 1989).....................................................................................................5

# TABLE OF AUTHORITIES
## (Cont'd)

*Wietschner v. Monterey Pasta Co.,*
  294 F. Supp. 2d 1102 (N.D. Cal. 2003)......................................................................................13

*Zimmerman v. Braddock,*
  No. Civ. A. 18473-NC, 2005 WL 2266566 (Del. Ch. Sept. 8, 2005) ...........................15, 16, 18

## Other Authorities

Fed. R. Civ. P. 23.1.............................................................................................................................7

Fed. R. Civ. P. 9(b)............................................................................................................................7

## Introduction

This case is an example of the now routine practice of the plaintiffs' bar reflexively filing a derivative action against a company's directors and officers immediately after a securities class action has been filed against the company. Plaintiff's confidence in the independent merits of her claim is perhaps best expressed by her unsuccessful motion requesting that this Court stay any activity in this derivative action until this Court had decided the then-anticipated motion to dismiss the securities class action. *See* Docket Entry 3, filed May 25, 2005. The inadequacy of the facts actually alleged in the derivative Complaint is further underscored by Plaintiff's Response and Opposition (the "Opposition" or "Opp.") which, in large measure, relies not on what is alleged in the Complaint, but rather on "facts" first alleged in the Opposition. For example, in a footnote to the section entitled "Factual Allegations," the Opposition advises the Court that: "[a]ny allegations made in the previous four paragraphs that were not made in the Complaint could be so alleged, upon amendment." Opp. at 7, n.2. *See also* Opp. p. 7, n.3 and n.4 and at 9, n.5. Plaintiff then goes on to assert in the body of the text that she "has alleged with particularity" matters set out in her Opposition, but not in the Complaint. *See, e.g.*, Opp. at 11, 16 and 18.

It is axiomatic that a plaintiff may not amend a complaint in an opposition brief[1]; and Defendants were, of course, only able to move to dismiss based upon the allegations that were actually set out in the Complaint. Nonetheless, this Reply Memorandum will address both that which is alleged in the Complaint and in the Opposition because, collectively, they do not

---

[1] *See Keane v. Navarro*, 345 F. Supp. 2d 9, 12 (D. Mass. 2004) ("On a motion to dismiss . . . the Court confines itself to the allegations of the Complaint."); *Miller v. Suffolk County House of Correction*, No. CIV.A.01-11331-DPW, 2002 WL 31194866, at *2 n.1 (D. Mass. Sept. 27, 2002) (plaintiff may not present new allegations in response to dispositive motion).

establish either demand futility or that any claim on which relief may be granted has been adequately pled.

Plaintiff pays lips service to her burden of pleading particularized facts of director interestedness or lack of independence, while failing to point to any such facts either in her Complaint, or in the proposed amendments to it. Instead, she relies on wholly conclusory allegations of "false financial statements" and director knowledge of fraud and nonfeasance, without even attempting to delineate in what way the financial statements were actually false or what the directors knew and when. Unlike virtually all of the cases cited in the Opposition, Viisage was never required to restate any financial report, and Plaintiff never identifies what items should have been restated nor in which financial report. She also relies on alleged insider sales which, on review, do not begin to support a finding of substantial likelihood of director personal liability, as she fails to allege when the sales were made, what percentage of a defendant's stock was sold, or whether there was anything unusual about the sale. Plaintiff's Opposition exposes her Complaint as long on rhetoric, but short on particularized facts. Plaintiff's Complaint should be dismissed.

## I.    ARGUMENT

Plaintiff argues that she has adequately pleaded demand futility by alleging that: (1) Defendants engaged in a fraudulent scheme by knowingly misrepresenting the Company's financial results in the third quarter of 2004; (2) the directors exercised a "complete lack of control and oversight" of the Company's affairs; and (3) certain directors engaged in unlawful insider sales while in possession of material, non-public, adverse information about the Company. According to Plaintiff, for each of these reasons there is a substantial likelihood that at least a majority of the board members face personal liability such that they suffer from a disabling interest precluding them from passing on any pre-suit demand. Plaintiff further argues

2

that certain directors lacked the independence to freely consider such a demand. Even a brief analysis of Plaintiff's allegations discloses that her conclusions are unsupported by any allegations of fact, let alone particularized factual allegations.

