UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLYMPIA LEVINSON STIEGELE, )<br><br>Plaintiff, )<br><br>v. )<br><br>BERNARD C. BAILEY, PAUL T. PRINCIPATO, )<br>PETER NESSEN, THOMAS J. REILLY, DENIS )<br>K. BERUBE, BUDDY G. BECK, CHARLES E. )<br>LEVINE, WILLIAM K. AULET, MARCEL YON, )<br>and HARRIET MOUCHLEY-WEISS. )<br><br>Defendants, )<br><br>v. )<br><br>VIISAGE TECHNOLOGY, INC., )<br><br>Nominal Defendant. ) | Case No. 05-10677 (MLW) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, WILLIAM K. AULET,
and HARRIET MOUCHLEY-WEISS

By their attorneys,

Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTS ................................................................................................................. 3

III.    SUMMARY OF ARGUMENT ............................................................................ 8

IV.     ARGUMENT ....................................................................................................... 9

        A.      For Demand To Be Excused, The Plaintiff Must Establish That A Majority
                Of The Board Have A Disabling Interest In The Putative Claim Or Are
                Dominated By An Interested Director. ..................................................... 9

        B.      Demand Futility Must Be Assessed By Addressing The Disinterestedness
                Of The Board On The Date The Amended Complaint Was Filed. ....... 11

                1.      Only Claims Validly In Litigation May Avoid Review By A New
                        Board. ..................................................................................... 11

                2.      The "New Claims" Are Unrelated To Those Originally Pled. ... 12

                3.      The Original Complaint Was Not "Validly In Litigation." ...... 13

                4.      A Majority Of The Board Seated On July 26, 2006, When Plaintiff
                        Filed Her Amended Complaint, Were Indisputably Independent
                        and Disinterested. ................................................................... 15

        C.      If The Court Were To Conclude That It Must Separately Consider
                Whether The April 2005 Board Was Disinterested With Respect To The
                Original Claims And The July 2006 Board Was Disinterested With
                Respect To The New Claims, It Will Nonetheless Conclude that Demand
                Was Not Excused With Respect To Either Board. .................................. 17

                1.      For Her New Claims, Plaintiff Has Not Alleged That Any Director
                        Faces The Substantial Likelihood Of Significant Liability. ....... 17

                2.      For Her Original Claims, Plaintiff Has Also Not Alleged That *Any*
                        Director Is Interested. ............................................................. 20

                        a.      Plaintiff's Conclusory Allegations That Directors Failed To
                                Prevent/Correct Misrepresentations And/Or Ensure That The
                                Company Had Adequate Internal Controls Are Insufficient. ........ 22

                        b.      There Are No Allegations That Any Director's Action Caused
                                Injury To Viisage. ......................................................... 25

          c.     Defendants' Alleged Financial Dealings With Or Concerning The Company Do Not Demonstrate That Any Director Had A Disabling Interest Or Potential Liability To The Company. ..........28

    D.     Plaintiff Has Not Alleged That *Any* Defendant Lacked Independence. ................31

    E.     The Exculpatory Provision In Viisage's By-Laws Requires Dismissal Of Plaintiff's Amended Complaint...........................................................................32

V.    CONCLUSION .................................................................................................................35

# TABLE OF AUTHORITIES

## Cases

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001) .........20

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled in part on other grounds by*
   *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .................................................9, 10, 22, 25, 31, 33

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996).................................................................25

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del.
   2004).............................................................................................................10, 11, 32

*Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56 (1st Cir. 2000) .............................................26

*Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) .............................................8, 11, 12, 13, 14

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .........................................................................10, 32

*Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...........................................23, 33

*Dellastatious v. Williams*, 242 F.3d 191 (4th Cir. 2001)................................................................33

*Gagliardi v. TriFoods Int'l Inc.*, 683 A.2d 1049 (Del. Ch. 1996)..................................................22

*Goodwin v. Live Entm't, Inc.*, No. Civ. A. 15765, 1999 WL 64265 (Del. Ch. Jan. 25,
   1999) , *aff'd* 741 A.2d 16 (Del. 1999) ....................................................................................33

*Grimes v. Donald*, 673 A.2d 1207 (Del. 1996) .........................................................................22

*Guttman v.Huang*, 823 A.2d 492 (Del. Ch. 2003).......................................................10, 21, 23, 24

*Haber v. Bell*, 465 A.2d 353 (Del. Ch. 1983).............................................................................31

*Harris v. Carter*, 582 A.2d 222  (Del. Ch. 1990) ...................................................................11, 14

*Heit v. Baird*, 567 F.2d 1157 (1st Cir. 1977)..............................................................................10

*In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268 (Del. Ch. 1995) ......................................34

*In re CitiGroup Inc. S'holders Litig.*, No. 19827, 2003 WL 21384599 (Del. Ch. June 5,
   2003) , *aff'd Rabinovitz v. Shapiro*, 839 A.2d 666, 2003 WL 22701635 (Del. Nov. 12,
   2003)..........................................................................................................................23

*In re Focus Enhancements, Inc. Sec. Litig.*, 309 F. Supp. 2d 134 (D. Mass. 2001).....................27

*In re Frederick's of Hollywood, Inc.*, No. C.A. 15944, 2000 WL 130630 (Del. Ch.
   Jan. 31, 2000) ......................................................................................................34

*In re Lukens Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).........................................................................................33, 34

*In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160 (D. Or. 2002)....................................30

*In re Oracle Corp.*, 867 A.2d 904 (Del. Ch. 2004) ........................................................31

*In re Party City Sec. Litig.*, 147 F. Supp. 2d 282 (D. N.J. 2001) ..................................30

*In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211 (D. Mass. 1999) ...................27

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ...........................31

*In re Vantive Corp. Sec. Litig.* 283 F.3d 1079 (9th Cir. 2002).......................................30

*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991) .........................................................9

*Kaufman v. Belmont*, 479 A.2d 282 (Del. Ch. 1984) .....................................................11

*Landy v. D'Alessandro,* 316 F. Supp. 2d 49 (D. Mass. 2004)........................................23

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001).....................................................33, 34

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998)........................3

*McMillan v. Intercargo Corp.*, 768 A.2d 492 (Del. Ch. 2000) .......................................34

*Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ..............23

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ....................................................10, 11, 32

*Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ...................21

*Resolution Trust Corp. v. Driscoll*, 985 F.2d 44 (1st Cir. 1993)....................................25

*Sachs v. Sprague*, 401 F. Supp. 2d 159 (D. Mass. 2005) ...............................9, 10, 24, 25

*Schaer v. Brandeis Univ.*, 432 Mass. 474 (2000) ..........................................................34

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) .....................................................25

*Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996).........................................20

*Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682 (N.D. Tex. Jan. 26, 2004).........30

*Stein v. Royal Bank of Canada*, 239 F.3d 389 (1st Cir. 2001) ......................................25

*Taddy v. Singh*, No. 1:04cv1051 slip op. at 16 (E.D. Va. December 8, 2004)....................28, 30

*Total Care Physicians P.A. v. O'Hara*, 798 A.2d 1043 (Del. Super. Ct. 2001)...........................33

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ...........................................................................15

*Weitschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102 (N.D. Cal. 2003)................................31

## Statutes and Rules

8 Del. C. Ann. § 102(b)(7)...........................................................................................................33

Fed. R. Civ. P. 12(b)(6) ................................................................................................................3

Fed. R. Civ. P. 23.1.................................................................................................................3, 10

## I.    INTRODUCTION

This case is an example of the now-routine practice of the plaintiffs' securities bar reflexively filing a derivative action against a company's directors and officers immediately after a securities class action has been filed against the company.[1]  Plaintiff's lack of confidence in the independent merits of her claims is perhaps best exemplified by her unsuccessful motion requesting that this Court stay any activity in this derivative action until this Court had decided the then-anticipated motion to dismiss the securities class action.  *See* Docket Entry #3, filed May 25, 2005.  After the Court rejected this request for an indefinite stay, Defendants timely filed a motion to dismiss.  Three months after that motion was fully briefed, but before the Court could rule on its merits, Plaintiff filed an Amended Complaint[2] -- restarting the briefing cycle and further delaying this Court's consideration of whether her putative derivative claims may proceed in the absence of demand first being made upon Viisage's Board of Directors, or whether they state a claim at all.