**A.  Plaintiff Does Not Allege Particularized Facts Indicating Any Defendant Was Involved in Any Fraudulent Scheme.**

**1.  Plaintiff does not identify the fraud.**

Plaintiff argues that she has alleged that Defendants failed "to disclose material information to the public," (Opp. at 1), engaged in a "fraudulent scheme" "to create an artificial profit in the third quarter of 2004," *id.* at 3-4, which profit was "engineered by improperly recognizing corporate benefits," *id.* at 5, and "accounting chicanery." *Id.* at 8. However, the Complaint not only fails to set out particularized allegations of fact indicating that any defendant, let alone the outside directors, was aware that any of these fraudulent acts were occurring, it fails to identify what the alleged fraudulent representations were. Unlike the cases Plaintiff cites in her brief, here Plaintiff has utterly failed to take even the very first step in identifying what the fraud was. She claims that defendants Bailey and Aulet "made numerous materially false and misleading statements in press releases and conference calls with analysts," Opp. at 11, citing Complaint ¶¶ 43, 44, but does not identify which of the statements alleged therein were false, nor why they were false. She says that each director defendant "engage[d] in securities fraud to the detriment of the Company" by "disseminating to the public false and misleading statements concerning the Company's financial condition and results," Opp. at 11, yet fails to identify a single reported financial result which was restated or otherwise known to be false. One cannot read either the Complaint or the Opposition and discern what item in any financial report Plaintiff contends was materially misstated.

3

Plaintiff argues that the defendants were motivated to commit fraud so that the Company could report rosy third quarter results to "accomplish its goal of replacing its inadequate credit line." She also argues that defendants signed SEC reports and other documents that render them liable to Viisage. *See* Opp. at 4, 11. These contentions are not tethered to any allegation of fraudulent financial reporting and do not advance her position.

First, Plaintiff herself alleges that the Company secured substitute bank financing during the third quarter of 2004, *before* any third quarter results were available or reported. *See* Opp. at 4-5; Complaint ¶ 44. It follows, therefore, that the Company did not and could not use falsely inflated third quarter results before they were even available to improve its balance sheet. Moreover, Plaintiff conspicuously fails to allege that any injury followed from these false statements, such as a lender declaring a default or withdrawing credit when the "truth" was supposedly disclosed. *See* Defendants' Opening Brief at 12-13.

To the extent Plaintiff identifies the time period in which the financial fraud occurred, it appears limited to matters reported in Viisage's third quarter financial results. However, only defendant Bailey, the Chief Executive Officer, and defendant Aulet, the Chief Financial Officer but not a director, signed the Form 10-Q for the third quarter. Outside directors do not generally sign Forms 10-Q. The only SEC filing (indeed the only document) that the outside directors are alleged to have executed (in the Opposition) are the Forms S-3 and S-3/A filed by Viisage in connection with the August 5, 2004 follow-on offering -- the last of which was filed on July 22, 2004. Opp. at 7, n.3. A prospectus prepared in July obviously could say nothing about third quarter results. There is therefore actually no allegation that defendants Principato, Nessen, Reilly, Berube, Beck or Levine signed any document "containing false information."

The closest Plaintiff comes to identifying any financial reporting error is the allegation that the Company should have taken a $2 million impairment charge relating to the Georgia driver's license litigation in the third quarter, rather than the fourth quarter of 2004. But Plaintiff herself alleges that the Georgia court did not invalidate $2 million of the $2.5 million that Georgia had agreed to pay Viisage until the very end of the fourth quarter, and Viisage's own independent auditors obviously agreed with Viisage's judgment to take the charge in Q4, as evidenced by their opinion that the Company's 2004 financial statements properly reported its financial results.[2]

Finally, Plaintiff, almost as an afterthought, alleges that the Company "omitted material information regarding" the Georgia litigation, thereby concealing its "wrongdoing," *see* Opp. at 5, which led to the Court's summary judgment order barring the State of Georgia from paying the Company $2 million of the settlement amount. *See* Opp. at 6, 13. There are two basic problems with this allegation serving as the basis of a fraud claim.