The Amended Complaint violates Fed. R. Civ. P. 8(a).  It does not contain "a short plain statement of the claim showing that the pleader is entitled to relief."  To the contrary, it is an eighty-two page hodgepodge of unrelated factual allegations most of which are not tethered to any meaningful assertion that the conduct alleged caused monetary injury to Viisage.  Part of the Amended Complaint is a replica of the original Complaint, which itself is simply a regurgitation of the allegations contained in the securities class action complaint, coupled with an allegation that Defendants have caused injury to Viisage because Viisage now must defend itself in that

---

[1] Plaintiff filed her original derivative complaint on April 5, 2005, less than four weeks after the first class action complaint against Viisage Technology, Inc. ("Viisage") was filed.

[2] The Amended Complaint is not verified, as required by Fed. R. Civ. P. 23.1, leaving in doubt whether the Plaintiff, Olympia Stiegele, has even read it, in particular the scurrilous new allegations based upon revelations from an unidentified "Source."  It may be dismissed for this reason alone.

class litigation. The "new" claim added by the amendment has neither thematic nor temporal relation to the original claim. It is principally based on allegations attributed to a confidential and unnamed "source" (the "Source"). According to the Source, in 2002, two years before the events chronicled in the class action complaint and Plaintiff's original derivative Complaint, Viisage made misrepresentations which misled the investing public concerning the performance of a Viisage product. Plaintiff then seemingly contends that when certain of the Defendants sold Viisage stock in the fall of 2004, they apparently breached their fiduciary duty by engaging in insider trading; all of this notwithstanding the fact that the Amended Complaint never alleges that these misrepresentations artificially inflated the price of Viisage stock or that the "truth" about the product was ever revealed resulting in a consequent drop in stock price.

Moreover, and perhaps most importantly, Plaintiff filed her Amended Complaint adding her new claims on July 26, 2006. The question of whether the Amended Complaint adequately alleges with particularity facts that excuse her failure to first make demand upon Viisage's Board of Directors (the "Board") must therefore be measured against the composition of the Board at the time the Amended Complaint was filed. As will be seen, Viisage has gone through a substantial corporate transformation[3] since Plaintiff filed her original Complaint, and the majority of its members on July 26, 2006 were not only manifestly disinterested in the transactions alleged, many were not even members of the Board when the conduct alleged occurred.

It is a basic tenet of corporate law that, absent extraordinary circumstances, directors -- not shareholders -- are entrusted with the decision of whether to initiate litigation on a

---

[3] On August 29, 2006, Viisage merged with Identix Incorporated to form L-1 Identity Solutions, Inc. It is now listed in the New York Stock Exchange. For ease of reference, however, Defendants will continue to refer to the nominal Defendant as "Viisage," the name by which it was known during the relevant period covered by the Amended Complaint and the name Plaintiff used in the Amended Complaint.

company's behalf, and, therefore, before a shareholder can commence a derivative action in the company's name, he or she must first generally make demand on the company's board. In this case, Plaintiff has neither made a pre-suit demand nor alleged any "extraordinary circumstances" that would excuse her from doing so. Because the Amended Complaint contains none of the particularized allegations of director interestedness or lack of independence necessary to satisfy Fed. R. Civ. P. 23.1, it must be dismissed. Additionally, the claims alleged against the director Defendants, at best, amount to nothing more than putative violations of the duty of care, and the corporation's by-laws preclude liability for money damages for breach of such duty. Finally, Plaintiff has failed to allege the existence of any damage causally related to the acts of any Defendant. The Amended Complaint should, therefore, also be dismissed because it simply fails to state a claim on which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    FACTS[4]

This is a shareholder derivative action. Amended Complaint p. 1. Plaintiff, Olympia Levinson Stiegele ("Plaintiff") is a common stockholder in Viisage. *Id.* ¶ 16. Nominal Defendant Viisage is a Massachusetts-based technology company organized under the laws of Delaware, in the business of designing, developing, marketing, and implementing integrated software and hardware solutions that produce secure identification credentials and other biometric technologies used to deter criminal and terrorist activities, including face recognition technology to be used in airport screening. *Id.* ¶¶ 17, 40. Its products and services are also geared toward creating difficult to reproduce documents, including driver's licenses, and toward producing technology for authenticating documents and preventing identity theft. *Id.* ¶ 17. Plaintiff names Viisage's nine directors at the time the original Complaint was filed (April 2005)

---

[4] Defendants take, as they must, the facts as alleged in plaintiff's Amended Complaint as true for the purposes of this motion only. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

as Defendants: Bernard Bailey (Viisage's CEO), Paul Principato, Peter Nessen, Thomas Reilly, Denis Berube, B.G. Beck, and Charles Levine, Marcel Yon, and Harriet Mouchly-Weiss. *Id.* ¶¶ 18-27, 29, 31. The tenth Defendant, William Aulet, was Viisage's Senior Vice President and Chief Financial Officer, but did not serve on Viisage's board. *Id.* ¶¶ 19, 31[5].

As part of its product offerings, Viisage developed face recognition technology which could be used to screen passengers at airports and elsewhere. *Id.* ¶¶ 40-44. In a May, 2002 press release the Company disclosed that it had achieved "strong results" in the first phases of a pilot program to test the technology at Boston's Logan International Airport  *Id.* ¶ 41. A few days later, it announced in a press release that the Manchester, New Hampshire airport would be adopting its face recognition technology as part of its security efforts aimed at passenger screening. *Id.* ¶ 42. Later that year, in September, Defendant Berube wrote a letter to a trade journal in which he touted the technology's 90% performance rate during the Logan test. *Id.* ¶ 44. According to the Source, in reality, the technology did not work as well as the Company said it did, and the Logan Airport test had been staged to produce the 90% success result. *Id.* ¶¶ 53, 59-70.

Also during this time, the Company communicated regularly with Chris Johnson at Piper Jaffray, a broker-dealer and co-manager of Viisage's 2004 secondary offering. *Id.* ¶¶ 49, 55-58. Again according to the Source, Viisage senior executives disclosed non-public information to Johnson which enabled him, on behalf of Piper Jaffray and its clients, to profitably trade in Viisage stock. *Id.*

In 2003, Viisage borrowed approximately $5 million on its $7 million credit facility provided then by Lau Acquisition Corp. ("Lau"), which owned 17% of Viisage's common

---

[5] This memorandum is submitted on behalf of all Defendants *except* Marcel Yon, who, it is believed, is no longer in this country and may not even have been served with the Amended Complaint.

stock.[6] *Id.* ¶¶ 23, 100. The Company repaid the loan from Lau with part of the proceeds of an August 5, 2004 follow-on pubic offering. *Id.*

In the third quarter of 2004, on October 26, 2004, the Company reported a net profit and increased its EBITDA (earnings before interest, taxes, depreciation and amortization) projections for 2004 from a previously announced $11.5 million to $12.5 million. *Id.* ¶ 109. The Company also later announced that during the third quarter it had secured a $25 million line of credit from Citizens Bank. *Id.* ¶¶ 4, 110, 115.

On December 27, 2004, Viisage issued a press release concerning litigation in Georgia regarding its contract to provide drivers licenses in that state. *Id.* ¶ 122. It announced that it had learned that day that a Georgia court had issued a summary judgment ruling that permitted Viisage to participate in a re-bid of the contract, awarded Viisage $500,000 to compensate for monies spent by the Company under the original contract, but enjoined the State of Georgia from paying Viisage a $2 million contract termination fee previously agreed upon by the parties. *Id.* ¶¶ 122, 123.

On February 7, 2005, Viisage announced its preliminary results for the fourth quarter of 2004. *Id.* ¶ 125. The Company reported that it would suffer a loss for that quarter. *Id.* While Viisage reported that it would meet its revenue projections, it revised downward its previous 2004 EBITDA projections of $12.5 million to $8 million - $9 million. *Id.* The Company cited as reasons for the downward revision certain non-recurring charges. The largest of these charges were (i) a $2 million impairment charge related to the Georgia court's summary judgment decision and (ii) another non-cash item, the recording of a $900,000 deferred tax asset associated with a tax election related to its acquisition of a company called Trans Digital Technologies

---

[6] The Complaint elsewhere alleges that Lau owns only 11.4% of Viisage's common stock. Complaint ¶ 147(m).