First, as defendants explain in greater detail in their motion to dismiss the securities class action, they had no duty to handicap the likely outcome of the litigation. *See In re Seachange Int'l, Inc. Sec. Litig.*, No. 02-12116, 2004 U.S. Dist. LEXIS 1687, at *27 (D. Mass. February 6, 2004) (holding that company had no duty to predict the outcome or estimate the impact of litigation); *Wieglos v. Commonwealth Edison Co.*, 892 F.2d 509, 518 (7th Cir. 1989) (company

---

[2] Plaintiff's allegations of false Q3 2004 financial results appears to be carried over from allegations made in several of the eight original securities fraud class action complaints filed but since abandoned in the recently-filed consolidated amended securities class action complaint. The securities class action plaintiffs no longer allege that Viisage's Q3 2004 results were falsely reported, most likely because Viisage's 2004 financial statements received a clean opinion from its outside auditors and no restatement was ever required. *See* Form 10-K/A for the year ended December 31, 2004, pp.49-52, attached as <u>Exhibit A</u> to the Transmittal Affidavit of Aloknanda Bose ("Bose Aff.") submitted herewith.

The Court can consider SEC filings and other public documents, the authenticity of which is not challenged, on a motion to dismiss without converting the motion into one for summary judgment. *See, e.g., Waterson v. Page*, 978 F.2d 1, 3-4 (1st Cir. 1993) (noting that "court may properly look beyond the complaint to matters of public record" in ruling on a motion to dismiss).

not required to disclose probability that tribunal will deliver a particular decision); *White v. H&R Block, Inc.*, No. 02-CV-8965, 2004 WL 1698628, at *10 (S.D.N.Y. July 28, 2004); *Kaplan v. Kahn*, No. C-93-020015 RPA, 1994 WL 618473, at *8 (N.D. Cal. Oct. 25, 1994) (company "need not admit fault or accuse itself of copyright violation in its own disclosures when describing the nature of adverse litigation."). Both Viisage and the State of Georgia vigorously contested the claim that Viisage did anything wrong, and Viisage was under no duty to predict that the Georgia court would find otherwise. The existence of the litigation, the entry of the preliminary injunction enjoining performance under Viisage's contract with Georgia, and the economic impact that an adverse decision would have on the Company, were both promptly and fully disclosed by Viisage. *See In re Viisage Technology, Inc. Sec. Litig.*, Civil Action No. 05-cv-10438-MLW; Docket Entry 41.

Second, a claim for fraud based on allegedly concealed information cannot be based on information publicly available and known in the market. This long-recognized defense, aptly named the "truth on the market" defense, negates any reliance by Plaintiff on the alleged fraud because the allegedly omitted information would have entered the marketplace and have been incorporated in the company's share price, thereby eliminating any artificial price inflation caused by the alleged fraud. *See, e.g.*, *Rand v. Cullinet Software, Inc.*, 847 F. Supp. 200, 206-7 (D. Mass. 1994) and cases cited therein. *See also In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1111-12 (9th Cir. 1989); *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 36-37 (D. Mass. 1997). That Viisage was a named defendant in the action, that Viisage had been accused of wrongdoing, and that the Georgia court had issued a TRO and then a preliminary injunction all was immediately publicly available from the Georgia court files and known to the marketplace. For

this reason, defendants are not subject to a substantial likelihood of personal liability based on the alleged non-disclosure or untimely disclosure of any of these facts.[3]

Because Plaintiff bases her allegations of director interestedness on the substantial likelihood that a majority of the board faces personal liability for securities fraud, she must plead that fraud with the particularity required by Fed. R. Civ. P. 9(b), in addition to Fed. R. Civ. P. 23.1's requirement of allegations of particularized fact. *See, e.g., In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994); *In re White Elec. Designs Corp. Sec. Litig.*, No. CV04-1499PHX-SRB, 2006 U.S. Dist. LEXIS 6961, at *26 (D.Ariz. Feb. 14, 2006); *Taam Assocs., Inc. v. Housecall Medical Res., Inc.*, No. 1:96CV2214 A JEC, 1998 U.S. Dist. LEXIS 22372, at *40 (N.D. Ga. March 31, 1998); *In re Stratosphere Corp. Sec. Litig.*, No. CV-S-96-708-PMP, 1997 U.S. Dist. LEXIS 14621, at *20 (D. Nev. May 20, 1997). Clearly, she has failed to do so.