Corporation during the first quarter of 2004.[7]  *Id.*  Other charges included items such as greater

than expected costs associated with Sarbanes-Oxley Section 404 compliance and unanticipated

legal fees.  *Id.*

One month later, on March 2, 2005, Viisage reported that in connection with its

preparation of its 2004 financials, it had determined that it had two internal control deficiencies,

constituting material weaknesses.  *Id.* ¶ 129.  It attributed these deficiencies to insufficient

personnel resources and technical accounting expertise within the accounting department to

resolve non-routine or complex accounting matters and to weaknesses in its information

technology systems as well.  *Id.*

Less than one month later, this action was filed, without any prior demand having been

made on Viisage's board.  Plaintiff brings eight separate claims:  breach of fiduciary duty for

insider selling and for misappropriation of information (First Cause of Action); breach of

fiduciary duty (Second Cause of Action); abuse of control (Third Cause of Action); gross

mismanagement (Fourth Cause of Action); waste of corporate assets (Fifth Cause of Action);

unjust enrichment (Sixth Cause of Action); contribution and indemnification (Seventh Cause of

Action); and aiding and abetting breach of fiduciary duty for insider selling and misappropriation

of information (Eighth Cause of Action).  *See* Amended Complaint ¶¶ 149-178.  Although

separately pleaded, Plaintiff's claims can be separated into three types:  those based on

misrepresentations relating to its face recognition technology and alleged insider sales, those

based on misrepresentations concerning the Georgia driver's license litigation, and those based

---

[7]  In paragraph 109 of the Amended Complaint, in bold faced type, Plaintiff alleges that **"Viisage included the $2.5 million payment [expected from the State of Georgia] in its increased EBITDA guidance for 2004."**  As explained in greater detail in Viisage's motion to dismiss the securities class action complaint, this allegation is plain wrong.  The $2 million impairment charge is a non-cash depreciation of an asset that plays no part in calculating EBITDA.

on misrepresentations relating to the Company's internal financial controls. The gravamen of all of Plaintiff's claims is that the Defendants conspired to misrepresent the Company's true third quarter finances in an effort to secure more favorable financing for the Company and to sell personally held stock at artificially inflated prices. *Id.* ¶¶ 13, 31, 138,-142. There exists, however, no meaningful allegation that this conduct actually caused Viisage any cognizable damage. It is not alleged that the financing obtained from Citizens was revoked or impaired in any way when, "according to Plaintiff, the truth emerged," or that any Defendant received a bonus, raise or other identified benefit as a result of their alleged misrepresentation of Viisage's financial position.[8] It is not alleged that any alleged "Tipper" of inside information received any financial reward for providing the tip, or that Viisage suffered any injury as a result of the tip having been made.

At bottom, Plaintiff contends that she was relieved of the obligation to make pre-suit demand on the board because: (1) she named as Defendants all of the directors at the time the original Complaint was filed; (2) all these Director Defendants knew or should have known of the wrongdoing but took no action; (3) five of these nine directors (Berube, Beck, Levine, Reilly, and Yon) sold Viisage shares during the relevant period, personally benefiting financially and subjecting themselves to a substantial likelihood of liability for insider stock sales; and (4) three outside directors constituted Viisage's audit committee (Nessen, Reilly and Levine). As demonstrated below, the Amended Complaint fails to allege with the requisite specificity a disabling interest on the part of any Director Defendant. Even more fundamentally, as recently

---

[8] The Amended Complaint alleges that Defendants wrongdoing "exposed" Viisage to significant damages but fails to allege what these losses are, how they were sustained or what caused them. ¶ 165. Elsewhere the Amended Complaint alleges that Defendants "caused Viisage to waste valuable corporate assets by paying bonuses," without identifying this supposed bonus or alleging any connection between third quarter results and any benefit given to any officer. ¶ 168.

explained by the Delaware Supreme Court in *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006), because Plaintiff amended her original Complaint adding new unrelated factual allegations and claims for relief, she must establish that a majority of the members of the Viisage Board were interested, and demand was therefore futile, as of the date she filed the Amended Complaint -- not her original Complaint.

### III.    SUMMARY OF ARGUMENT

On the facts alleged in the Amended Complaint, pre-suit demand on the board of directors is *not* excused. The Amended Complaint lacks the particularized allegations of director interestedness, or domination of the board by an interested director, necessary to sustain a claim of demand futility.    Even with respect to her claims as originally pled, Plaintiff has not sufficiently alleged that *any* director had a disabling financial interest that would preclude him or her from considering whether to file the claims set forth in this action on behalf of the Company, let alone that a *majority* of the board of directors did. Certainly, Plaintiff has not alleged that *any* group of directors was under the domination of an interested director such that they would be unable to exercise their independence in making a decision. Instead, Plaintiff relies on the type of generalized, conclusory allegations consistently rejected by courts in this Circuit, Delaware, and elsewhere.

The argument for dismissal of the Amended Complaint, including her new insider sales and misappropriation of information claim, is even stronger than it was with respect to her original Complaint. Not only do her allegations of director interestedness fail as a matter of law for the reasons cited above, but also, Plaintiff alleges the interestedness of the wrong directors. She alleges that the directors in place in April 2005, when she filed her original Complaint, were interested, when she should have focused on those directors on the board in July, 2006 when she filed her Amended Complaint. In the intervening 15 months, the composition of the Viisage

8

board had changed dramatically. One board member, Marcel Yon, had left the board, and five new members had joined. Under Delaware law, demand futility must be gauged at the time a new claim is made, not at some earlier time.

Finally, the Director Defendants are insulated from liability for the types of claims Plaintiff has brought by the exculpatory provision of Viisage's by-laws and, in any event, the Amended Complaint utterly fails to allege any injury to Viisage actually caused by any Defendant or any connection between the allegedly undisclosed information and any sale of Viisage stock.

The Amended Complaint, Plaintiff's second attempt to state a claim, should therefore be dismissed in its entirety, and with prejudice.

## IV.    ARGUMENT

### A.    For Demand To Be Excused, The Plaintiff Must Establish That A Majority Of The Board Have A Disabling Interest In The Putative Claim Or Are Dominated By An Interested Director.

Derivative claims are extraordinary remedies that impinge on the "cardinal precept" of corporate law that the "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 810 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[9] A shareholder plaintiff may usurp the board's traditional role only if he or she can demonstrate, by making particularized allegations, that the board wrongfully refused, or would have wrongfully refused, "to proceed after suitable demand." *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 95-96 (1991). This demand requirement "insure[s] that a stockholder exhausts his intracorporate remedies, and   . . .

---

[9] Because Viisage is a Delaware corporation, Delaware law applies to the demand analysis. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-09 (1991) (applying substantive law of state of incorporation to demand analysis); *Sachs v. Sprague*, 401 F. Supp. 2d 159, 163 (D. Mass. 2005).

provide[s] a safeguard against strike suits." *Aronson*, 473 A.2d at 811-12. *See also Sachs v. Sprague*, 401 F. Supp. 2d at 163.

A plaintiff who foregoes pre-suit demand on the board must then "allege with particularity . . . the reasons . . . for not making the effort." *See* Fed. R. Civ. P. 23.1; *see also Brehm v. Eisner*, 746 A.2d at 254 ("Rule 23.1 is not satisfied by conclusory statements or mere notice pleading . . . What the pleader must set forth are particularized factual statements that are essential to the claim.") (citations omitted). This is also known in the case law as "demand futility." To establish demand futility the plaintiff must plead with particularity facts which cast a "reasonable doubt" as to a *majority* of the board's disinterestedness or independence. *Rales v. Blasband*, 634 A.2d 927, 934, 937 (Del. 1993); *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003). A plaintiff must consider each director individually and cannot rely on wholesale allegations made against the board or a group of directors as a whole. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046, 1049-50 (Del. 2004). These Rule 23.1 requirements have "been vigorously enforced" in the First Circuit. *See Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977).

Turning first to the question of "interest," in the context of pre-suit demand, directors are entitled to a presumption of disinterest. *Sachs*, 401 F. Supp. 2d at 164 (*citing Beam*, 845 A.2d at 1048-49). Where, as here, no specific board action is challenged (such as the board's approval of an identified corporate transaction), to plead adequately that a director is "interested," a complaint must allege specific facts demonstrating that the director faces a substantial likelihood of personal liability in the present lawsuit. *Id. See also, Rales*, 634 A.2d at 936; *Aronson*, 473 A.2d at 815 ("mere threat of personal liability . . . is insufficient").

With respect to independence, to plead a director's lack of independence, a plaintiff must allege specific facts that create reasonable doubt as to whether that director is "so 'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'" *Beam*, 845 A.2d at 1050 (*quoting Rales*, 634 A.2d at 936). Essentially, a plaintiff must allege that the director is dominated by the interested director to such a degree that he or she would be "more willing to risk his or her reputation than risk the relationship with the interested director." *Id*. at 1052.