## 2.    Plaintiff does not allege particularized facts of any defendants' knowledge of the fraud.

Plaintiff makes no serious argument that she has alleged particularized facts that any defendant knew of any fraud. She alleges only that each of them signed earlier SEC filings (not even the filing which allegedly was false) and three defendants – Nessen, Reilly and Levine – were members of the Company's Audit Committee. Opp. at 7-8, 11-12. She cites generic, boilerplate allegations that "as a result of their access to and review of" unspecified internal corporate documents and participation in "conversations" with others and attendance at management and Board meetings, each defendant "knew the adverse non-public information

---

[3]    Moreover, the Company's disclosure of the Court's summary judgment order *was* timely. Plaintiff faults defendants for not causing the Company to disclose the Georgia court's December 22, 2004 order until 5 days later, on December 27. Opp. at 6. This Court, however, can take judicial notice of the fact that December 22, 2004 was the Wednesday before Christmas, and only one business day passed between the date on the Decision and the day Viisage issued its press release, which was the same day the wire services reported it.

which made the representations made by the Company false and misleading." Complaint ¶ 59(c). Such allegations are not "particularized facts" which would give rise to "a substantial likelihood" of personal liability. They are mere conclusions which do not help Plaintiff satisfy her pleading burden. *See, e.g., Beam ex rel Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1048 (Del. 2004) ("Conclusory allegations are not considered as expressly pleaded facts or factual inferences."). Indeed, every director reviews documents, engages in conversations, and attends meetings. If this was all that was necessary for a Plaintiff to allege fraudulent knowledge, then no motion to dismiss any fraud case or any derivative case based on alleged fraud would ever be granted, and Rule 23.1's particularity requirement would be meaningless.

The cases Plaintiff relies upon underscore the inadequacy of her Complaint. In *Fina v. Calarco,* No. X01CV030180263S, 2005 WL 3112894, at *7 (Conn. Super. Sept. 16, 2005), the court held that the director-defendants' signature on the SEC filing containing the allegedly false financials could give rise to a "bevy of remedies – both criminal and civil" and therefore raised a reasonable doubt as to these directors' disinterestedness and independence. Such is not the case here; only Bailey, the CEO, signed the allegedly false third quarter 10-Q. In any event, the Connecticut Superior Court applied the incorrect standard. Nowhere does it discuss why merely signing an SEC filing, without more, gives rise to a substantial likelihood of personal liability. Rather, that generally requires particularized pleadings demonstrating that the directors knew the financials were false or that they ignored numerous "red flags" that should have alerted them to the problem implying that they had abdicated their oversight responsibilities. *See Guttman v. Huang,* 823 A.2d 492, 507 (Del. Ch. 2003).

The court in *In re Taser Int'l S'holder Derivative Litig.*, No. CV-05-123-PHX-SRB, 2006 WL 687033 (D. Ariz. March 17, 2006) did not, as Plaintiff states, find that demand was excused where three out of four outside directors were on the audit committee and "could not possibly approve" the company's press release and earnings guidance without knowing how the quarter was progressing. *See* Opp. at 12. That is what the Plaintiff in that case alleged, not what the court based its ruling upon. The court held that demand was excused because defendants conceded the interestedness of the inside directors, and three of the four outside directors sold 100% of their stock in Taser for a combined total of $13.4 million only a few weeks after the allegedly false positive announcements. *In re Taser*, 2006 WL 687033, at *9-10. The instant case is not remotely similar.

Finally, as defendants pointed out in their Opening Memorandum, merely being named as a defendant in a securities class action is not enough to give rise to a substantial likelihood of personal liability of any defendant. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Verified Shareholder Derivative Complaint "Opening Memorandum" at 14 and case cited. Plaintiff's citation to *In re Cendant Corp. Derivative Litig.*, 189 F.R.D. 117, 124-25 (D.N.J. 1999), is inapposite. *Cendant* does not hold that simply being named as a defendant in a securities litigation disables a director from considering a shareholder demand. In *Cendant*, the plaintiffs alleged, in part, that the audit committee was specifically informed that income was overstated by $23 million and could not be reconciled; that the accounting irregularities were so basic that they were discovered after one day of investigation; that the officers and directors were told that in excess of $100 million of income was non-recurring; that more than $200 million in adjustments were necessary to meet budget; and that 10 directors sold approximately 4 million shares. *Id.* By contrast, here, there was no restatement of any reported financial result and no

9

allegation that any director was told that any financial reporting error of any kind had occurred. Plaintiff's allegations in this case nowhere approach pleading this type of board knowledge and responsibility for accounting irregularities that would raise a substantial likelihood of liability and excuse demand.[4]

### B.    Plaintiff Does Not Allege A Lack Of Board Oversight That Would Give Rise To Director Liability Under *Caremark.*

Plaintiff argues that her Complaint establishes a substantial likelihood of the defendants' personal liability, giving rise to an incapacitating director interest, by alleging a "complete lack of control and oversight by the officers and directors of the Company as evidenced by the serious internal control deficiencies admitted by the Company." Opp. at 1. She singles out defendants Nessen, Reilly, and Levine, because they were all Audit Committee members, *see* Opp. at 14, and therefore, according to her reasoning, engaged in "particularly egregious" conduct by not "ensuring that an effective system of internal financial accounting controls existed." *Id.* In her rhetoric, Plaintiff loses sight of the fact that she has failed to identify a single item falsely reported in any financial statement.