If a derivative plaintiff fails to carry the burden of demonstrating that a majority of the board is either "interested" or dominated by an interested director, then demand is not excused, and the complaint must be dismissed. *Kaufman v. Belmont*, 479 A.2d 282, 286, 289 (Del. Ch. 1984).

### B.    Demand Futility Must Be Assessed By Addressing The Disinterestedness Of The Board On The Date The Amended Complaint Was Filed.

#### 1.    Only Claims Validly In Litigation May Avoid Review By A New Board.

In *Braddock v. Zimmerman*, the Delaware Supreme Court addressed the issue of when the filing of an amended derivative complaint, after the composition of the board has materially changed from the time the original complaint was filed, brings with it an obligation on plaintiff to make demand on the new board. 906 A.2d at 786. In that case, plaintiff's derivative complaint had been dismissed, without prejudice and with leave to file an amended pleading. An amended complaint was then filed. However, in the interim, a number of board members had been replaced and new board seats added. The court began its analysis by favorably reviewing an earlier Chancery Court decision, *Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990), which had "held that the existence of an independent board of directors is relevant to a Rule 23.1 demand inquiry, but only with respect to derivative claims not already validly in litigation." *Id*. at 785. The court reasoned that when derivative claims were already properly filed and the process of

litigating them underway, a change in the board ought not be permitted to "interrupt litigation." *Id.* In consequence, "an amendment or supplement to a complaint that elaborates upon facts relating to acts or transactions alleged in the original pleading, or asserts new legal theories of recovery based upon the acts or transactions that formed the original pleading" would not require new demand. *Id.* On the other hand, new claims must be submitted to the new board for the exercise of its considered judgment. The Court identified the factors that will excuse demand when an amended complaint is filed:

> Three circumstances must exist to excuse a plaintiff from making demand under Rule 23.1 when a complaint is amended after a new board of directors is in place: first, the original complaint was well pleaded as a derivative action; second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint.

*Id.* at 786.

Turning to the precise issue before it, the *Braddock* Court then concluded that a complaint that had been dismissed, albeit with leave to amend, was nonetheless not "validly in litigation," so that even if "the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed with respect to the board in place at the time when the amended complaint is filed." *Id.* Stated differently, the Delaware Supreme Court concluded that under these circumstances there was simply no good reason to deprive a new and potentially independent board from the opportunity to determine whether it was in the best interests of the corporation for the claims asserted by the putative derivative plaintiff to be litigated.

### 2.    The "New Claims" Are Unrelated To Those Originally Pled.

In the instant case, it cannot seriously be disputed that the new claims added in the Amended Complaint are based upon new factual allegations that appear nowhere in the original

Complaint filed in April, 2005. That complaint focused exclusively on the Georgia drivers' license litigation and Viisage's internal accounting controls. Viisage's face recognition technology and Piper Jaffray are not even mentioned, in any context, in the original Complaint and are wholly unrelated to the claims that are. Moreover, the Amended Complaint asserts claims against outside directors Harriet Mouchley-Weiss and Marcel Yon, neither of whom were Defendants in the original Complaint. Clearly, the new factual allegations and causes of action in Plaintiff's amended pleading neither supplement or embellish the matters alleged in the original Complaint. Accordingly, as to her new claim, a Rule 23.1 demand must be made on the Viisage board, as it existed on July 26, 2006, before Plaintiff may pursue them; or she must allege particularized facts that explain why demand is excused by showing that a majority of the July 26, 2006 board members are interested. Defendants will demonstrate in section B.4. below that a majority of the members of this board are obviously disinterested.

### 3.    The Original Complaint Was Not "Validly In Litigation."

In considering whether the Court should require Plaintiff to make demand or allege demand futility with respect to the July 2006 Viisage board as to all claims asserted in the Amended Complaint, (and not just as to the "new" claims) the question presented is: were the original claims "validly in litigation" within the meaning of *Braddock*? Defendants submit that having amended her original Complaint after a motion to dismiss was fully briefed and awaiting the Court's ruling, Plaintiff should be estopped from even arguing that the original claims were validly in litigation. As the Delaware Supreme Court noted, the first factor a court should consider was whether "the original complaint was well pleaded as a derivative action." In fact, Plaintiff in this case has made subtle changes to her original allegations in her amendment to correct some (but not all) of the most glaring deficiencies in the original complaint exposed by

13

Defendants' original motion papers.[10]  It would be an extraordinary waste of judicial time and

resources for this Court to consider whether the allegations in the original Complaint properly

established that demand would be futile, or even stated a claim on which relief could be granted,

for the sole purpose of determining whether the original Complaint was ever "validly in

litigation."  Indeed, Plaintiff's decision to amend her original Complaint may be taken as a tacit

admission that her original Complaint would not have survived a motion to dismiss, placing this

case in exactly the same posture as *Braddock*.

    Moreover, the rationale for not permitting a newly constituted board of directors to

review claims already "validly in litigation" discussed in *Braddock* and *Harris* is completely

absent here.  In *Braddock*, the Delaware Supreme Court explained, quoting from *Harris*, that:

> [w]hen claims have been properly laid before the court and are in
> litigation, neither <u>Rule 23.1</u> nor the policy it implements requires that a
> court decline to permit further litigation of those claims upon the
> replacement of the interested board with a disinterested one . . . . . '[S]ome
> tribute must be paid to the fact that the lawsuit was properly initiated.'

*Braddock,* 906 A.2d at 785.

    In the present case, there is nothing to "interrupt," nor any "tribute" that should be paid

the original Complaint.  Because Plaintiff exercised her right to amend her original Complaint

under Fed. R. Civ. P. 15(a), after the Defendants' motion to dismiss was fully briefed, she

---

[10]  One example of how the Amended Complaint differs from Plaintiff's original effort is that the original Complaint characterizes Lau Acquisition as "Viisage's source of last resort for liquidity," original Complaint ¶ 16, and emphasized that Defendants' alleged scheme to artificially inflate the Company's third quarter 2004 profit would "allow Viisage to accomplish its crucial goal of replacing its old inadequate credit line" from its "lender of last resort [Lau]."  *Id.* ¶ 7.  Defendants pointed out in their original moving papers that the credit line was replaced *before* the Company's third quarter results were announced.  Plaintiff's Amended Complaint no longer contains any of this dramatic language and de-emphasizes the Company's need to replace its credit line as a motive for Defendants to commit fraud.

Elsewhere, Plaintiff alleges in her original Complaint that Defendants acted as they did in part to "maintain the Individual Defendants' executive and directorial positions at Viisage and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions."  Original Complaint at ¶ 36.  Defendants pointed out how this boilerplate allegation was insufficient to state a claim.  This allegation, too, is missing altogether from the Amended Complaint.

deprived the Defendants of an opportunity to have this Court consider the merits of their motion and delayed the litigation, so that, in fact, no litigation activity ever occurred which could be interrupted by the new board's review.    To the contrary, she rendered all time spent on the original motion to dismiss wasted and started the briefing process anew.    In these circumstances, there is simply no good reason to depart from the "cardinal precept" that disinterested "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d at 810.

> **4.    A Majority Of The Board Seated On July 26, 2006, When Plaintiff Filed Her Amended Complaint, Were Indisputably Independent and Disinterested.**

Between April, 2005 when Plaintiff filed her original Complaint and July, 2006 when she filed her Amended Complaint, Viisage went through a substantial corporate transformation and its board changed dramatically.[11]    Marcel Yon resigned, and five new members were added to the board: Robert LaPenta (Chairman), Louis Freeh, Robert Gelbard, James Loy, and George Tenet, bringing the number of Board members to thirteen.    *See* Viisage Form S-4 filed July 27, 2006, at II-10 and II-11, attached as Exhibit A to the Affidavit of John R. Baraniak, Jr. ("Baraniak Aff.") submitted herewith.[12]    Accordingly, to establish demand futility, Plaintiff must allege that at least seven members of this thirteen-member board were interested or lacked independence.    She does not come close.

In fact, the Amended Complaint fails even to acknowledge the newly-constituted and expanded board.    In consequence, its allegations of interestedness touch only eight of the thirteen

---

[11]    *See* footnote 3, *supra*.

[12]    This Court can consider matters of public record, such as Viisage's filings with the Securities and Exchange Commission, without converting Defendants' motion to dismiss into one for summary judgment.    *See Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993) (noting that a "court may properly look beyond the complaint to matters of public record" in ruling on motion to dismiss) (quotation omitted).