Each of the cases Plaintiff cites as supporting this argument involve widespread and egregious financial reporting fraud. For example, in *In re Oxford Health Plans, Inc. Sec. Litig.*, 192 F.R.D. 111 (S.D.N.Y. 2000), the plaintiffs pleaded detailed facts demonstrating that the

---

[4] At pages 5-7 the Opposition parrots argument from the Amended Consolidated Class Action Complaint filed against Viisage regarding the litigation arising out of the award of a contract to Viisage to provide drivers' licenses in Georgia after competitive bidding. In a decision on cross motions for summary judgment in a suit brought by the losing bidder, the Georgia Superior Court did find misconduct on the part of Viisage in connection with its bid submission. That misconduct involved the submission of certain sample drivers licenses and whether a back-up facility to manufacture the licenses had been secured by Viisage at the time the bid was submitted. Both Viisage and the State of Georgia disputed these findings. In any event, there is no allegation either in the derivative Complaint or the Opposition that any outside director of Viisage had been informed regarding the conduct of unnamed Viisage employees responsible for putting together the materials to bid on this contract. The Georgia Superior Court's decision is discussed more fully in Viisage's brief in support of its motion to dismiss the securities class action complaint. *See In re Viisage Technology, Inc. Sec. Litig.*, Civil Action No. 05-cv-10438-MLW; Docket Entry 41.

defendants were aware of the nature and magnitude of the company's computer problem and that its financial statements were based on inherently unreliable data, including that: (i) the CEO/Chairman was told by the chief information officer that the planned computer conversion could not be done reliably; (ii) defendants received a report from an outside consultant informing them that the computer system was deficient; (iii) defendants had a state insurance department report indicating that the company's internal controls and accounting practices were deficient; and (iv) defendants knew the system could not age the premiums receivable or unpaid claims. *Id.* at 114, referring to *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 139 (S.D.N.Y. 1999). The Court makes reference to "allegations of misconduct in connection with the knowing or reckless issuance of materially false statements concerning financial results and operations of the company." *Id.* at 117.[5]

Similarly, the facts pleaded in *In re Abbott Lab. Derivative S'holders Litig.*, 325 F.3d 795, 799-801 (7th Cir. 2003), contrast starkly with those in this case. In *Abbott*, the court excused demand where, over a six year period, the directors were aware that the FDA had inspected 13 of the company's facilities, issued formal written warnings to the company, imposed a compliance program with which the company failed to comply (the noncompliance with which the company disclosed to the SEC), and prohibited the company from selling certain products and fined the company $100 million.

By contrast, here, we have no restatement, no particularized allegation of any falsely reported financial result, no allegation of regulatory problems. All we have is the Company's disclosure on February 7, 2005, that it had determined "in connection with the preparation of the Company's consolidated statements for the year ended December 31, 2004" that it "had an

---

[5] In this decision, Judge Brieant "assumes familiarity" with the complaint in the *Oxford Securities Litigation* and the magnitude of the Oxford financial fraud is not described in this opinion.

internal control deficiency that constitutes a 'material weakness" as defined by the Public Accounting Oversight Board's Accounting Standard No. 2" due to "insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters." Complaint ¶ 48. This deficiency, which ultimately led to no change in the Company's reported results, surfaced only sometime in the month it was disclosed, unlike the much more serious and longstanding issues alleged in the cases Plaintiff cites. In *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003), the Court held that plaintiff failed to establish demand futility, even in the face of a restatement that covered three years of financial reports because, among other reasons, the complaint failed to plead that the audit committee members "devoted patently inadequate time to its work, or . . . had clear notice of serious accounting irregularities."[6]

**C.    Plaintiff's Allegations of Stock Sales By Certain Defendants Do Not Give Rise To A Substantial Likelihood Of Their Personal Liability And Therefore A Disabling Interest.**

The Opposition contends that four defendants – Messrs. Berube, Beck, Levine, and Reilly are interested because they engaged in illegal insider sales of Viisage shares while in possession of non-public, material adverse information about the Company, thereby subjecting themselves to a substantial likelihood of personal liability. *See* Opp. at 8-9, 16-17. Plaintiff argues that she