Board members, completely ignoring the five new members. Plaintiff alleges that four of the directors (Berube, Beck, Levine, and Reilly) received a personal financial benefit from selling stock (Amended Complaint ¶¶ 147(b)-(e)). She concludes that Bailey is interested because he was the CEO and, with respect to the original Complaint, allegedly made a false statement, and Principato is interested because he is Chief Financial Officer of Lau Technologies, where Berube is Executive Vice President (Amended Complaint ¶ 23). Even assuming, *arguendo*, such allegations are sufficient (and they are not, as discussed at pages 22-32, *infra*), these defendants constitute only six out of the 13 board members. As to Nessen, all Plaintiff can allege is that he was chair of the Audit Committee, and there are effectively no substantive allegations against Mouchley-Weiss. Plaintiff seemingly contends that Nessen's membership on the Audit Committee and Mouchley-Weiss membership on the board in 2004 are enough to establish that they are interested directors. That is not the standard. In the following sections of the brief, Defendants will show that with respect to both the new claims and the original Complaint Plaintiff has failed adequately to allege that any director has a disabling interest and lacks independence. But simply put, Plaintiff has failed even superficially to allege any reason why at least seven members of the July 26, 2006 Board (a majority) cannot fairly and independently perform their duties and consider Plaintiff's demand.[13]

---

[13] It is worth noting that Viisage's board has changed even from July 26, 2006 to today was a result of its August 2006 merger with Identix, Incorporated. The present board contains only four of the defendants named herein and nine new members, rendering its disinterestedness even more unassailable. *See* Baraniak Aff., Exhibit B, L-1 Identity Solutions, Inc.'s October 4, 2006 Form S-8 at II-4.

    **C.**    **If The Court Were To Conclude That It Must Separately Consider Whether The April 2005 Board Was Disinterested With Respect To The Original Claims And The July 2006 Board Was Disinterested With Respect To The New Claims, It Will Nonetheless Conclude that Demand Was Not Excused With Respect To Either Board.**

As explained above, Defendants submit that the Court need only consider whether a majority of the July 2006 Viisage board was disinterested with respect to all claims asserted in the Amended Complaint, and it is manifest that as to at least seven of the thirteen directors (the five new directors, Nessen, and Mouchley-Weiss) no serious argument can be constructed that they have some disabling conflict. If, however, the Court were to conclude that it must separate the Amended Complaint into "new claims" and "original claims," and consider whether Plaintiff has carried her burden of establishing demand futility with respect to (i) the July 2006 board for the new claims, and (ii) the April 2005 board with respect to the original claims, she fails as to both. Defendants first consider the July 2006 board and the new claims because Plaintiff not only fails to acknowledge the new board members, she fails to explain why even the carryover board members have any disabling interest.

    **1.**    **For Her New Claims, Plaintiff Has Not Alleged That Any Director Faces The Substantial Likelihood Of Significant Liability.**

Leaving aside the fact that Plaintiff has focused on the wrong set of directors to allege directorial interestedness with respect to her new claim, she has failed even to allege the interestedness of any of the Defendants, *i.e.*, the members of the board in place at the time the original Complaint was filed. With the possible exception of Defendant Berube, the Amended Complaint contains no particularized allegations of what any other Defendant knew about the performance of the Company's face recognition technology, how they knew it, and how their actions with respect to that knowledge could have caused the Company any loss, thereby exposing them to a significant likelihood of personal liability. The same is true with respect to

17

Plaintiff's claim that individuals at the Company fed non-public, material information to Piper Jaffray, who then purportedly profited by selling Viisage shares for itself and its clients.

The Amended Complaint lacks *any* allegations of specific facts as to what any Defendant knew or did not know about the technology or how they knew it. Instead, the Amended Complaint alleges only in conclusory terms that "[d]efendants knew at the time [that] Viisage's face technology was not what the Company had advertised," Amended Complaint ¶ 53, and that according to a former Viisage employee, "everybody" knew that the 90% success rate was a bogus result and that the technology was not what the Company had hoped it would be. *Id.* ¶ 67. Nowhere does Plaintiff allege how "everybody" knew, specifically what "everybody" knew, or when they learned it. Plaintiff does not even bother to allege that the "everybody" referred to by this former employee included any of the Defendants.[14] Without such allegations, Plaintiff has not alleged that any director is subject to a substantial likelihood of personal liability, under a *Caremark* theory or any other theory, for grossly failing his/her responsibilities. The legal standard for liability of outside directors under *Caremark* is addressed at pp. 22-23, *infra*.

Plaintiff's facial recognition technology claim suffers from another fatal defect: it does not allege any loss to the Company as a result of the alleged misrepresentations. The Amended Complaint does allege that Lau, and certain Defendants (Berube, Beck, Levine, Yon and Reilly) sold Viisage shares in 2004-2005, *id.* ¶ 147(b)-(f), but it nowhere explains how these sales caused injury to the Company. It also does not link the alleged misrepresentations made in 2002 to the alleged stock sales in 2004 and 2005. Although the Complaint contains a single-non-specific allegation that "Viisage continued to hype its face recognition technology throughout 2002, 2003 and into 2004 in subsequent press releases and elsewhere," such vague, conclusory

---

[14] In 2002, Defendant Bailey was not then the CEO of Viisage nor on its board. All other Director Defendants were outside directors. See Amended Complaint ¶ 41.

allegations that are short on facts are hardly a substitute for the particularized allegations of fact required by Rule 23.1. What exactly did Viisage say about its face recognition technology in these later years? To whom? When? Did such statements ever artificially inflate the price of Viisage stock? Was the "truth" ever revealed with a consequent drop in the price of the stock?" Plaintiffs cannot rely on the alleged 2002 statements to serve as the basis for an insider trading claim for sales more than two years later in 2004. There is no allegation of a market correction; the temporal disconnect is too great; and the alleged inside information too remote in time. Defendants cannot be subject to a substantial likelihood of personal liability based on their sale of Viisage stock.

The same is true with respect to Plaintiff's new claim that the Company provided non-public material information to Chris Johnson at Piper Jaffray, allowing him to profitably trade Viisage stock for Piper and for its clients. Again, the Amended Complaint is short on specifics as to what Defendants knew of this or how or when they knew it. Again, the Amended Complaint fails to explain how this caused a loss to the Company or how Defendants could be subject to a substantial likelihood of personal liability based on such wrongdoing. It is important to keep in mind that the substantial likelihood of personal liability concerns liability *in this case*. *See* page 10, *supra*. Theoretically, Defendants could be subject to claims by shareholders from/to whom Piper Jaffray traded Viisage stock based on non-public, material information, but no such claims have ever been pursued by anyone. And nothing asserted in this case gives rise to a disabling interest precluding any Director Defendant from considering a pre-suit demand based on this claim.

The closest Plaintiff comes to alleging a specific fact concerning Defendants' knowledge of the face recognition technology's efficacy and Piper Jaffray's alleged receipt of non-public

information is to cite a June 23, 2005 e-mail sent by the Source to Defendant Nessen. According to the excerpt from this e-mail quoted in the Amended Complaint, the Source allegedly informed Nessen of both issues. *Id.* ¶ 147(o). Plaintiff neglects to mention, however, that in this very same e-mail the Source, an individual named Mark Lerner, attempts to extort $625,000 from the Company "to be made whole" for his investment losses in Viisage stock and "to be compensated" for work done in "an investors relations type capacity." *See* June 23, 2005 e-mail[15] from Mark Lerner to Peter Nessen at 4, <u>Exhibit</u> <u>C</u> to the Baraniak Aff. Aside from Mr. Lerner's obvious dubious credibility and motivations, the fact remains that Plaintiff alleges that he sent this e-mail in 2005, well *after* the alleged improper insider stock sales, and thus this e-mail is completely irrelevant, revealing nothing about what any Defendant knew at the relevant time.[16]

For these reasons, Plaintiff has not adequately alleged the interestedness of any director with respect to Plaintiff's new claim.

### 2. For Her Original Claims, Plaintiff Has Also Not Alleged That *Any* Director Is Interested.

For her original claims, Plaintiff attempts to allege that the Director Defendants, all of whom were on the Viisage board in April, 2005 when she filed her original Complaint, were interested in two ways.

---

[15] Plaintiff having quoted from this e-mail, Defendants may put its entire contents before the Court. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996), *superseded in part on an unrelated point by the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4 (2006),* (holding that court may "consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment"); *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)("When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss.")(citations omitted).

[16] It may be noted that none of the new claims based upon information provided by the Source (Mr. Lerner) appear in the companion securities class action also pending before this Court.