---

[6] The other cases cited by plaintiff to support their *Caremark* claim also lend no support. *Cendant* involved hundreds of millions of dollars in obvious accounting adjustments. *See In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 124-25 (D.N.J. 1999) and page 9, *supra*. In *McSparran v. Larson*, No. 04 C 0041, 04 c 4778, 2006 WL 250698, at *1-2 (N.D. Ill. January 27, 2006), the court found that the complaint "identifie[d] specific information the defendants supposedly had in their possession that should have alerted them to" falsification of corporate records and manipulation of data so that the company could receive federal funds. In *Saito v. McCall*, No. Civ. A. 17132-NC, 2004 WL 3029876, at *7 (Del. Ch. Dec. 20, 2004), the court found well-pled facts that board members were aware of significant accounting irregularities, including specific information concerning $40 to $55 million of accounting issues. The court in *Felker v. Anderson*, No. 04-0372-CV-W-ODS, 2005 WL 602974, at *3 (W.D. Mo. February 11, 2005), found that the complaint there "particularly allege[d]" defendants were involved in the dissemination of false information and breached fiduciary duties. Finally, in *In re First Energy S'holder Derivative Litig.*, 320 F. Supp. 2d 621, 624 (N.D. Ohio 2004), demand was automatically excused as a matter of Ohio law, contrary to the Delaware law applicable here, because all of the directors were named in the complaint as wrongdoers *and* defendants.

12

"need only plead facts which support the inference" that each sale was entered into and completed on the basis of, and because of, adverse material non-public information, *id.* at 16, and that she has done this by alleging that these directors signed certain SEC filings, *id.*, and their sales were "unusual and suspicious in that [they] occurred almost immediately after the release of the artificially rosy third quarter report." *Id.* at 9. Plaintiff's conclusory allegations are both insufficient and inconsistent with publicly available information.

As a preliminary matter, the alleged stock sales by defendants Beck, Levine, and Reilly are not referenced in the Complaint. Even if considered, these new allegations set out in the Opposition are incomplete. Plaintiff states that the sales were made "[d]uring the Relevant Period," Opp. at 8, but never explains what she means by that. Nor does plaintiff provide specifics as to the number of shares these individuals sold on any identified date, nor how many shares each director retained.

For example, Plaintiff alleges that defendant Levine sold 9,000 shares of Viisage stock, but she does not allege when. Defendants presume that any offending sales must have occurred in the fourth quarter, *i.e.*, after third quarter results were announced. Each of Levine's fourth quarter sales were made pursuant to a pre-existing SEC Rule 10b5-1 trading plan adopted by Mr. Levine in 2002. *See* Bose Aff., Exhibit B (copies of Mr. Levine's Form 4's). The purpose of adopting a 10b5-1 trading plan is to avoid being accused of having "entered into and completed [a stock sale] on the basis of, and because of, adverse material non-public information." *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003) (the existence of a trading plan supports the reasonable inference that stock sales were "pre-scheduled and not suspicious."). Certainly, if Plaintiff was able to review SEC Forms 4 to identify Mr. Levine's trades, she would have learned that they were made pursuant to a trading plan. Moreover, the

amount of shares sold by Mr. Levine hardly qualify as unusual trading. Plaintiff alleges that he sold 9,000 shares, but chooses not to address the fact that he continued to own 51,545 shares and options to purchase 79,136 shares. *See* Bose Aff., <u>Exhibit B</u>, (copy of Mr. Levine's Form 4, dated December 17, 2004).

As to Mr. Beck, he sold no shares during the fourth quarter of 2004. Rather the only stock he is alleged to have sold (and in fact did sell) were the 141,778 shares that he was permitted to sell in the August 5, 2004 follow-on offering. Clearly, his decision to sell these shares was not tainted by inside information concerning misrepresentations of third quarter results announced in October. Mr. Beck held 5,217,873 shares during the "Relevant Period." *See* Bose Aff., <u>Exhibit C</u> (copy of Mr. Beck's Form 4, dated December 30, 2004).