*First*, Plaintiff alleges that there is a substantial likelihood that Viisage's then nine directors would be found liable for breaches of their fiduciary duties because of their intentional misconduct and/or failing to perform certain oversight duties. *See* Amended Complaint ¶ 31.[17] Plaintiff contends that each of the nine Defendants breached his/her duty by failing to prevent the Company's material misrepresentations and then failing to correct them after they were made. *Id.* ¶ 147(a). She further singles out Nessen, Reilly and Levine because they served on the board's audit committee, which allegedly failed in its accounting oversight function. *Id.* ¶ 147(g).

More specifically, Plaintiff alleges that Defendants: (1) artificially inflated the Company's third quarter 2004 financials to make the Company more attractive to potential lenders (Complaint ¶¶ 90, 110, 138); (2) caused the Company to conceal the fact that it was misrepresenting its financial performance from operations and its future business prospects (Complaint ¶¶ 137(f)-(g)); (3) caused the Company to conceal certain other facts, including that the Company was not likely to receive a $2 million payment from the State of Georgia in connection with the settlement of the Georgia litigation (Complaint ¶ 137(c)); and (4) failed to ensure that the Company maintained adequate internal controls and systems necessary for accurate reporting of financial results. (Complaint ¶ 137(f)).

*Second*, Plaintiff attempts to allege that certain directors were interested because there is a substantial likelihood that they would be found liable based on their financial dealings with the Company. *See* Complaint ¶¶ 147(b)-(f).

---

[17] For the purposes of the demand requirement, Defendant William Aulet's disinterestedness and independence is irrelevant because he was not on the Viisage board and therefore was not in a position to consider any pre-suit demand. *See Guttman v. Huang*, 823 A.2d at 503 n.22 (three non-director Defendants have "little bearing on the demand excusal analysis for an obvious reason: they are not on the board"); *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *9 n.47 (Del. Ch. Oct. 7, 2003) ("for purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant").

Neither attempt by Plaintiff succeeds in adequately alleging the interestedness of any director, let alone a majority of the board.

> **a.    Plaintiff's Conclusory Allegations That Directors Failed To Prevent/Correct Misrepresentations And/Or Ensure That The Company Had Adequate Internal Controls Are Insufficient.**

As an initial matter, demand is not excused simply because the directors cannot be expected to sue themselves. *Aronson*, 473 A.2d at 818. *See also Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996) ("[d]emand is not excused simply because Plaintiff has chosen to sue all directors . . . To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets"), *overruled in part on other grounds by Brehm*, 746 A.2d at 253; *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1055 (Del. Ch. 1996) ("[I]t is well-established that the simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy etc., will not [excuse demand]").

Plaintiff, therefore, must rely on her allegations of the directors' wrongdoing. She does not, however, allege that any non-officer Defendant made a misrepresentation of any kind and therefore is likely to incur liability for it.[18] Rather, Plaintiff alleges that each Defendant director failed to fulfill his directorial duties by failing to prevent misrepresentations made by the Company concerning its financials or to correct those misrepresentations once they had been made. Plaintiff also alleges that three Defendants -- Messrs. Nessen, Reilly, and Levine -- as members of the board's audit committee, are likely to incur liability based on the Company's failure to maintain adequate internal controls and financial reporting systems.

---

[18]  Certain alleged misrepresentations are attributed to Bernard Bailey, the only officer of Viisage who was a member of the board. *See* Amended Complaint ¶¶ 93, 95.

Both types of claims fall within the rubric of *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996). Under *Caremark* and its significant progeny, a derivative plaintiff attempting to plead a failure to supervise claim must plead specific facts demonstrating that the directors were aware of, or recklessly disregarded, the internal control deficiencies or manipulation of financial results. *See Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966, at *6 (N.D. Cal. Jan. 14, 2005) (complaint failed to show that directors "face a substantial likelihood of liability under a *Caremark* claim theory" where "nothing alleged with particularity that reasonably raises the inference that the Director Defendants were aware of any possible manipulation of the financial results"); *In re CitiGroup Inc. S'holders Litig.*, No. 19827, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) (demand not excused where no allegations "that the directors either knew or should have known that there were material inadequacies in the corporation's internal controls"), *aff'd Rabinovitz v. Shapiro*, 839 A.2d 666, 2003 WL 22701635, at *1 (Del. Nov. 12, 2003). *See also Guttman*, 823 A.2d at 507 (rejecting as inadequate purported *Caremark* claim where no "red flags" brought alleged accounting irregularities to the directors' attention). This type of failure to supervise claim is especially difficult to plead and prove because it "premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs." *Landy v. D'Alessandro,* 316 F. Supp. 2d 49, 74 (D. Mass. 2004) (*quoting Guttman*, 823 A.2d at 506). In the words of the *Caremark* court, "[t]he claim . . . that the directors . . . violated a duty to be active monitors of corporate performance . . . is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967. This is especially so where, like this case, all but one of the Company's directors (Bailey) were true outside directors, *i.e.*, they had no role as an officer or employee of the Company and were not involved in its day-to-day affairs.

Here, specifics regarding any "red flags" are completely missing from the Amended Complaint. Instead, the Amended Complaint relies on the wholly generic allegation that "[a]s a result of their access to and review of internal corporate documents; conversations and connections with corporate officers, employees and directors; and attendance at management and Board meetings," each Defendant "knew the adverse non-public information which made the representations made by the Company false and misleading." Amended Complaint ¶ 147(a). The Amended Complaint, however, fails to identify in even the most cursory way any internal corporate document, conversation, or meeting that allegedly revealed adverse non-public information to any Defendant, or what information was supposedly revealed. Nor does Plaintiff describe the internal controls in place at the Company, how they were deficient, what the audit committee did or did not do to review them or what effect, if any, the deficiencies had on the Company's financial statements. *Cf. Guttman*, 823 A.2d at 507 (complaint failed to excuse lack of demand on audit committee members because, among other reasons, it failed to plead that the committee "devoted patently inadequate time to its work, or . . . had clear notice of serious accounting irregularities").

A recent case from this Circuit drives home this point. *See Sachs v. Sprague*, 401 F. Supp. 2d 159 (D. Mass. 2005). In *Sachs*, the court dismissed the shareholder plaintiff's derivative suit because he failed to make pre-suit demand. That plaintiff had alleged that a majority of the board was interested because they faced a substantial likelihood of liability stemming from their failure to assure that the Company had in place an adequate system of internal controls. The court found plaintiff's allegations wanting:

> [h]ere, there are no allegations concerning the absence of such a system [of internal controls] that might give rise to the inference that there was a sustained and systematic failure of the board to exercise oversight . . . . Nor are there any particularly pled facts supporting an inference that the directors . . . possess[ed]

knowledge of facts suggesting potential . . . improprieties . . . and took no action to respond to them.

*Id.* at 165 (quotations and citations omitted). The court went on to explain "[w]hen offering a lawsuit *on behalf of* a corporation, plaintiffs have an obligation to show clearly, as a preliminary matter, that the corporation lacks the capacity to protect its own interests. When they fail to do this, dismissal is proper." *Id.* at 169.

The instant case is no different. Here, as in *Sachs*, the Amended Complaint contains only generalized, conclusory allegations and no specifics. The Court need not accept Plaintiff's unsupported conclusions, bald assertions, or legal interpretations. *See, e.g., Stein v. Royal Bank of Can.*, 239 F.3d 389, 392 (1st Cir. 2001); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (1st Cir. 1993). In the absence of well-pled factual allegations, Plaintiff's claim of failed board oversight amounts to mere conjecture. *See Seminaris v. Landa*, 662 A.2d 1350, 1354, 1355 (Del. Ch. 1995) (allegations that directors failed to prevent CEO from misrepresenting company's financial condition did not demonstrate a substantial likelihood of personal liability). Conclusory allegations about participation and knowledge of the sort on which the Amended Complaint relies are not enough. *See Aronson*, 473 A.2d at 817.

### b. There Are No Allegations That Any Director's Action Caused Injury To Viisage.

Plaintiff's conclusory allegations also fail to explain how any directors caused monetary loss to Viisage. Plaintiff suggests that the Company inflated its third quarter 2004 financial results in order to secure more favorable bank financing than it had in place. *See* Amended Complaint ¶ 138. But Plaintiff also alleges that the Company repaid its previous loan to Lau in the middle of the third quarter with the proceeds of a secondary offering that closed in August.