Similarly, Plaintiff alleges that Mr. Reilly sold 10,000 shares, but fails to mention that he retained 17,577 shares and options to purchase 90,496 shares, and that Lau Technologies sold 522,380 shares, but fails to mention that it retained 5,533,592 shares. *See* Bose Aff. <u>Exhibits D</u> (copy of Mr. Reilly's Form 4, dated December 15, 2004) and <u>E</u> (copy of Lau Acquisition Corporation's Form 4, dated December 15, 2004). There are no allegations explaining why any of these stock sales represented unusual trading, and the undisputed fact that all Defendants retained the vast majority of their shares in Viisage precludes the adverse inference that Plaintiff asks the Court to draw from such sales as may have occurred in the fourth quarter.

The cases Plaintiff cites in her Opposition make quite clear that not all insider sales are suggestive of personal liability. *See, e.g.*, *In re Polymedica Corp. S'holder Derivative Litig.*, No. 01-3446, 2002 WL 1809095, at *12 (Mass. Super. July 16, 2002) ("the mere allegation that a director traded stock does not establish a breach of the duty of loyalty."). A plaintiff "has . . . to go beyond mere cursory allegations of insider trading." *Zimmerman v. Braddock*, No. Civ.

A. 18473-NC, 2005 WL 2266566, at *7 (Del. Ch. Sept. 8, 2005). As the court in *Zimmerman* explained,

> the Court must be careful not to leave the directors of Delaware corporations at risk of burdensome legal challenges whenever they sell stock in the corporation. There are incentive-based rationales as to why directors should be encouraged to invest in stock of the corporation. Not permitting directors adequate opportunities, however, to liquidate their holdings (or placing insider trading liability upon them without sufficient allegations of fault) destroys the very incentive that holding company stock provides directors.

For this reason, plaintiff must allege particularized facts indicating that each selling defendant possesses non-public information and sold their shares because of that information. Such allegations are entirely missing from both the Complaint and Opposition. Plaintiff argues that each selling defendant had knowledge of "the undisclosed information concerning the accounting practices." Opp. at 16-17. What information? What accounting practices? Plaintiff does not say. How did Defendants come by this information? When? Absent these types of allegations, Plaintiff, according to her own authorities, has not pleaded allegations that raise a substantial likelihood of personal liability.

The cases Plaintiff relies on involve facts and sales very different from those alleged here. *McSparran* involved the sale of over $136 million of stock by nine of the ten defendants, and the plaintiffs there "met their burden of pleading with particularity," having alleged "the 'who, what, when, where, and how' of a story that raises a reasonable doubt about the defendants' personal liability." *See* 2006 WL 250698, at *6. The court in *Zimmerman* held that "[w]hen the sheer size of the trades (collectively, approximately $248 million dollars) is combined with the Plaintiff's well-pled allegations of insider trading culpability, the Selling Defendants, for motion to dismiss purposes, can be viewed as facing substantial personal liability." *See* 2005 WL 2266566, at *8. That court also noted that "[i]f the proceeds from the

trades were not material to the directors, this would undercut suspicion of their trades and would frustrate the Plaintiff's efforts to demonstrate that the loyalty of those directors is in doubt." *Id.* And in *Polymedica*, the plaintiff alleged that four of the six director defendants sold approximately $10 million of shares and that these sales were "not a part of any normal or regular pattern or practice." 2002 WL 1809095, at *10. In the instant case, neither the Complaint nor Opposition contain similar allegations.

Finally, only Lau Technologies (in which only defendant Berube is alleged to have an interest) and Reilly are alleged to have sold shares in the fourth quarter, other than pursuant to a Rule 10b5-1 trading plan. Even if the Court were to deem the allegations directed at them adequate to allege directorial interest, demand clearly would not be excused because a majority of the board would still be disinterested and capable of considering Plaintiff's demand.

### D.    Plaintiff Has Not Alleged That Any Director Lacks Independence.

Plaintiff argues that she has pleaded demand futility by alleging that three directors -- Messrs. Principato, Berube, and Beck -- are not independent, the second prong of the *Aronson* demand futility analysis. *See* Opening Memorandum at 18. But as defendants have explained, a director lacks independence only when it is alleged that the director is so beholden to an interested director that he or she would be willing to risk his or her reputation rather than sue the interested director. *Id.*, citing *Beam*, 845 A.2d at 1052. Here, as explained at pages 3-16, *supra*, plaintiff has not adequately pleaded that any director is interested, so plaintiff's lack of independence argument necessarily fails.