25

*See* Amended Complaint ¶ 110. Moreover, in the very analysts conference call in which the Company announced its third quarter 2004 financial results, it also announced that it had already reached agreement with Citizens Bank on a new line of credit. *See id.* There exists no allegation that this line was dependant on certain third quarter results. In consequence, the allegations of the Amended Complaint actually preclude any inference that the Company used artificially inflated third quarter financial results to obtain funds to pay off the Lau loan or to obtain more favorable financing. The financing had already been secured by the time the results were announced.

Even more significantly, for the allegedly false representations to give rise to liability, they must have caused injury. There are no allegations in the Amended Complaint that Citizens took any steps to withdraw or foreclose its line of credit when the third quarter results were announced, or even that Citizens ever expressed dissatisfaction with its decision to enter into a banking relationship with Viisage or with Viisage's financial reporting.

Plaintiff's pleading problems run deeper than just those relating to the bank loan. In her Amended Complaint, Plaintiff heralds the fact that the Company reported in March, 2005, material weaknesses in its internal controls and systems. *See* Amended Complaint ¶ 129. Yet, nowhere does Plaintiff explain the significance of these material weaknesses or whether they ever had any effect on the Company's reported financial results. They did not. *See* Viisage Technology Inc.'s Form 10-K for the year ended December 31, 2004, which was filed with the Securities and Exchange Commission on June 30, 2005. A copy of the Form 10-K is attached to the Baraniak Aff. as <u>Exhibit D</u>.[19] The Company's reported financial results did not change even after the internal control weaknesses were identified and addressed. *See* Form 10-K at 46

---

[19] The Court can take judicial notice of the Company's SEC filings because they are in the public record. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) ("[a] court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment").

("There were no changes to any reported financial results that have been released by the Company in this or any other filing as a result of these identified deficiencies. The impact of the above conditions was relevant to the fiscal year ended December 31, 2004 only and did not affect the results of this period or any prior period").

Nor do Plaintiff's allegations of overly optimistic EBITDA projections for the fourth quarter 2004 support a substantial likelihood of directorial liability. *See* Amended Complaint ¶ 137(g). The mere fact that actual EBITDA for the quarter was less than that projected is an insufficient basis, in and of itself, from which to infer that the directors knew or should have known that the projections were faulty. *See In re Focus Enhancements, Inc. Sec. Litig.*, 309 F. Supp. 2d 134, 160 (D. Mass. 2001) ("clearly insufficient" for plaintiffs to allege "that because of the announced restatement, the defendants must have known of the problems at the time they occurred."); and *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 223 (D. Mass. 1999) (fact that reporting errors subsequently corrected does not "suffice to show that . . . misstatements occurred knowingly or recklessly"). And, once again, there is no allegation that Viisage suffered loss as a result of the fact that the fourth quarter forecast was not achieved.

Finally, all that is left is a general allegation that the Company should have taken a $2 million charge to earnings relating to the Georgia litigation before the fourth quarter and vague allegations that the Company was forced to spend thousands of dollars on attorney and accounting fees relating to the internal control deficiencies and a securities class action lawsuit based thereon. Neither supports a substantial likelihood of director liability. Again, Plaintiff alleges no particularized facts to support an inference that the directors should have known that

the Company should have taken the $2 million charge to earnings earlier than it did.[20] And exposure to securities lawsuits does not excuse demand. As the court explained in *Taddy v. Singh ("Primus")*, if the filing of a federal securities lawsuit were sufficient by itself to excuse demand, a shareholder could "always be assured of avoiding the demand requirement simply by including allegations of securities violations," or by filing two complaints instead of one. *Primus*, No. 1:04cv1051 at 16 n.13 (E.D. Va. Dec. 8, 2004). A copy of this case is attached to the Baraniak Aff. as Exhibit E.[21]

    c. **Defendants' Alleged Financial Dealings**
      **With Or Concerning The Company Do**
      **Not Demonstrate That Any Director Had**
      **A Disabling Interest Or Potential**
      **Liability To The Company.**

  Perhaps cognizant of the Amended Complaint's shortcomings in alleging directorial misconduct, Plaintiff claims disabling director interest by alleging that that there is a substantial likelihood that five directors would be found liable based on financial transactions with or concerning the Company. *See* Amended Complaint ¶¶ 147(b)-(f). The Court need not parse these financial transaction allegations too carefully to conclude that they do not suffice to establish interestedness and therefore demand futility.

  Plaintiff alleges that Defendant Denis Berube's company, Lau Acquisition, sold $2.8 million of Viisage stock during the relevant period and had a financial interest in the Company's performance. *See* Amended Complaint ¶¶ 23, 140, 147(b). She also alleges that Defendant B.G.

---

[20] It may be noted that Viisage's outside auditors concluded that the $2 million impairment charge was recorded in the proper quarter as they rendered their opinion that the Company's 2004 financial statements were fairly presented according to GAAP without requiring any restatement. *See* Ex. C, at 51.

[21] Plaintiff herself seems to doubt the merits of the federal securities class action lawsuit filed against the Company and certain of its officers and directors, seeking, unsuccessfully, to stay her derivative claim pending the Court's determination as to whether those class action plaintiffs had pled a cognizable claim. *See* Docket Item # 3 (Plaintiff's Motion to Stay).

Beck received a payment of principal and interest equaling one-third of a $15.3 million loan he made to the Company and, therefore, similarly had a financial interest in the Company's performance. *Id.* ¶¶ 24, 147(c).[22] She alleges obliquely that Defendants Bernard Bailey and Paul Principato similarly had stakes in the Company's performance, Bailey because he was Viisage's CEO, and Principato because he was an executive at Lau. *Id.* ¶¶ 18, 20, 147(j)-(k). Finally, she alleges that Defendants Levine, Reilly and Yon personally profited from sales of Company stock based on non-public ("inside") information. *Id.* 147(d)-(f). None of these financial ties disables any of these Defendants from considering Plaintiff's demand.

Assuming, *arguendo*, that a corporation suffers injury when a director sells stock while possessing insider information, Plaintiff's insider trading allegations are woefully inadequate. Plaintiff's allegation that Defendant Berube indirectly benefited from Lau Acquisition's sale of $2.8 million of Viisage stock lacks the specifics necessary to demonstrate a disqualifying interest. The Amended Complaint does not allege what non-public information either Mr. Berube or Lau possessed about either the Georgia litigation or the Company's internal accounting controls at the time of the sales or how they learned it. Indeed, the Amended Complaint does not even allege what percentage of its Viisage holdings Lau sold or retained. In fact, the Amended Complaint alleges that Lau owns approximately 17% of the Viisage's common stock (*see* Amended Complaint ¶ 23), although Viisage's SEC filings reflect only an 11.8% ownership interest. In any event, it seems clear that Lau actually sold a very small percentage of its holdings in Viisage. Without these specifics, Plaintiff's insider sale allegations do not allege wrongdoing. Plaintiff must allege either particular facts showing that the insider

---

[22] Plaintiff also alleges that both Berube and Beck were paid consultants to the Company, *see* Amended Complaint ¶¶ 23, 24, but does not allege that they are disinterested by reason of those consulting arrangements, nor could she. *See id.* ¶ 147(j).

trading was made on the basis of material non-public information or particular facts from which wrongful intent can be inferred, such as trading at suspicious times and in suspicious amounts. *See Primus*, No. 1:04cv1051 at 14-15; *In re Vantive Corp. Sec. Litig.* 283 F.3d 1079, 1094 (9th Cir. 2002) (sale of only 13% of shares "belies any intent to rid himself of a substantial portion of his holdings"); *In re Nike, Inc. Sec. Litig.*, 181 F. Supp. 2d 1160, 1169-70 (D. Or. 2002) (two-month gap between sales and adverse disclosure negates any inference of scienter); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D. N.J. 2001) ("A broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter").  Because there are no such allegations here, Lau's stock sales do not make Mr. Berube an interested director.  *See also Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682, at *5 (N.D. Tex. Jan. 26, 2004).

The same holds true for the alleged stock sales by Odeon (controlled by Defendant Yon), and Defendants Beck, Levine and Reilly. Odeon is alleged to have sold over $6 million of Viisage stock in November and December of 2004.  *Id.* ¶ 141[23].  Beck is alleged to have sold $780,000 of stock in Viisage's secondary offering in August 2004.  *Id.* ¶ 147(c).  Levine is alleged to have sold $107,000 of Viisage stock from May, 2004 to January, 2005, *id.* ¶ 25, and Reilly, $87,000 worth at some unspecified time.  *Id.* ¶ 22.  Nowhere does Plaintiff allege particularized facts concerning what non-public, material information these Defendants knew at the time of the sales or how they learned it.  Nowhere does Plaintiff allege that these sales were at suspicious times or in suspicious amounts, *i.e.*, particular facts from which wrongful intent can be inferred.  Indeed, a brief review of Viisage's Forms 4 on file with the SEC disclose that Mr. Levine's stock sales were made pursuant to a pre-existing SEC Rule 10b5-1 trading plan.