Plaintiff's argument fails for an additional reason: neither Plaintiff's Complaint nor her Opposition alleges that any of these three directors were under the control of or dominated by *any other director defendant*, interested or not. Plaintiff contends that she has alleged "facts in the Complaint that demonstrate that Director Defendants Principato, Berube and Beck are not

independent of other interested directors," *see* Opp. at 17, but then is unable to direct the Court to those factual allegations. Instead, she references a series of indirect relationships which do not add up to anything of significance. Of Principato, she alleges merely that he serves as CFO of Lau Technologies, Viisage's largest shareholder. *Id.* She alleges that Berube is an Executive Vice President of Lau and its Chief Operating Officer, a paid consultant of Viisage, and, with his wife, controls Lau. *Id.* at 17-18. Plaintiff, however, never connects the dots. Even if the Court were to infer that Plaintiff is alleging that Principato was beholden to Berube, it would establish only a link between Principato and Berube, and this would disable Principato only if Berube were himself "interested." While such linkage itself seems strained, it clearly does not infect a majority of Viisage's nine member Board.

As to Beck, Plaintiff alleges only that he was paid by the Company as a consultant, was a significant owner of Company stock and a significant creditor of the Company (all as a result of Viisage's acquisition of TDK in February 2004). Opp. at 18. None of these allegations establish that he is "interested" with respect to any Board action identified in the Complaint and there are no allegations that Beck is beholden to any other director.

### E. Plaintiff Has Not Alleged That Any Defendant Conduct Has Caused The Company Damage.

Plaintiff devotes only five sentences to arguing that she has alleged a direct harm or injury to the Company. *See* Opp. at 20. She cites the "unnecessary legal and auditors' fees" incurred in connection with the evaluation of the Company's internal accounting controls. Not only are such allegations insufficient, *see* Opening Memorandum at 14, citing *Taddy v. Singh* ("*Primus*"), No. 1:04cv1051 slip op. at 16, n.13 (E.D. Va. Dec. 8, 2004), but also the March 2, 2005 public statement, to which the Complaint makes reference in support of this claim, is clear in stating that such fees were the result of Sarbanes-Oxley compliance protocols, not to correct

misstated financials. Surely, Plaintiff is not alleging that expenses incurred by Viisage to comply with Section 404 of the Sarbanes-Oxley Act give rise to liability on the part of the Board. *Contrast Cendant*, 189 F.R.D. at 125-26 (defendants' wrongdoing found to have cost company well over $500 million in out-of-pocket expenses, including over $100 million for audit committee investigation). Plaintiff also contends that "[i]t may be reasonably inferred that the finding that Viisage engaged in improper conduct impaired the Company's ability to close new contracts, and indeed Viisage was having difficulty closing contracts in the fourth quarter of 2004." Opp. at 20. Plaintiff does not, however, identify a single contract that Viisage had trouble closing. Moreover, there is nothing reasonable about inferring from Viisage's purported failure to close these unidentified contracts in that quarter, that the Georgia litigation must have been the cause. There could be a myriad of reasons for the inability to close a contract. *See Beam*, 845 A.2d at 1048 (holding that reasonable inferences "must logically flow from particularized facts alleged by the plaintiff. Conclusory allegations are not considered as expressly pleaded facts or factual inferences. Likewise, inferences that are not objectively reasonable cannot be drawn in plaintiff's favor."). It is however almost undoubtedly the case that a decision by a Georgia Superior Court issued on December 22, 2004, but not published to the public until Monday, December 27, 2004, did not cause any contract delay in the fourth quarter. Finally, plaintiff cites the alleged improper insider sales as causing injury to the Company, however, the Complaint does not actually include a count that seeks recovery for insider trading.[7]

---

[7] Count II asserts a claim of breach of fiduciary duty "against all defendants." Similarly, Count VI asserts unjust enrichment "against all defendants." Neither count specifies "insider trading" as the basis of the claim and the Complaint (as opposed to the Opposition) only identifies Lau Technologies as having sold any shares in Viisage. It may also be noted that in *Zimmerman*, the court cites to *In re Oracle Corp.*, 867 A.2d 904, 930-31 (Del. Ch. 2004), and notes that it is an open question whether a company can recover for insider trading by corporate fiduciaries and whether this remains a viable claim under Delaware law. 2005 WL 2266566, at *7, n.77.

## II.    CONCLUSION

For the foregoing reasons, along with the reasons given in defendants' Opening Memorandum, the Court should dismiss plaintiff's derivative action in its entirety as against all defendants with prejudice.

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, and WILLIAM K. AULET

By their attorneys,


/s/ John R. Baraniak, Jr.
Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Aloknanda S. Bose (BBO #658108
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated:  April 26, 2006

4071794.1