---

[23] Elsewhere, plaintiff alleges the amount was $8 million. *Id.* at 147(f).

The purpose of adopting such a plan is to avoid being accused of having engaged in a stock sale "on the basis of . . . adverse material non-public information." *Weitschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003) (the existence of a trading plan supports the reasonable inference that stock sales were "pre-scheduled and not suspicious"). See Baraniak Aff., Exhibit F. Finally, as the Delaware Chancery Court recently noted, it is an open question as to whether a company can recover for insider trading by directors and officers in a claim based on breach of fiduciary duty under Delaware law. *In re Oracle Corp.*, 867 A.2d 904, 930-31 (Del. Ch. 2004).

In sum, Plaintiff's conclusory allegations, unsupported by any allegations of particularized facts, do not show a substantial likelihood that a majority of the Defendant directors will be liable such that the directors can be said to be interested and pre-suit demand excused. *See also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) (under Delaware law, "general allegation that the Board participated in the fraudulent scheme . . . [is] insufficient to demonstrate that the Board engaged in conduct that resulted in a substantial risk of personal liability"); *Haber v. Bell*, 465 A.2d 353, 359 (Del. Ch. 1983).

Moreover, apart from these insider trading/breach of fiduciary duty claims, the exculpatory provision in Viisage's by-laws, discussed below in Section E, insulates the director Defendants from the types of liability Plaintiff alleges, thereby further diminishing, if not altogether eliminating, any likelihood that they could be found liable to Viisage and therefore "interested."

### D.    Plaintiff Has Not Alleged That *Any* Defendant Lacked Independence.

The second prong of the *Aronson* analysis, and the second way in which a shareholder plaintiff can satisfy Rule 23.1 and plead demand futility in the absence of an identifiable pecuniary interest, is to allege that a majority of the board's directors lacked independence from

an interested director. A director lacks independence where he or she is so "beholden" to another director who is interested that he or she would be willing to risk his or her reputation rather than sue the interested director. *Beam*, 845 A.2d at 1052. If the Court concludes that *no* director is interested, it need not consider the question: is any director dominated by another director? *See Rales*, 634 A.2d at 936 (court considered independence of presumptively disinterested directors only after finding other directors interested); *Brehm*, 746 A.2d at 258 (no need to determine director's independence from individual once determination was made that individual was disinterested).

Because the Amended Complaint contains no particularized allegations that *any* director was interested, the Court could end its analysis there. In any event, the Amended Complaint also contains no particularized allegations that any director or group of directors was controlled by, or dominated, any other interested director. Instead, it alleges obliquely that two of the directors, Messrs. Berube and Principato, had ties to Lau. While such allegations are generally insufficient to establish a lack of independence, they also effect only two of the thirteen members of Viisage's Board. There are no allegations suggesting that any of the eleven other members of the Board are "beholden" to one another -- or to an "interested" director. Clearly, demand is not excused due to lack of directorial independence.

### E. The Exculpatory Provision In Viisage's By-Laws Requires Dismissal Of Plaintiff's Amended Complaint.

Plaintiff brings eight separate causes of action: breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, breach of fiduciary duty based on insider sales, aiding and abetting breach of fiduciary duty based on insider sales, and contribution and indemnification. The insider trading related claims are addressed in Section 2c. above. The unjust enrichment claims, also premised on insider trading, simply make no

32

sense, as only the party unjustly deprived of its funds, presumably the counterparty to the alleged

insider trade, can bring such a claim. *See Total Care Physicians P.A. v. O'Hara*, 798 A.2d 1043,

1056 (Del. Super. Ct. 2001). As to the rest of these claims, in the absence of any *factual*

allegation allowing a reasonable inference of bad faith or knowing violation of law, the

Amended Complaint, at best, charges a breach of the duty of care. *Compare In re Lukens Inc.*

*S'holders Litig.*, 757 A.2d 720, 728-29 (Del. Ch. 1999) (at most complaint alleged breaching

duty of care where complaint contained "only the most meager allegations" about the director

defendants), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).[24]

　　　Under Delaware law, corporations are permitted to adopt bylaws that eliminate liability

for monetary injury arising from a breach of the duty of care. *See* Del. Code Ann. tit. 8,

§ 102(b)(7) (2006); *see also, Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del. 2001) ("[W]here

the factual basis for a claim *solely* implicates a violation of the duty of care, [the courts have]

indicated that the protections of [an exculpatory provision in a corporate charter] may properly

be invoked and applied." (citations omitted)). Viisage has adopted just such a charter provision:

> No director of Viisage shall be personally liable to the Corporation
> or to any of its stockholders for monetary damages for breach of
> fiduciary duty as a director [within the bounds of Delaware
> law] . . . .

---

[24] A breach of a director's duty of care is characterized by Delaware law as "gross negligence" towards the corporation and does not involve self-interest. *See Aronson*, 473 A.2d at 812. *See also In re Caremark*, 698 A.2d at 967, 968-69 (classifying allegation that directors "violated a duty to be active monitors of corporate performance" as violation of duty of care rather than duty of loyalty); *Dellastatious v. Williams*, 242 F.3d 191, 196 (4th Cir. 2001) (citing *Caremark* in applying duty of care standard to directors' alleged failure to monitor); *Goodwin v. Live Entm't, Inc.*, No. Civ. A. 15765, 1999 WL 64265, at *19 n.10 (Del. Ch. Jan. 25, 1999) ("[e]xciting rhetoric about 'double double crosses' does not substitute for record evidence from which inferences of bad faith, intentional non-disclosures can be drawn."), *aff'd* 741 A.2d 16 (Del. 1999).

*See* Restated Certificate of Incorporation of Viisage Technology, Inc., Article VIII, attached to the Baraniak Aff. as Exhibit G.[25] Because Viisage's corporate charter explicitly exculpates its directors from any liability for breach of the duty of care, the Amended Complaint must be dismissed as to them. *See, e.g., Malpiede*, 780 A.2d at 1094 (upholding 12(b)(6) dismissal of derivative action on basis of exculpatory charter provision); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 501-02 (Del. Ch. 2000) (dismissing claim because of exculpatory charter provision, effect of which "is to guarantee that the defendant directors do not suffer discovery or a trial simply because the plaintiffs have stated a non-cognizable damages claim for a breach of the duty of care"); *In re Frederick's of Hollywood, Inc.*, No. C.A. 15944, 2000 WL 130630, at *6 n.12 (Del. Ch. Jan. 31, 2000) ("It is well established [under] Delaware law that an exculpatory provision in a certificate of incorporation . . . shields the corporation's directors against a judgment for money damages" for breach of a duty of care); *In re Lukens Inc. S'holders Litig.*, 757 A.2d at 734 (dismissal on grounds of exculpatory provision is warranted where "[c]omplaint alleges, if anything, only a breach of the duty of care").

As explained above, the Amended Complaint contains no allegation that any director had a financial interest in a transaction or even that he personally made some factual misrepresentation. At bottom, the Amended Complaint does nothing more than allege a failure to monitor -- a paradigm example of an allegation that implicates only the duty of care.

As to Defendants Bailey and Aulet, respectively, CEO and CFO of Viisage, the Complaint makes no allegation that they undertook any act as an officer that caused injury to Viisage. To the extent that the Complaint is read to include allegations that they made material

---

[25] It is proper for courts to take judicial notice of the Company's certificate of incorporation in deciding a motion to dismiss. *See Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (Mass. 2000) (court can consider "matters of public record" in evaluating motion to dismiss); *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (noting propriety of taking judicial notice of certificate of incorporation in deciding a motion to dismiss).

misrepresentations that artificially inflated the price of Viisage's stock, this might give rise to direct claims by shareholders who purchased stock at inflated prices, but <u>not</u> to derivative claims.

### V.    CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed in its entirety and with prejudice.

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, BUDDY.G. BECK,
CHARLES E. LEVINE, WILLIAM K. AULET,
and HARRIET MOUCHLEY-WEISS,

By their attorneys,


/s/ John R. Baraniak, Jr.
Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Aloknanda S. Bose (BBO #658108)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: October 30, 2006