# C H O A T E

CHOATE HAIL & STEWART LLP

FILED
IN CLERK'S OFFICE

2007 JAN 25  A 10: 51

U.S. DISTRICT COURT
DISTRICT OF MASS.

Mitchell H. Kaplan
(617) 248-5158
mkaplan@choate.com

January 23, 2007

## **HAND DELIVERED**

The Honorable Mark L. Wolf
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:    *Stiegele v. Bailey, et al.*
       U.S. District Court (D. Mass.) Case No. 05-cv-10677-MLW

Dear Chief Judge Wolf:

On behalf of the defendants in the above-entitled action, I write to bring to your Honor's attention, in advance of the upcoming February 1, 2007 hearing on defendants' motion to dismiss, two recent cases decided since briefing on the motion was completed.

The first case is *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266-67 (11th Cir. 2006) in which the court held that an officer's certification under §302 of the Sarbanes-Oxley Act is not by itself probative of scienter for a claim under §10(b) of the Securities Exchange Act of 1934. The second case, *Srebnik v. Dean*, 2006 U.S. Dist. Lexis 73836 (D. Colo. September 26, 2006) holds that there is no private right of action under §302. *Id.* at *18. Both cases support defendants' argument that plaintiff's contention that an allegedly false §302 certification can be the predicate for a §10(b) claim is misplaced. The certifications themselves are not actionable misrepresentations (*Garfield*); nor are they indicia of scienter (*Srebnik*).

Copies of both cases are enclosed for the Court's convenience.

Very truly yours,

*Mitchell H. Kaplan*

Mitchell H. Kaplan

MHK:lbb
Enclosures
cc:    All Counsel of Record (*w/encls.*)



1 of 1 DOCUMENT



Positive
As of: Jan 24, 2007

**ROBERT GARFIELD, individually and on behalf of all others similarly situated, THE DEKALB COUNTY PENSION PLAN, Plaintiffs-Appellants, versus NDC HEALTH CORPORATION, WALTER M. HOFF, RANDOLPH L.M. HUTTO, CHARLES W. MILLER, DAVID H. SHENK, JAMES W. FITZGIBBONS, LEE ADREAN, ERNST & YOUNG, LLP, Defendants-Appellees.**

**No. 05-14765**

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

*466 F.3d 1255; 2006 U.S. App. LEXIS 25435; Fed. Sec. L. Rep. (CCH) P93,976; 20 Fla. L. Weekly Fed. C 26*

**October 12, 2006, Decided**
**October 12, 2006, Filed**

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Northern District of Georgia. D. C. Docket No. 04-00970-CV-WSD-1.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff investment fund appealed the United States District Court for the Northern District of Georgia's dismissal of its second amended securities fraud complaint against defendants, a corporation, its officers, and its accountants, under *15 U.S.C.S. § 78j(b)*, *78t*, and *17 C.F.R. § 240.10b-5*, for failure to meet the heightened requirements of *Fed. R. Civ. P. 9(b)* and *15 U.S.C.S. § 78u-4*.

**OVERVIEW:** The dismissal was entered with leave to amend but the fund appealed, thus electing to stand on the second amended complaint (SAC) and waiving further amendments. The SAC did not specify when the improper accounting occurred and failed to allege how and what products were improperly capitalized or amortized. The corporation's intention to restate its accounts was not alleged, although notice that a restatement was to occur was filed prior to the SAC. Thus, review was limited to the facts in the SAC. The fund failed to allege what was said at a meeting, to whom it was said, or in what context. A general allegation that the officers promoted channel stuffing at meetings did not establish sci-

enter. The Sarbanes-Oxley Act, *18 U.S.C.S. § 1350*, did not alter the pleading requirements of *15 U.S.C.S. § 78u-4*. Since the fund did not allege the accountants knew about the alleged reason for the increased "irregular" allowance for doubtful accounts, or should have known of improper revenue recognition, it failed to provide a strong inference of scienter as to them. The district court reasonably required that any amendment be limited to the legal theories already asserted and any new facts.

**OUTCOME:** The district court's judgment was affirmed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN1] On a motion to dismiss for failure to state a claim upon which relief can be granted, if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in *Fed. R. Civ. P. 56*, and all parties shall be given reasonable opportunity to present

all material made pertinent to such a motion by Rule 56. *Fed. R. Civ. P. 12(b)*. Normally, once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
***Evidence > Judicial Notice > Adjudicative Facts > Public Records***
***Securities Law > U.S. Securities & Exchange Commission > Administration & Establishment***
[HN2] In the context of securities fraud, Securities and Exchange Commission documents may be treated as public records capable of being judicially noticed at the motion to dismiss stage.

***Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule***
[HN3] Generally, an order dismissing a complaint is not final and appealable unless the order holds that it dismisses the entire action or that the complaint cannot be saved by amendment.

***Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview***
***Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule***
[HN4] Where an order dismisses a complaint with leave to amend within a specified period, the order becomes final (and therefore appealable) when the time period allowed for amendment expires. However, the plaintiff need not wait until the expiration of the stated time in order to treat the dismissal as final, but may appeal prior to the expiration of the stated time period. Once the plaintiff chooses to appeal before the expiration of time allowed for amendment, however, the plaintiff waives the right to later amend the complaint, even if the time to amend has not yet expired.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
[HN5] At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
***Civil Procedure > Appeals > Standards of Review > De Novo Review***

[HN6] The appellate court reviews de novo the dismissal of a complaint pursuant to *Fed. R. Civ. P. 12(b)(6)*.

***Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices***
[HN7] *15 U.S.C.S. § 78j(b)* and *17 C.F.R. § 240.10b-5* make it unlawful for any individual to employ a manipulative or deceptive device in connection with the purchase or sale of any security. To allege securities fraud under § 240.10b-5, a plaintiff must show: (1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which the plaintiff relied, (5) that proximately caused his injury.

***Securities Law > Liability > Secondary Liability > Controlling Persons > General Overview***
[HN8] Section 20(a) of the Securities Exchange Act of 1934 provides for liability of "controlling persons" who aid and abet any person liable under any provision of the Act or of any rule or regulation thereunder. *15 U.S.C.S. § 78t*.

***Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices***
[HN9] See *15 U.S.C.S. § 78j*.

***Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices***
[HN10] *17 C.F.R. § 240.10b-5* was promulgated under *15 U.S.C.S. § 78j*.

***Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices***
[HN11] See *17 C.F.R. § 240.10b-5*.

***Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices***
[HN12] Channel stuffing, flooding distribution channels by employing incentives to induce customers into purchasing products in large quantities, is not fraudulent per se. While there may be legitimate reasons for attempting to achieve sales earlier via channel stuffing, providing excess supply to distributors in order to create a misleading impression in the market of the company's financial

health is not one of them. Channel stuffing may amount to fraudulent conduct when it is done to mislead investors.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN13] See *Fed. R. Civ. P. 9(b)*.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN14] *Fed. R. Civ. P. 9(b)* is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN15] A sufficient level of factual support for a *17 C.F.R. § 240.10b-5* claim may be found where the circumstances of the fraud are pled in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN16] For claims brought under the Securities Exchange Act of 1934, including claims under *15 U.S.C.S. § § 78j(b), 78t*, the complaint must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. *15 U.S.C.S. § 78u-4(b)(1)*.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN17] See *15 U.S.C.S. § 78u-4(b)(1)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN18] A securities fraud complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *15 U.S.C.S. § 78u-4(b)(2)*. This statutory requirement alters the usual contours of a *Fed. R. Civ. P. 12(b)(6)* ruling because, while a court continues to give all reasonable inferences to the plaintiffs, those inferences supporting scienter must be strong ones. Factual allegations may be aggregated to infer scienter and must be inferred for each defendant with respect to each violation.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN19] *15 U.S.C.S. § 78u-4(b)(2)*.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Recklessness*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN20] A securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner. Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*

466 F.3d 1255, *; 2006 U.S. App. LEXIS 25435, **;
Fed. Sec. L. Rep. (CCH) P93,976; 20 Fla. L. Weekly Fed. C 26

[HN21] Claims of securities fraud cannot rest on specu-lation and conclusory allegations.

**Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > General Overview**
**Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stockholders > Reporting Requirements**
**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements**
**Securities Law > Liability > Statutory Application & Interpretation**
[HN22] The plain meaning of the language contained in the Sarbanes-Oxley Act, *18 U.S.C.S. § 1350*, does not indicate any intent to change the requirements for plead-ing scienter set forth in the Private Securities Litigation Reform Act, *15 U.S.C.S. § 78u-4(b)(2)*. The Sarbanes-Oxley Act requires that the chief executive officer and chief financial officer certify each periodic report con-taining financial statements filed by an issuer with the Securities and Exchange Commission. *18 U.S.C.S. § 1350(a)*. The statute also provides for imprisonment of up to 10 years or a fine of $ 1,000,000 for any person who certifies a periodic financial statement knowing that the periodic report accompanying the statement does not comport with all the requirements set forth in § § 13(a), 15(d), of the Securities Exchange Act of 1934, *15 U.S.C.S. § § 78m(a), 78o(d)*. *18 U.S.C.S. § 1350(c)*. An individual who "willfully certifies" such a statement is subject to a prison term of 20 years and a fine of up to $ 5,000,000. Nowhere in the statute is there any mention of civil liability or pleading requirements for scienter in civil actions brought for securities fraud.

**Governments > Legislation > Interpretation**
[HN23] A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common mean-ing. When construing the meaning of a statute, the be-ginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished.

**Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > General Overview**
**Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stockholders > Reporting Requirements**

**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements**
[HN24] The plain language of the Sarbanes-Oxley Act, *18 U.S.C.S. § 1350*, evidences no congressional intent to alter the pleading requirements set forth in the Private Securities Litigation Reform Act.

**Governments > Legislation > Interpretation**
[HN25] When two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed con-gressional intention to the contrary, to regard each as effective.

**Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > General Overview**
**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accounting Irregularities**
**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Relevant Factors**
[HN26] A Sarbanes-Oxley Act, *18 U.S.C.S. § 1350*, certification is only probative of scienter if the person signing the certification was severely reckless in certify-ing the accuracy of the financial statements. This re-quirement is satisfied if the person signing the certifica-tion had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other "red flags," that the financial statements contained material misstatements or omissions.

**Civil Procedure > Justiciability > Standing > General Overview**
**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Reliance > General Overview**
**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Standing**
[HN27] Standing for a securities fraud claim is estab-lished by allegations that the plaintiffs bought or sold shares of the stock in question within a reasonable period of time after the allegedly fraudulent conduct occurred to support an inference of reliance.

**Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accountants & Auditors**

[HN28] Generally Accepted Accounting Principles (GAAP) are the basic postulates and broad principles that guide business accounting. GAAP is approved by the Auditing Standards Board of the American Institute of Certified Public Accountants (AICPA). Generally Accepted Auditing Standards (GAAS) are the standards prescribed by the AICPA for the conduct of auditors in the performance of an examination. GAAP and GAAS establish guidelines for measuring, recording, and classifying a business entity's transactions.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accountants & Auditors*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accounting Irregularities*
[HN29] Drastic overstatement of accounts, or other red flags, combined with alleged violations of Generally Accepted Auditing Standards or Generally Accepted Accounting Principles may be enough to establish the requisite level scienter.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accountants & Auditors*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accounting Irregularities*
[HN30] Red flags are those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors. It is established, however, that the purported red flags cannot simply "re-hash" the alleged Generally Accepted Accounting Principles violations in a securities fraud case.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accounting Irregularities*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Recklessness*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN31] Allegations of Generally Accepted Auditing Standards or Generally Accepted Accounting Principles, standing alone, do not satisfy the particularity requirement of *Fed. R. Civ. P. 9(b)*. Such allegations do not

create a strong inference of recklessness because they merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Accountants & Auditors*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN32] A securities fraud plaintiff may not establish scienter by alleging that the auditor would have discovered the fraud had it not violated Generally Accepted Auditing Standards.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Heightened Pleading Requirements*
[HN33] Merely alleging scienter in general, conclusory terms does not meet the particularity requirement of *15 U.S.C.S. § 78u-4(b)(2)*.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN34] *Fed. R. Civ. P. 15(a)* states that leave to amend shall be freely given when justice so requires.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN35] Denial of leave to amend is reviewed for abuse of discretion.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN36] Trial courts have broad discretion in permitting or refusing to grant leave to amend. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN37] See *Fed. R. Civ. P. 15(a)*.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN38] In the exercise of sound discretion, the granting of leave to amend can be conditioned in order to avoid prejudice to the opposing party. But the conditions placed on a plaintiff's right to amend its complaint must be reasonable.

**JUDGES:** Before EDMONDSON, Chief Judge, BIRCH and ALARCON, Circuit Judges. *

> * Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

**OPINION BY:** Alarcon

**OPINION:** [*1259] ALARCON, Circuit Judge:

Lead Plaintiff DeKalb County Pension Fund ("DeKalb") appeals from the District Court's Order dismissing its Second Amended Complaint for failure to meet the heightened requirements of *Rule 9(b)* and the Private Securities Litigation Reform Act ("PSLRA"), *15 U.S.C. § 77z-1, 78u*. We affirm the District Court's Order dismissing the Second Amended Complaint and hold that DeKalb waived its right to further amendment of its Complaint by taking the instant appeal.

**I**

On April 07, 2004 Dekalb brought a claim in the United States District Court for the Northern District of Georgia for securities fraud as a putative class action against NDCHealth Corporation ("NDC"), several of its officers ("Individual Defendants"), and the accounting firm Ernst and Young LLP ("E&Y"). DeKalb set forth two causes [**2] of action in its Second Amended Complaint: (1) securities fraud pursuant to Section 10(b), *15 U.S.C. § 78j(b)* and *Rule 10b-5, 17 CFR § 240.10b-5*; and (2) violation of Section 20(a) of the Honora Exchange Act, *15 U.S.C. 78t*.

The gravamen of the Second Amended Complaint is that during the class period of August 21, 2002 through August 9, 2004, NDC "engaged in a variety of undisclosed accounting manipulations and business practices which caused the Company's financial results to be materially overstated." DeKalb alleges that NDC engaged in channel stuffing; n1 prematurely recognized sales reve-

nue; did [*1260] not follow Generally Accepted Accounting Principles; and materially misstated the value of a failed investment in a company known as MedUnite. E&Y is being sued because it served as NDC's independent auditor and issued audit opinions on the Company's 2003 and 2004 financial statements.

> n1 Channel stuffing is a practice whereby a company floods distribution channels by employing incentives to induce customers into purchasing their products in large quantities, creating a short-term bump in revenue and excess supply in the distribution chain. *See e.g. In re Scientific-Atlanta Inc., Securities Litigation, 239 F. Supp. 2d 1351, 1355 (N.D. Ga. 2002)* ("'channel stuffing' has the effect of shifting earnings into earlier quarters to the detriment of earnings in later quarters.").

[**3]

NDC and E&Y filed motions to dismiss DeKalb's Second Amended Complaint on October 13, 2004 . After the opposition and reply papers were filed, on January 5, 2005, NDC filed a Form 8-K and a Form 12b-25 document with the SEC disclosing that it would restate its accounts for the prior period "beginning with its fiscal year ended May 31, 2002 through the first quarter of fiscal year 2005 ended August 27, 2004." The District Court took judicial notice of these documents. n2 The Second Amended Complaint contains no allegation regarding the restatement of accounts.

> n2 [HN1] On a motion to dismiss for failure to state a claim upon which relief can be granted, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in *Rule 56*, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by *Rule 56*." *Fed. R. Civ. P. Rule 12(b)*. Normally, "once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment." *Property Mgmt. & Inv., Inc., v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985)* (citing *Carter v. Stanton, 405 U.S. 669, 671, 92 S. Ct. 1232, 31 L. Ed. 2d 569 (1972))*. However, [HN2] in the context of securities fraud, "SEC documents [may be treated] as public records capable of being judicially noticed at the motion to dismiss stage." *Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999)*. By taking judicial notice of SEC docu-

ments, the District Court did not transform Defendants' motions to dismiss into a motion for summary judgment. *Id.*

[**4]

The District Court dismissed Appellant's Second Amended Complaint on July 27, 2005 with leave to amend. The order states: "Plaintiff shall file its Third Amended Complaint within thirty (30) days of entry of this Order, and Defendants shall file their motions to dismiss within thirty (30) days of the filing of the *Third Amendment*." *In re NDC Health Corp. Inc.,* No. 1:04-cv-0970, slip op. at 53 (N.D. Ga. July 27, 2005). Instead of filing a third amended complaint, DeKalb filed a Notice of Appeal on August 26, 2005, the last day of the period allotted for filing an amended complaint.

II

On September 13, 2005 , this Court inquired *nostra sponte* whether the District Court's Order of July 27, 2005 constitutes a final appealable order. In response, the parties agreed that [HN3] "[g]enerally, an order dismissing a complaint is not final and appealable unless the order holds that it dismisses the entire action or that the complaint cannot be saved by amendment." *Van Poyck v. Singletary , 11 F.3d 146, 148 (11th Cir. 1994)* (citing *Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO , 724 F.2d 1552, 1554-55 (11th Cir. 1984)).* [**5]

[HN4] "[W]here an order dismisses a complaint with leave to amend within a specified period, the order becomes final (and therefore appealable) when the time period allowed for amendment expires." *Briehler v. Miami , 926 F.2d 1001, 1002 (11th Cir. 1991).* However, "the plaintiff need not wait until the expiration of the stated time in order to treat the dismissal as final, but may appeal prior to the expiration of the stated time period." *Schuurman v. Motor Vessel "Betty K V," 798 F.2d 442, 445 (11th Cir. 1986).* Accordingly, this Court has jurisdiction over this timely filed appeal pursuant to *28 U.S.C. § 1291.* By filing an appeal in this manner, however, [*1261] DeKalb elected to stand on its Second Amended Complaint and waived its right to further amendment. *Schuurman, 798 F.2d at 445* ("Once the plaintiff chooses to appeal before the expiration of time allowed for amendment, however, the plaintiff waives the right to later amend the complaint, even if the time to amend has not yet expired.").

III

DeKalb argues the District Court erred in dismissing its Second Amended Complaint because, in determining that DeKalb [**6] did not plead facts sufficient to give rise to a strong inference of scienter, "[t]he District Court

failed to consider all of the facts pled and also failed to view the allegations in a light most favorable to Appellant." (Appellant's Br. 34.) DeKalb also argues that "the District Court erred in determining that Appellant failed to plead the reasons for the falsity of the alleged misstatements and omissions with requisite specificity." Finally, Dekalb assigns error to the District Court for "improperly impos[ing] conditions on Appellant's right to amend its complaint."

[HN5] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).* [HN6] The "court reviews *de novo* the dismissal of a complaint pursuant to *Rule 12(b)(6).*" *Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187 (11th Cir. 2002).*

[HN7] *Section 10(b)* and *Rule 10b-5* make it unlawful for any individual to employ a manipulative or deceptive device in connection with the purchase or sale of any security. n3 "To allege [**7] securities fraud under *Rule 10b-5,* a plaintiff must show: 1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." *Bryant, 187 F.3d at 1281.* [HN8] Section 20(a) of the Exchange Act provides for liability of "controlling persons" who aid and abet "any person liable under any provision of this chapter or of any rule or regulation thereunder." *15 U.S.C. 78t.* Dekalb's claims under *Section 20(a)* are alleged against the Individual Defendants, and predicated upon the same alleged unlawful conduct relevant to its claims under *Section 10b.* (Compl. P 186.) Accordingly, the success of DeKalb's *section 20(a)* claim turns on the resolution of its claims under *Section 10b* and *Rule 10b-5.*

> n3 Section 10(b), *15 U.S.C.S. § 78j,* provides:
>
>> [HN9] To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act [*15 USCS § 78c* note]), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the

public interest or for the protection of investors.

*Rule 10b-5*, [HN10] *17 C.F.R. § 240.10b-5*, was promulgated under *Section 10(b)* and provides:

> [HN11] It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

[**8]

**A**

[HN12] Channel stuffing is not fraudulent *per se. Greebel v. FTP Software, Inc., 194 F.3d 185,* [*1262] *202 (1st Cir. 1999)* ("There is nothing inherently improper in pressing for sales to be made earlier than in the normal course."). In *Greebel,* the First Circuit commented that in the context of alleged improper revenue recognition, "channel stuffing evidence has some probative value. But that value is weak." *Id. at 203; but see In re Cabletron Sys., 311 F.3d 11, 26 (1st Cir. 2002)* (allegations of improper revenue recognition, including fictitious sales, and channel stuffing, were supported by averments of testimonial evidence from insiders and pled with adequate specificity to survive a motion to dismiss). The Seventh Circuit determined in *Makor Issues & Rights, Ltd., et al., v. Tellabs, Inc., 437 F.3d 588 (7th Cir. 2006)* that "[w]hile there may be legitimate reasons for attempting to achieve sales earlier via channel stuffing, providing excess supply to distributors in order to create a misleading impression in the market of the company's financial health is not one of them." *Id. at 598.* We agree [**9] with the Seventh Circuit that channel stuffing may amount to fraudulent conduct when it is done to mislead investors, but the allegations of channel stuffing in the instant case were not pled with sufficient detail to overcome the PSLRA's scienter hurdle.

*Rule 9(b)* provides that [HN13] "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." n4 *Fed. R. Civ. P. Rule 9(b).* [HN14] "*Rule 9(b)* is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)* (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).* [HN15] "A sufficient level of factual support for a [10b] claim [**10] may be found where the circumstances of the fraud are pled in detail. 'This means the who, what, when where, and how: the first paragraph of any newspaper story.'" *Gross v. Medaphis Corp., 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)* (quoting *DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)).*

> n4 *Rule 9(b)* states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Fed. R. Civ. P. Rule 9(b).*

[HN16] For claims brought under the Exchange Act, including Appellants' claims under *Section 10b* and *Section 20a,* the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on [**11] which that belief is formed." *15 U.S.C. § 78u-4(b)(1).* n5

> n5 *Section 78u-4(b)* provides:
>
> > [HN17] (1) Misleading statements and omissions
> > In any private action arising under this chapter in which the plaintiff alleges that the defendant--
> > (A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

[*1263] DeKalb argues that it set forth a claim satisfying the requirements of *Rule 9(b)* and the PSLRA when it alleged that NDC understated expenses in violation of GAAP in three ways: "(1) it began to capitalize costs well before its development [**12] projects reached 'technological feasibility;' (2) it amortized costs over periods much greater than the economic life of its software assets; and (3) it applied an excessive burden factor to its capitalized costs, thereby expensing less than necessary in the present term." In discounting this argument, the District Court stated "Plaintiff's allegations are thin, and are based almost entirely on statements by an undisclosed former executive in the Physician Services Group." *In Re NDC Health Corp. Inc.,* No. 1:04-cv-0970, slip op. at 44.

The District Court did not err because Dekalb's allegations regarding amortization and capitalization are vague and difficult to evaluate. For example, the Second Amended Complaint does not specify when the improper accounting occurred. It also fails to allege how and what products were improperly capitalized or amortized.

DeKalb also argues that the District Court erred in holding that DeKalb's allegations regarding material misstatement in NDC's financial statements were overly speculative and amount to nothing more than "nonactionable corporate mismanagement." The District Court determined that "the financial reporting was itself accurate" and [**13] the reports "accurately reflected the performance of the Company." At the time the District Court issued its opinion, NDC had already declared its intention to restate its accounts. On January 05, 2005, NDC filed a disclosure with the SEC stating that it "identified certain practices regarding the exchange of physician software inventory held by the Company's value-added resellers that were inconsistent with Company policies." Accordingly, NDC announced that "after discussion with the Company's independent accountants, on January 4, 2005, the Audit Committee of the Board of

Directors determined it is appropriate to restate prior-period results beginning with its fiscal year ended May 32, 2002 through the first quarter of fiscal year 2005 ended August 27, 2004 ." NDC also noted that "[t]he restatement will also include other identified adjustments from prior periods." It follows that NDCs prior financial reporting may not have been accurate and may not have reflected the performance of the company.

DeKalb elected to stand on its Second Amended Complaint. NDC's intention to restate its accounts is not alleged in the Second Amended Complaint. Because DeKalb waived its right to file [**14] a third amended complaint, we limited our review to the facts set forth in the Second Amended Complaint instead of speculating whether DeKalb could have filed a third amended complaint that would have met the pleading requirements of the PSLRA and *Rule 9(b).*

Turning to the allegations set forth in the Second Amended Complaint, DeKalb maintains that it alleged improper revenue recognition with adequate specificity by stating that in March of 2004, "a management level employee in the Physician Services unit" notified E&Y of a "dire situation facing that business segment -- that accounts receivable were very high as a result of aggressive channel-stuffing practices, which rendered the unit's reported revenues highly suspect." (Compl. P 61.) According to DeKalb, NDC "determined that approximately $ 25 million of inventory was in the channel as of March 31, 2004 ." ( *Id. at P 63.*) The Second Amended Complaint goes on to state that, after management learned of this information, NDC decided to "delay its earning release pending [*1264] a review of its revenue recognition practices in the Physician Services Unit." (*Id.*) In sum, DeKalb alleged that NDC issued erroneous financial statements [**15] that contained substantial misstatements due to the improper recognition of revenue and channel stuffing in the Physician Services Unit.

DeKalb also alleged that "Defendants sought to conceal their improper revenue recognition by increasing reserves and taking large, year-end charges for uncollected receivables, without explanation." Absent from these allegations are any detailed allegations of scienter with respect to the alleged misrepresentations. **B**

DeKalb argues it was plain error for the District Court to conclude "that the Complaint does not contain allegations sufficient to give rise to a strong inference of scienter with respect to Appellees[.]" [HN18] A complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2).* n6 "This [statutory] requirement alters the usual contours of a *Rule 12(b)(6)* ruling because, while a court continues to give all reasonable inferences to plaintiffs, those infer-

ences supporting scienter must be strong ones." *In re Cabletron Sys., 311 F.3d at 28* (citing *Greebel, 194 F.3d 185, 201 (1st Cir. 1999))*. [**16] "[F]actual allegations may be aggregated to infer scienter and must be inferred for each defendant with respect to each violation." *Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004)*.

n6 *Section 78u-4(b)(2)* provides:

> [HN19] (2) Required state of mind
> In any private action arising under
> this chapter in which the plaintiff
> may recover money damages only
> on proof that the defendant acted
> with a particular state of mind, the
> complaint shall, with respect to
> each act or omission alleged to
> violate this chapter, state with par-
> ticularity facts giving rise to a
> strong inference that the defendant
> acted with the required state of
> mind.

Dekalb contends "the District Court fail[ed] to properly consider all scienter allegations in the aggregate, [and] the Court patently failed to interpret the allegations in a light most favorable to Appellant." [HN20] "[A] securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant [**17] acted in a severely reckless manner." *Bryant, 187 F.3d at 1287*. "'Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" *Id. at 1282 n.18* (quoting *McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir. 1989))*.

Turning to the salient allegations of scienter set forth in the Second Amended Complaint, DeKalb alleged that Defendants Hoff and Miller attended monthly operations meetings in Arizona and "every aspect of the Physician Services business was discussed in detail, including the aggressive channel stuffing and mounting problems with accounts recevable (sic)." (Compl. P 56.) In the Second Amended Complaint, DeKalb alleged that testimonial evidence provided by a "former senior executive" would show Defendants Miller and Hoff knew there was a problem with "mounting accounts receivable" but de-

cided to [**18] continue with "aggressive discounting and credit terms" because the company had to "make its numbers." n7

n7 In its Second Amended Complaint, DeKalb avers:

> According to the former senior ex-
> ecutive, Defendants Miller and
> Hoff often discussed the difficult
> tension between the rising ac-
> counts receivable and the aggres-
> sive discounting and extended
> credit terms being given to VARs
> on the one hand, and the need for
> the Company and Miller rema to
> "make its numbers," on the other.
> The senior executive related that
> Hoff rked that the Company was
> 'quarter driven,' and that the need
> to sustain reported revenue growth
> outweighed the need to properly
> address the mounting accounts re-
> ceivable and the attendant ques-
> tionable revenue recognition. In-
> stead of addressing growing con-
> cerns of managers in the unit that
> the aggressive discounting, chan-
> nel-stuffing, and extended credit
> terms . . . were creating serious re-
> alizability (sic) concerns . . . De-
> fendants Hoff and Miller directed
> the unit to forge ahead and con-
> tinue to aggressively stuff the
> channel in order to give the ap-
> pearance of robust revenue
> growth.

(Compl. P 57.)

[**19]

[*1265] Absent from these allegations are any particularized averments of fraud or scienter. In *Theoharous v. Fong, 256 F.3d 1219 (11th Cir. 2001)*, this Court held that scienter was not pled with adequate specificity "because the plaintiffs did not allege the *contextt* in which Fong made this statement, [and] it does not appear from the face of the complaint that Fong must have known that the statement presented a danger of misleading buyers or sellers." *Id. at 1225*. As in *Fong*, DeKalb's broad claim of testimonial evidence is not set forth with requisite detail because DeKalb failed to allege what was said at the meeting, to whom it was said,

or in what context. Accordingly, the averment lacks the requisite particularity. It is well established that [HN21] "claims of securities fraud cannot rest 'on speculation and conclusory allegations.'" *Hoffman v. Comshare, Inc . (In re Comshare Inc. Sec. Litig.), 183 F.3d 542, 553 (6th Cir. 1999))* (quoting *San Leandro Emergency Med. Plan v. Philip Morris Co., 75 F.3d 801, 813 (2d Cir. 1996).* A general allegation that Individual Defendants promoted channel stuffing at a series [**20] of meetings does not establish scienter.

DeKalb also avers that the Individual Defendants, Mssrs. Hoff, Hutto and Miller, made a PowerPoint presentation in Atlanta on March 1, 2004 that "contained several statements identifying problems with the VAR channel." The presentation included discussion of the following topics: "Heavy promotion discounting to drive VAR sales," and "Change ordering/buying behavior of Vars from Q/E promotion discount buying to pull through demand buying and add additional VARs". DeKalb also alleges: "Identified as 'Conditions for Success/Risks' (sic) were 'VAR accounts receivable collections' and 'Visibility into VAR inventory levels and outbound programs/assistance to move inventory physician practices (pull through sales).'" DeKalb maintains that these allegations establish a strong inference of scienter on the part of the individual defendants. We disagree.

Viewing these confusing statements in the best possible light, it is possible to surmise that the Individual Defendants might have been aware of improper revenue recognition in the VAR channel and also knew that they needed to increase actual sales rather than "promot[e] discount buying." But that [**21] conclusion is based on multiple inferences and drawn from somewhat baffling language. DeKalb failed to allege what was actually discussed at the meeting. Accordingly, the allegation regarding the meeting of March 1, 2004, does not give rise to a strong inference of scienter.

DeKalb also argues that the personal certifications required by the Sarbanes-Oxley Act and signed by senior executives "are indicia of Defendants' scienter." Dekalb contends that by signing the certification, Defendants represented to the general public that: "(1) they reviewed the filing being certified; (2) the report did not contain any untrue statement of material [*1266] fact . . .; (3) the report fairly presented the financial condition of the company; and (4) they designed the disclosure controls and procedures to ensure that material information relating to the Company was disclosed to them for the period in question."

[HN22] The plain meaning of the language contained in Sarbanes-Oxley, *18 U.S.C. § 1350*, does not indicate any intent to change the requirements for pleading scienter set forth in the PSLRA, *15 U.S.C. § 78u-*

*4(b)(2)*. Sarbanes-Oxley requires that the chief executive [**22] officer and chief financial officer certify "[e]ach periodic report containing financial statements filed by an issuer with the Securities and Exchange Commission . . ." *18 U.S.C. § 1350(a)*. The statute also provides for imprisonment of up to 10 years or a fine of $ 1,000,000 for any person who "certifies a periodic financial statement . . . knowing that the periodic report 18 accompanying the statement does not comport with all the requirements set forth in [section 13(a) or 15(d) of the Securities Exchange Act of 1934 *(15 U.S.C. 78m(a) or 78o(d))*] . . ." U.S.C. § *1350(c)*. An individual who "willfully certifies" such a statement is subject to a prison term of 20 years and a fine of up to $ 5,000,000. Nowhere in the statute is there any mention of civil liability or pleading requirements for scienter in civil actions brought for securities fraud.

[HN23] "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)* (citing *Burns v. Alcala, 420 U.S. 575, 580-81, 95 S. Ct. 1180, 43 L. Ed. 2d 469 (1975))*. [**23] When construing the meaning of a statute, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475, 112 S. Ct. 2589, 120 L. Ed. 2d 379 (1992)* (citing *Demarest v. Manspeaker, 498 U.S. 184, 190, 111 S. Ct. 599, 112 L. Ed. 2d 608 (1991))*. In the instant case, the statute does not speak to the issue of pleading scienter. [HN24] The plain language of Sarbanes-Oxley evidences no congressional intent to alter the pleading requirements set forth in the PSLRA. *18 U.S.C. § 1350*.

DeKalb's interpretation of Sarbanes-Oxley conflicts with the plain language of the PSLRA. [HN25] "'[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *J.E.M. Ag Supply v. Pioneer Hi-Bred Int'l, 534 U.S. 124, 143-44, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001)* (quoting *Morton v. Mancari, 417 U.S. 535, 551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974))*. If we were to accept [**24] DeKalb's proffered interpretation of Sarbanes-Oxley, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA. We decline to adopt such an interpretation.

Instead, we hold that [HN26] a Sarbanes-Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying

the accuracy of the financial statements. This requirement is satisfied if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other "red flags," that the financial statements contained material misstatements or omissions. In the instant case, there are no allegations in the Second Amended Complaint that indicate the [*1267] presence of such "red flags" in the company's financial statements.

The Second Amended Complaint states that "the Physician Services accounts receivable grew from $ 200,000 to almost $ 11 million in approximately eighteen months beginning in late 2002." By way of comparison, NDC announced that its revenue for the [**25] third quarter of 2003 was $ 116.1 million and net income was only $ 9.3 million. DeKalb alleged that "[i]n the fourth quarter (ended May 30, 2003 . . .), NDC increased its allowance for doubtful accounts by $ 4.26 million, nearly seven times the average for the three previous quarters." (Compl. P 68.) Those numbers are somewhat alarming because they indicate a relatively large amount of revenue that might never be realized. But those statements themselves do not appear to be untrue or misleading.

Viewing the allegations individually and in aggregate, the facts set forth in the Second Amended Complaint do not create a "strong inference" of scienter. *See 15 U.S.C. § 78u-4(b)(2)* (mandating "strong inference that the defendant acted with the required state of mind.") Accordingly, the District Court did not err in dismissing DeKalb's Second Amended Complaint.

## C

NDC argues that Dekalb did not have standing to bring a claim regarding the stated value of MedUnite because DeKalb did not purchase any stock until after the alleged fraudulent conduct occurred. Dekalb alleged that the impact of the sale of MedUnite was realized on March 19, 2003 . (Compl. [**26] P 75.) But Dekalb did not buy stock until March 10 and 11, 2004. Accordingly Dekalb did not have standing to bring this claim because they did not buy the stock until long after the impact of the sale was realized. *See Marsh v. Armada Corp., 533 F.2d 978, 981-82 (6th Cir. 1976)* ([HN27] "Standing is established by allegations that plaintiffs bought or sold shares of the stock in question within a reasonable period of time after the allegedly fraudulent conduct occurred to support an inference of reliance."); *see also Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975)* (holding that "the plaintiff class for purposes of a private damage action under § 10(b) and *Rule 10b-5 [i]s* limited to actual purchasers and sellers of securities.").

## IV

DeKalb argues that the District Court erred in dismissing its Complaint against E&Y because E&Y certified NDC's financial accounts even though their practices did not comport with Generally Accepted Acounting Principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS"). n8 DeKalb alleged that E&Y ignored "red flags" when it issued unqualified audits and financial statements [**27] in 2003 and 2004. (Compl. PP 151-54.)

n8 [HN28] Generally Accepted Accounting Principles ("GAAP") are the "basic postulates and broad principles" that guide business accounting. *SEC v. Price Waterhouse, 797 F. Supp. 1217, 1222-23 n.17 (S.D.N.Y. 1992)* (cited in *Ziemba, 256 F.3d at 1200.* GAAP is approved by the Auditing Standards Board of the American Institute of Certified Public Accountants ("AICPA"). *Id.* Generally Accepted Auditing Standards ("GAAS") are the standards prescribed by the AICPA for the conduct of auditors in the performance of an examination. *Id.* GAAP and GAAS establish guidelines for measuring, recording, and classifying a business entity's transactions. *Id.*

## A

DeKalb argues that anomalous increases in NDC's reserve for doubtful accounts put E&Y "on notice of the other Defendant's fraudulent scheme." [HN29] Drastic overstatement of accounts, or other red [*1268] flags, combined with alleged violations of GAAS or GAAP may be enough to establish the requisite level [**28] scienter. *In re Eagle Bldg. Tech. Inc., Sec. Litig., 319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004)* (finding sufficient particularity where fraudulent contracts made up 74% of the company's business, financial statements had 60 out of 75 line items restated, and red flags included *inter alia,* purchase order discrepancies in the hundreds of thousands, delivery discrepancies of 50% of goods, and post-dated license agreements); *see also In re Friedman's, Inc., Sec. Litig., 385 F. Supp. 2d 1345, 1365-66 (N.D. Ga. 2005)* (finding a strong inference of scienter where auditing firm "had continuous arguments" with company management over allowance for uncollected accounts, the firm "knew that" the company was under-reserved, the firm discussed doubtful accounts every quarter, and the firm committed numerous GAAP and GAAS violations); *In re Hamilton Bankcorp., Inc., Sec. Litig., 194 F. Supp. 2d 1353 (S.D. Fla. 2002)* (finding sufficient particularity where auditing firm committed numerous GAAP and GAAS violations and ignored an investigation by the Office of the Comptroller of the Cur-

rency, the simultaneous sale and purchase of overpriced loans [**29] or securities to avoid write down on its books, and the corporation's failure to adhere to SEC requirements."

[HN30] Red flags are "those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re Sunterra Corp. Sec. Litig., 199 F. Supp. 2d 1308, 1334 (M.D. Fla 2002)*. "It is established, however, that the purported red flags cannot simply 're-hash' the alleged GAAP violations." *In re Spear & Jackson Sec. Litig., 399 F. Supp. 2d 1350, 1363 (S.D. Fla. 2005)* (citing *Holmes v. Baker, 166 F. Supp. 2d 1362, 1379 (S.D. Fla. 2001))*.

DeKalb alleged that E&Y was put on notice of fraudulent activity by NDC's increased allowance for "doubtful accounts" in the fourth quarter of 2003 and 2004. (Compl. P 67). DeKalb also claimed that "[a]n analysis of NDC's reserve for doubtful accounts and related charge-offs and recoveries for fiscal year 2003 and fiscal year 2004 reveals a pattern strongly suggesting that Defendants concealed overstated revenues for fiscal year 2003 and 2004 by increasing NDC's provision in the fourth [**30] quarter of both years and taking a large, anomalous charge for uncollectible accounts receivable. . . ." *(Id.)* The Complaint alleged

> the first three quarters of fiscal year 2003 NDC provisioned at a modest rate and actually reported net recoveries on accounts receivable previously written off . . . [but] in the fourth quarter (ended May 30, 2003, and incidentally, the quarter in which NDC's independent auditors began to review the Company's financials in preparation for the filing of the Form 10-K), NDC increased its allowance for doubtful accounts by $ 4.26 million, nearly seven times the average for the three previous quarters.

(Compl. P 68.) DeKalb also alleged that "NDC charged-off over $ 6.1 million in uncollectible accounts receivable." *(Id. )* The Second Amended Complaint states that "[i]n fiscal, 2004, in spite of NDC's special review of its revenue recognition practices and reserves prior to the issuance of its third quarter results, the Company once again took an anomalous charge against its reserve of approximately $ 6.7 million, or 78% of its reserve [and] failed to give any explanation for these year-end results[.]" *(Id.)* DeKalb alleged [**31] that this charge was

"highly irregular given that NDC had purportedly experienced net recoveries for the first three quarters of fiscal year 2003 and modest provisioning [*1269] and charge offs for the first three quarters of fiscal 2004." *(Id.)*

DeKalb has not alleged any facts that show E&Y was actually aware or should have known that NDC recklessly "concealed overstated revenues." *See Bryant, 187 F.3d at 1287* (adopting the recklessness standard). DeKalb does not allege facts that show that such increased allowances were so irregular as to put an auditing company on notice for fraud. *See Ziemba, 256 F.3d at 1210* (dismissing a complaint where auditing firm was not "tipped off"). The Second Amended Complaint states NDC chose the fourth quarter to start increasing the allowances for doubtful accounts "incidentally" at the same time E&Y "began to review the Company's financials." Since DeKalb has not alleged that E&Y knew about the alleged reason for the increased "irregular" allowance for doubtful accounts, or should have known about NDC's improper revenue recognition, DeKalb failed to plead facts giving rise to a strong inference of scienter.

**B [**32]**

DeKalb alleged that "during March 2004, E&Y was notified by a management level employee in the Physician Services unit of the dire situation facing that business segment -- that accounts receivable were very high as a result of aggressive channel-stuffing practices, which rendered the unit's reported revenues highly suspect." (Compl. P 61.) As a result of this notification, "the Company and Defendants were forced to begin addressing the problem." *(Id.)* The Second Amended Complaint does not assert that E&Y had knowledge of wrongdoing before March of 2004 and does not allege facts demonstrating that E&Y acted with reckless disregard after E&Y was informed of the problem. On the contrary, DeKalb alleged that when E&Y was "notified" of a "dire situation," E&Y took action. DeKalb has not pled facts that indicate E&Y's response to the notice was highly unreasonable or an extreme departure from the standards of ordinary care.

**C**

DeKalb's remaining allegations pertain to violations of GAAP or GAAS. [HN31] "Allegations of GAAS or GAAP, standing alone, do not satisfy the particularity requirement of *Rule 9(b)*." *Ziemba, 256 F.3d at 1208*. Such allegations do not create a [**33] strong inference of recklessness because "[t]hey merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care." *Reiger v. Price Waterhouse Coopers*

*LLP, 117 F. Supp. 2d 1003, 1010 (S.D. Cal. 2000), aff'd sub nom. DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385 (9th Cir. 2002).*

In the Second Amended Complaint, DeKalb alleged that E&Y's audit report of July 21, 2003 "falsely represented that E&Y had conducted its audit for NDC's year end 2003 financial statements in accordance with GAAS, and that NDC's financial statements conformed with GAAP." (Compl. P 151.) DeKalb alleged that E&Y violated GAAS by failing exercise due professional care, failing to design proper audit procedures, and by "failing to expand or otherwise properly conduct its audit to detect the understatement in the allowance for doubtful accounts. . . ." (Compl. PP 156, 165, 168.) DeKalb also alleged that "E&Y failed to obtain sufficient competent evidential matter" with regards to write-offs, software capitalization, and improper revenue [**34] recognition. (Compl. P 166.) DeKalb goes on to allege that these GAAS violations were caused by "E&Y's failure to qualify, modify or abstain from issuing its audit opinions, when [*1270] it knew or recklessly turned a blind eye to NDC's accounting manipulations. . . ." (Compl. P 158.)

While the DeKalb broadly claims that E&Y failed to design and implement proper auditing procedures, DeKalb never describes how E&Y failed to do so. For example, DeKalb refers to the American Institute of Certified Public Accountants' Codification of Statement on Auditing Standards, but DeKalb does not allege how E&Y violated each section. DeKalb alleged that if E&Y had not violated GAAP and GAAS the supposed fraud would not have taken place. (Compl. P 158) However, [HN32] DeKalb may not "establish scienter by alleging that the auditor would have discovered the fraud had it not violated GAAS." *In re Spear & Jackson Sec. Litig., 399 F. Supp. 2d at 1363* (citing *In re Eagle Bldg. Tech. Inc., Sec. Litig., 319 F. Supp. 2d at 1328*). This is merely an allegation of negligence.

DeKalb states that E&Y "recklessly turned a blind eye" to the problems at NDC. But [HN33] merely alleging scienter in general, [**35] conclusory terms does not meet the particularity requirement. *15 U.S.C. § 78u-4(b)(2)*. The District Court did not err in granting E&Y's motion to dismiss.

**V**

DeKalb waived its right to file a third amended complaint by filing the instant appeal. But that does not moot the issue because a question remains as to whether the restrictions on further amendment were overly burdensome. [HN34] *Federal Rule of Civil Procedure Rule 15(a)* states that leave to amend "shall be freely given when justice so requires." n9 [HN35] Denial of leave to amend is reviewed for abuse of discretion. *Baez v. Banc One Leasing Corp., 348 F.3d 972, 973 (11th Cir. 2003).* In *Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)* the Supreme Court declared that [HN36] trial courts have broad discretion in permitting or refusing to grant leave to amend. *Id. at 182.* "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance [**36] of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Id.*

n9 *Rule 15(a)* provides, in pertinent part:

> [HN37] A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice so requires.

DeKalb argues the District Court erred in placing restrictions upon its right to further amend its Complaint because the District Court incorrectly premised the restrictions on "the interest of fairness and to manage this litigation effectively." DeKalb also argues that the District Court did not adhere to the factors in *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).* [**37] DeKalb's argument lacks merit because the District Court did not deny DeKalb leave to amend. The District Court explicitly considered at least two of the *Foman* factors in fashioning the restrictions placed on DeKalb's right to further amendment of its Complaint.

In discussing the issue of leave to amend, the District Court made the following comments: "The Eleventh Circuit requires leave to amend be granted where a [*1271] more carefully drafted complaint might state a claim. Here, the Court was inclined to deny Plaintiff's request for leave to amend the Second Amended Complaint." *In re NDCHealth Corp., Inc. Securities Litigation,* No. 1:04-cv-0970, slip op. at 50. The District Court

noted that "Plaintiff previously has amended its complaint twice."

The District Court gave DeKalb leave to amend because NDC's notice to the SEC regarding the restatement of its accounts "may at least be germane to the claims asserted." *In re NDCHealth Corp., Inc. Securities Litigation,* No. 1:04-cv-0970, slip op. at 51 n.23. However, the District Court placed restrictions on Appellant's right to amend: "Plaintiff may amend its complaint but the amendment is limited to allegations (i) based on information [**38] not available to Plaintiff when the Second Amended Complaint was filed and (ii) which bear only on claims already asserted." *Id.* at 52.

[HN38] "[I]n the exercise of sound discretion, the granting of leave to amend can be conditioned in order to avoid prejudice to the opposing party." *Allied Indus. Workers v. Gen. Elec. Co., 471 F.2d 751, 756 (6th Cir.)* (quoting *Strickler v. Pfister Assoc. Growers, Inc., 319 F.2d 788, 791 (6th Cir. 1963)), cert denied, 414 U.S. 822, 94 S. Ct. 120, 38 L. Ed. 2d 55 (1973).* But the conditions placed on a plaintiff's right to amend its Complaint must be reasonable. *See id.* (holding the "requirement that the amendment be filed by a specified date or that the party amending bear a portion of the additional cost to the opposing party would, in proper circumstances, be reasonable conditions."); *see also Anderberg v. Maso-*

*nite Corp., 176 F.R.D. 682, 687 (N.D. Ga. 1997)* ("the court may under *Rule 15(a),* impose costs as a condition of granting leave to amend in order to compensate Defendant and avoid any prejudice caused by the amendment."); *Gen. Signal v. MCI Telecomm. Corp., 66 F.3d 1500, 1514 (9th Cir. 1995)* [**39] (same); *Chicago Pneumatic Tool Co. v. Hughes Tool Co., 192 F.2d 620, 631 (10th Cir. 1951)* (holding "it lay well within the range of sound judicial discretion of the court to allow the amendment in toto, to deny it altogether, or to permit it with reasonable conditions and limitations.").

In the instant case, the conditions placed upon DeKalb's right to amend were relatively modest. The District Court merely required that DeKalb limit its amendment to the legal theories already asserted, and permitted DeKalb to assert any new facts to state a claim. DeKalb has failed to demonstrate that these restrictions were unreasonable. Because DeKalb already had ample opportunity to file an amended complaint that meets the heightened pleading requirements of *Rule 9(b)* and the PSLRA, the District Court did not abuse its discretion by placing those restrictions on DeKalb's right to further amendment.

**AFFIRMED.**



LEXSEE 2006 U.S. DIST LEXIS 73836


Analysis
As of: Jan 24, 2007

**CHARLES SREBNIK; JOANN SREBNIK; MICHELLE SREBNIK; LEE SREB-
NIK; GARY DEVONPORT; AIMEE DEVONPORT; ALLISON OKON, individu-
ally, and as Trustee for the Matthew Okon Trust; and DARYL DINKLA, Plaintiffs,
v. NORMAN M. DEAN, individually; JAMES E. MILLER, individually; CLARK A.
MILLER, individually; MFL, INC., a Colorado corporation; ANDERSON &
WHITNEY, P.C., a Colorado professional corporation; and COMISKEY & COM-
PANY, PROFESSIONAL CORPORATION, a Colorado professional corporation,
SHERMAN & HOWARD L.L.C., a Delaware Limited Liability Company, Defen-
dants, and MILLER DIVERSIFIED CORP., a Nevada Corporation as Nominal De-
fendant.**

**Civil Action No. 05-cv-01086-WYD-MJW**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2006 U.S. Dist. LEXIS 73836*

**September 26, 2006, Decided
September 26, 2006, Filed**

**PRIOR HISTORY:** *Srebnik v. Dean, 2006 U.S. Dist.
LEXIS 59232 (D. Colo., Aug. 22, 2006)*

**COUNSEL:** [*1] For Charles Srebnik, Joann Srebnik,
Michelle Srebnik, Lee Srebnik, Gary Devonport, Aimee
Devonport, Allison (I) Okon, individually, Allison Okon,
as Trustee for the Matthew Okon Trust, Daryl Dinkla,
Plaintiffs: A. Thomas Tenenbaum, LEAD ATTORNEY,
Tenenbaum Law Firm, Denver, CO; George Douglas
Kreye, LEAD ATTORNEY, Kreye & Kreye, P.C.,
Englewood, CO.

For Norman M. Dean, individually, James E. Miller,
individually, MFL, Inc., a Colorado corporation, Miller
Diversified Corp., as Nominal Defendant, a Nevada cor-
poration, Defendants: Angela Deborah DeVine, LEAD
ATTORNEY, Senter, Goldfarb & Rice, LLC, Denver,
CO; John E. Matter, Jr., LEAD ATTORNEY, William
Frederick Jones, LEAD ATTORNEY, Paul R. Wood,
Moye White, LLP, Denver, CO.

For Clark A. Miller, individually, Defendant: Angela
Deborah DeVine, LEAD ATTORNEY, Senter, Goldfarb
& Rice, LLC, Denver, CO; John E. Matter, Jr., LEAD

ATTORNEY, William Frederick Jones, LEAD AT-
TORNEY, Moye White, LLP, Denver, CO.

For Anderson & Whitney, P.C., a Colorado professional
corporation, Defendant: Brian F. Huebsch, LEAD AT-
TORNEY, Steven R. Anderson, LEAD ATTORNEY,
Anderson & Jahde, PC, Littleton, CO.

For Comiskey & Company, Professional [*2] Corpora-
tion, a Colorado professional corporation, Defendant:
Thomas D. Birge, LEAD ATTORNEY, Carla B. Minck-
ley, Birge & Minckley, PC, Denver, CO.

For Sherman & Howard, Defendant: Michael T. McCon-
nell, LEAD ATTORNEY, Traci L. Van Pelt, LEAD
ATTORNEY, Robert W. Steinmetz, McConnell,
Siderius, Fleischner, Houghtaling & Craigmile LLC,
Denver, CO.

**JUDGES:** Wiley Y. Daniel, U. S. District Judge.

**OPINION BY:** Wiley Y. Daniel

**OPINION:**

**ORDER**

2006 U.S. Dist. LEXIS 73836, *

**Judge Wiley Y. Daniel**

## I. INTRODUCTION

THIS MATTER is before the Court on several motions to dismiss including: (1) Defendants' Norman M. Dean, James E. Miller, Clark E. Miller, Miller Diversified Corporation and Miller Feedlots, Inc. (collectively, the "MDC Defendants") Combined Motion to Dismiss and Motion to Strike First Amended Complaint, filed December 2, 2005 (docket # 106) n1; Defendant Comiskey & Company's Motion for Partial Summary Judgment as to Derivative Claims Alleged in First Amended Verified Complaint, filed December 2, 2005 (docket # 110) n2; (3) Defendant Comiskey & Company's Motion to Strike First Amended Verified Complaint for Failure to Comply With *Rules 8* and *9(b)*, filed December 2, 2005 (docket # 112) n3; (4) Defendant Comiskey [*3] & Company's Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to *C.R.S. § 13-20-602(4)*, filed December 2, 2005 (docket # 114); (5) Motion of Defendant Comiskey & Company to Dismiss Nineteenth Claim for Relief Pursuant to *Fed. R. Civ. P. 12(b)(6)*, filed December 6, 2005 (docket # 116); and (6) Anderson & Whitney's *Rule 12(b)(6)* Motion to Dismiss Claims, filed December 6, 2005 (docket # 118) n4.

n1 Pursuant to the Minute Order entered March 31, 2006, arguments raised in Defendants Norman M. Dean, James E. Miller, Clark A. Miller and Miller Feedlots, Inc. Motion to Strike Verified Complaint for Failure to Comply With *Rule 8*, filed July 20, 2005 (docket # 23) and the Motion to Dismiss, filed July 20, 2005 (docket # 24), which were denied as moot, are incorporated into the discussion of Defendants' Combined Motion to Dismiss and Motion to Strike First Amended Complaint, filed December 2, 2005 (docket # 106).

n2 Defendant Sherman & Howard filed a joinder in this motion on April 25, 2006.

[*4]

n3 Defendant Anderson & Whitney filed a Notice of Joinder in this motion on December 6, 2005 (docket # 117); Defendant Sherman & Howard filed a joinder in this motion on April 25, 2006 (docket # 204).

n4 Pursuant to the Minute Order entered March 31, 2006, arguments raised in Defendant Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims Against Anderson & Whitney, filed July 26, 2005 (docket # 30), which was denied as moot, are incorporated into the discussion of Defendant Anderson & Whitney's Notice to Renew and Apply Rule 12(b)(6) Motion to Dismiss to Plaintiffs' First Amended Complaint, filed December 12, 2005 (docket # 118).

## II. FACTUAL BACKGROUND

According to the First Amended Complaint, filed November 21, 2005, this is a shareholders' derivative action brought by various individual Plaintiffs, as well as the Trustee for the Matthew Okon Trust, pursuant to federal securities laws and the Sarbanes-Oxley Act. First Am. Comp. at P 1. Plaintiffs are shareholders of Miller Diversified Corp. ("MDC"), a public company in the cattle feedlot business in Greeley, Colorado. [*5] *Id.* Defendants Norman M. Dean, James E. Miller, and Clark A. Miller are officers, directors, and controlling shareholders of MDC (collectively, the "Management Defendants"). *Id.* Defendant Miller Feedlots Inc. is a Colorado corporation, owned and controlled by the Management Defendants. *Id.* Plaintiffs allege that the Management Defendants "looted [MDC's] assets through concealed 'off the books' payments, sham loans and other bogus transactions including their fraudulent acquisition of [MDC's] business for a promissory note issued by an insolvent company" owned by the Management Defendants. *Id.* at pg. 2. Plaintiffs further allege that the Management' Defendants fraudulently "wiped out [MDC's] shareholders' equity, rendering the Company an insolvent shell and purportedly in debt to the Directors." *Id.*

Defendant Anderson & Whitney, P.C. was MDC's auditor from 1987 until August 2003 and allegedly assisted the Management Defendants in the "preparation of the Proxy Statement relating to their unlawful and fraudulent acquisition of MDC's business and assets." *Id.* at 26. Defendant Comiskey & Company audited MDC's fiscal years 2002-2004, and is its current auditor. [*6] *Id.* at 27. Defendant Sherman & Howard, L.L.C. provided legal services to MDC and allegedly assisted the Management Defendants in the "preparation of the Proxy Statement relating to their unlawful and fraudulent acquisition of MDC's business and assets." *Id.* at 28.

## III. ANALYSIS

A. Motion to Dismiss:

I begin with the MDC Defendants' Motion to Dismiss Plaintiffs' Third, Fourth, Fifth, Sixth n5, Seventh, Eighth, Ninth, Tenth, Twelfth and Thirteenth claims for relief filed December 2, 2005 (docket # 106). The MDC Defendants move to dismiss Plaintiffs' Third, Fourth, Fifth, Eighth and Ninth Claims for Relief based on their assertion that the federal statutes under which those claims are brought, namely *§ § 13(a),(k)* and *(d)*, and *§ 16(a)*, of the Securities and Exchange Act of 1934 ("Exchange Act") and *§ § 906, 302* and *402* of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Act"), do not provide a private right of action. The MDC Defendants further contend that Plaintiffs' Seventh Claim for Relief, brought pursuant to *§ 20(a)* of the Exchange Act, does not constitute a separate cause of action, and that Plaintiffs' Tenth, Twelfth, and Thirteenth claims for "Ultra Vires [*7] Acts," "Abuse of Control," and "Gross Mismanagement," are not independent causes of action but together constitute part of Plaintiffs' Eleventh Claim for Relief for "Breach of Fiduciary Duty."

> n5 While the motion to dismiss states that the MDC Defendants seek dismissal of the Sixth Claim for Relief, the motion itself contains no argument in support of dismissal of this claim. I will not consider the belated argument concerning the Sixth Claim for Relief raised for the first time in the MDC Defendants' Reply.

In reviewing the motion to dismiss, I "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996)* (quotation omitted), *cert. denied, 522 U.S. 858, 118 S. Ct. 157, 139 L. Ed. 2d 102 (1997)*. "A complaint may be dismissed pursuant to *[Rule] 12(b)(6)* only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.*

1. Private Rights [*8] of Action

Private rights of action to enforce federal law must be created by Congress. *Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)*. In determining whether a private right of action exists within a federal statute that does not expressly provide for one, I focus solely on Congressional intent underlying the particular statute at issue. *Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004)* (citing *Transamerica Mortgage Advisors v. Lewis, 444 U.S. 11, 15-16, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979)*; *Alexander, 532 U.S. at 286-87*. I must determine whether Congress intended to create not only a private right in favor of Plaintiffs, but also a private remedy. *Sandoval, 532 U.S. at 286*. In the absence of statutory intent to create a

private remedy, a cause of action does not exist, and I may not create one "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval, 532 U.S. at 286-87*. In determining Congressional intent under this standard I examine the statutes at issue for "rights creating language" which "explicitly confer[s] a right directly on a [*9] class of persons that include[s] the plaintiff[s]," and consider the relation between the provision at issue and the overall statutory scheme. *Boswell, 361 F.3d at 1267* (quoting *Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n. 13, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979))*.

2. Third Claim for Relief

Plaintiffs' Third, Fifth and Ninth claims are brought under *§ § 13(a)*, *(k)* and *(d)* of the Securities and Exchange Act of 1934 and *§ § 302, 402, 906* of the Sarbanes-Oxley Act of 2002. In their Third Claim for Relief, Plaintiffs allege that the Management Defendants failed to timely file SEC Reports and falsely certified SEC Reports in violation of *§ 13(a)* of the Exchange Act, which requires the filing of various information, reports and documents as required by the rules and regulations of the SEC. *See 15 U.S.C. § 78m(a)*. While the Tenth Circuit has not directly addressed whether a private right of action exists under *§ 13(a)*, the Third Circuit has held that *§ 13(a)* does not afford a private right of action and that a plaintiff's sole remedy for violations of *§ 13(a)* is *§ 18(a)* of the Exchange Act, which provides a right of action for individuals who [*10] have purchased or sold securities in reliance on false or misleading information contained in *§ 13(a)* reports. *See In re Penn Cent. Sec. Litig., 494 F.2d 528, 540-41 (3d Cir. 1973)*; *see also Smith v. Murchison, 310 F.Supp. 1079, 1088 (D.C.N.Y. 1980)*; *McLaughlin v. Campbell, 410 F.Supp. 1321, 1325 (D.C. Mass. 1979)*. I find the Third Circuit's reasoning in *In re Penn* persuasive. As the Third Circuit recognized, "[w]e have not been cited to any language or to any history in the Exchange Act which indicates that Congress intended to extend the protection offered by *§ 13(a)* beyond the class of purchasers or sellers." *In re Penn, 494 F.2d at 540*. The fact that Congress specifically provided a private right of action for purchasers and sellers of securities under *§ 18(a)* is evidence that Congress intended that section "to provide the exclusive remedy for misstatements contained in any reports filed with the Commission." *See Touche Ross & Co. v. Redington, 442 U.S. 560, 569, 574, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979)* (holding that the record keeping and filing provisions contained in *§ 17(a)* did not give rise to a private cause [*11] of action where the statute at issue neither conferred rights on private parties nor proscribed any conduct as unlawful).

Plaintiffs contend that several other courts have recognized a private right of action for alleged violations of

§ *13(a)*. Plaintiffs cite two federal district court cases from the Southern District of New York, *Kroese v. Crawford, Fed. Sec. L. Rep. P 91, 262 (S.D.N.Y. 1963)* and *Kaminsky v. Abrams, 281 F. Supp. 501, 505 (S.D.N.Y. 1968)*, both of which were decided prior to the Third Circuit's decision in *In re Penn*. Two other cases cited by Plaintiffs, *Miller v. Fisco, Inc., 376 F.Supp. 468, 469 (E.D. Pa. 1974)*, and *Maher v. Zapata Corp., 490 F.Supp. 348, 349 (S.D. Tex. 1990)*, do not address whether Congress intended to provide a private right of action under *§ 13(a)*. Plaintiffs provide no additional evidence of Congressional intent to provide a private right of action under *§ 13(a)*. I find that *§ 13(a)* contains neither an express private right of action nor does the provision, in the context of the statutory scheme, evidence Congressional intent to create an implied private right of action. [*12] *See Boswell, 361 F.3d at 1267*. Therefore, Plaintiffs' Third Claim for Relief under *§ 13(a)* is **DISMISSED**.

3. Ninth Claim for Relief

Plaintiffs' Ninth Claim for Relief alleges violation of *§ 13(d)*, which requires that any person who owns or acquires five percent or more of any equity security of a class registered pursuant to *§ 12* must send to the company, and file with the SEC, a statement concerning such ownership. *See 15 U.S.C. § 78m(d)(1)*. The First Amended Complaint seeks damages for the Management Defendants' alleged failure to file an accurate and complete Schedule 13D. "The purpose behind *Section 13(d)* is to alert the marketplace and holders of the security in question to every large rapid aggression or accumulation of that security . . . which might reflect a potential change in corporate control." *K-N Energy, Inc. v. Gulf Interstate Co., 607 F.Supp. 756, 762 (D. Colo. 1983)*. Such information allows existing shareholders and potential investors to make informed investment decisions. *K-N Energy, 607 F.Supp. 762*. As Defendants acknowledge, the Court in *K-N Energy* recognized a private [*13] right of action under *§ 13(d)* in cases where an issuer of a security seeks injunctive relief to correct a false or misleading Schedule 13D. The Court in *K-N* Energy found that "[t]he purpose behind *Section 13(d)* would be substantially frustrated if corporate issuers were precluded from seeking injunctive relief where an error or omission is detected in a Schedule 13D." *Id at 764; see also Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1157 (9th Cir. 1992)* (issuer corporation can maintain a private right of action for injunctive relief under *Section 13(d)*).

In this case, however, Plaintiffs are not issuers of a security seeking injunctive relief - they are shareholders seeking damages in connection with Defendants' alleged failure to file an accurate and complete Schedule 13D. *Section 13(d)* does not expressly provide for a private right of action. In response to the motion to dismiss,

Plaintiffs state other courts have "consistently upheld an implied private right of action for violations of *Section 13(d)* in actions on behalf of shareholders of companies." Response at 4. However the cases cited by Plaintiff involve *§ 13(d)* claims for injunctive [*14] relief. *See Indiana Nat. Corp. v. Rich, 712 F.2d 1180, 1181 (7th Cir. 1983)* (issuer corporation sought injunctive relief); *GAF Corp. v. Milstein, 453 F.2d 709, 719 (2d Cir. 1971)* (issuer of security sought injunctive relief); *Oklahoma Pub. Co. v. Standard Metals Corp., 541 F.Supp. 1109, 1113-14 (W.D. Okla. 1982)* (plaintiff sought mandatory injunction); *Grow Chemical Corp. v. Uran, 316 F.Supp. 891 (S.D.N.Y. 1970)* (plaintiff sought injunctive relief). Similar to the *K-N Energy* case, these cases discuss that the only way to make the *§ 13(d)* disclosure requirements effective is to permit issuer corporations to pursue a private right of action for injunctive relief. *See, e.g. Indiana Nat, 712 F.2d at 1184* ("[t]he only party with both the capability and incentive to pursue these violations is the issuer corporation."). Plaintiffs have not cited any case law or other authority suggesting that Congress intended that shareholders should be able to maintain a private right of action for damages under *§ 13(d)*. As discussed above, *§ 18(a)* provides a right of action for individuals who have purchased or [*15] sold securities in reliance on false or misleading information. I decline to find a private right of action under *§ 13(d)* for Plaintiffs in this case. *See Myers v. American Leisure Time Enterprises, Inc., 402 F.Supp. 213, 215 (S.D.N.Y. 1975)* (plaintiffs who were not purchasers or sellers of security could not maintain an action for damages for alleged violation of *§ 13(d)*, particularly where violation concerned filing of false or misleading statements); *Wellman v. Dickinson, 497 F.Supp. 824, 835 (S.D.N.Y. 1980)* (no private right of action for damages exists under *§ 13(d)*). Accordingly, Plaintiffs' Ninth Claim for Relief is **DISMISSED**.

4. Claims Under § § 906, 302 and 402 of the Sarbanes-Oxley Act

Plaintiffs' Third, Fourth and Fifth Claims for relief allege violations of *§ § 906, 302* and *402* of the Sarbanes-Oxley Act, and *§ 13(k) of the Exchange Act*. The MDC Defendants contend that *§ § 906, 302*, and *402* of the Sarbanes-Oxley Act provide for criminal sanctions and do not contain a private right of action. Plaintiffs acknowledge that *§ § 906* and *302* set forth criminal penalties for non-compliance, but note that while Congress and the SEC have [*16] specifically prohibited private rights of action with respect to other sections of the Sarbanes-Oxley Act, they have not specifically prohibited privates rights of action under *§ § 906, 302*, and *402*. Plaintiffs further assert that allowing private rights of action for certain Sarbanes-Oxley violations is consistent with judicial authority finding private rights of ac-

tion for violations of other provisions of the Exchange Act include § 10(b).

Section 302 of the Sarbanes-Oxley Act, 15 U.S.C. § 7241, provides that "[t]he Commission shall, by rule, require, for each company filing periodic reports under section 13(a) or 15(d) of the [Exchange Act], that the principal executive officer or officers . . . certify in each annual or quarterly report filed or submitted under either such section of such Act that" the signing officer has reviewed the report and that the information therein "fairly represents" the company's financial condition. Similarly, § 906, 18 U.S.C. § 1350(a), provides that "[e]ach periodic report containing financial statements filed by an issuer with the Securities Exchange Commission pursuant to section 13(a) or 15(d) [*17] of the [Exchange Act] shall be accompanied by a written statement by the chief executive officer and chief financial officer," that the periodic report fully complies with the requirements of § 13(a) or 15(d). Section 1350(c) establishes criminal penalties for violations of subsection (a).

Section 402 of the Sarbanes-Oxley Act added a new subsection, § 13(k), to the Exchange Act, which makes it "unlawful" for a reporting company, directly or indirectly, "to extend or maintain credit, to arrange for the extension of credit, or to renew an extension of credit, in the form of a personal loan to or for any director or executive officer . . . of that issuer." 15 U.S.C. § 78m(k).

The parties have not cited any judicial authority addressing the availability of a private right of action under § § 302, 906 and 402 of the Sarbanes-Oxley Act, nor is the Court aware of any such authority. None of these sections expressly provides for a private right of action, so I must focus solely on Congressional intent. Boswell, 361 F.3d at 1267. Neither the MDC Defendants nor Plaintiffs addresses statutory intent, and neither party has developed cogent arguments [*18] in support of their respective positions. I note, however, that the text of § § 302, 906 or 402 do not contain any "rights creating" language or other indication that Congress intended to create a private right of action in favor of a class of shareholders for violation of these provisions. See Touche Ross & Co., 442 U.S. at 569. I further note that § 306 of the Sarbanes-Oxley Act, which makes it unlawful for directors or executive officers to buy or sell any of the issuer's equity securities during a pension fund blackout period, expressly states: "an action to recover profits in accordance with this subsection may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and on behalf of the issuer if the issuer fails or refuses to bring such action . . . ." 15 U.S.C. § 7244(a)(2)(B). "Section 306 demonstrates that when Congress intended to create a private remedy, it did so explicitly and in unmistakable terms." See Kogan v. Rob-

inson, 432 F.Supp. 2d 1075, 1081-82 (S.D. Cal. 2006) (citing Touche Ross & Co., 442 U.S. at 572). [*19] Where Congress explicitly creates a private right of action in § 306, but not in § § 302, 905 and 402, the "natural inference" is that Congress did not intend to create a private right of action under these sections. Neer v. Pelino, 389 F.Supp. 2d 648, 655 (E.D. Pa. 2005) (declining to infer a private right of action under § 304 of the Sarbanes-Oxley Act); see also Kogan, 432 F.Supp. 2d at 1082 (same); In re Bisys Group Inc., 396 F.Supp. 2d 463 (S.D.N.Y. 2005) (same). Because neither the text of § § 302, 906 or 402 nor the structure of the Sarbanes-Oxley Act demonstrates Congressional intent to create a private remedy in favor of Plaintiffs, I cannot infer a private right of action under these sections. Therefore Plaintiffs' Third, Fourth and Fifth Claims for relief alleging violations of § § 906, 302 and 402 of the Sarbanes-Oxley Act and § 13(k) of the Exchange Act are **DISMISSED**.

### 5. Seventh Claim for Relief

The MDC Defendants next move for dismissal of Plaintiffs' Seventh Claim for Relief pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t, which provides in part that "[e]very person who, [*20] directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . ." The MDC Defendants contend that § 20(a) is not a separate cause of action, and that Plaintiffs have failed to plead a primary violation of the Exchange Act in connection with this claim. Plaintiffs assert that the Amended Complaint adequately alleges primary violations of the Exchange Act, which are incorporated into their § 20(a) claim.

In order to establish liability under § 20(a), Plaintiffs must demonstrate a primary violation of the Exchange Act and control over the primary violator. City of Philadelphia v. Fleming Cos., 264 F.3d 1245 (10th Cir. 2001). I find that Plaintiffs have adequately pled "controlling person" liability and I find no basis for dismissing Plaintiffs' Seventh Claim for Relief.

### 6. Eighth Claim for Relief

I now turn to the MDC Defendants' request for dismissal of Plaintiffs' Eighth Claim for Relief pursuant to § 16(a) of the Exchange Act for the MDC Defendants' alleged failure to file Forms 3 and [*21] 4. 15 U.S.C. § 78p. Section 16(a) requires directors, officers and principal stockholders of a security to file certain forms, including a statement of ownership by an owner of more than 10 percent of a security. Similar to Plaintiffs' claims under § § 13(a) and (d) of the Exchange, § 16(a) is, on its face, a filing requirement, and "[n]o enforcement rights are expressly conferred on private parties." See

*Scientex Corporation, 689 F.2d 879, 882 (9th Cir. 1982)*; *Eisenberger v. Spectex Industries, Inc., 644 F.Supp. 48, 51 (E.D.N.Y. 1986)*; *see also Touche Ross & Co., 442 U.S. at 574*. In addition, *§ 16(b)* provides a specific method for enforcement, which is further proof that Congress did not intend to provide a private remedy under *§ 16(a)*. *See Scientex, 689 F.2d at 882-83*. The cases cited by Plaintiffs in support of their contention that a private right of action does exist under *§ 16(a)* are not persuasive. I find that no private cause of action exists under *§ 16(a)*. Accordingly, Plaintiffs' Eighth Claim for Relief is **DISMISSED**.

7. Tenth, Twelfth, and Thirteenth Claims for Relief [*22]

Finally, the MDC Defendants move to dismiss Plaintiffs Tenth, Twelfth and Thirteenth Claims for Relief asserting that these claims for "Ultra Vires Acts," "Abuse of Control," and "Gross Mismanagement" are not independent causes of action, but rather acts that together constitute part of Plaintiffs' Eleventh Claim for Relief for "Breach of Fiduciary Duty."

In response to the motion to dismiss, Plaintiffs contend that their state law claims are recognized under Nevada State Law, the state in which MDC is incorporated. The MDC Defendants do not dispute that Nevada law applies to Plaintiffs state law claims, but contend that Plaintiffs' claims for ultra vires, abuse of control and gross mismanagement, are not recognized causes of action under Colorado or Nevada law. While neither party has briefed the choice of law issue, I note that Plaintiffs bear the burden of demonstrating that they are entitled to relief under the theories pled in their First Amended Complaint. Without out deciding which state's substantive law applies to Plaintiffs' state law claims, I note that none of the Nevada authorities cited by Plaintiffs recognizes ultra vires, abuse of control, and gross mismanagement [*23] as separate and independent causes of action. In addition, Plaintiffs have cited no Colorado authority, nor is this Court aware of any Colorado authority, that recognizes these claims for relief. Therefore, under either Colorado or Nevada state law, Plaintiffs' Tenth, Twelfth, and Thirteenth Claims for Relief must be **DISMISSED**. I agree with the MDC Defendants that the alleged actions underlying these claims are subsumed in Plaintiffs' claim for Breach of Fiduciary Duty.

B. Motion to Strike Certificates of Review

I next address Defendant Comiskey & Company's Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to *C.R.S. § 13-20-602(4)*, filed December 2, 2005 (docket # 114). Plaintiffs bring claims against Defendants Anderson & Whitney and Comiskey & Company for professional negligence and accounting malpractice, and for aiding and abetting breaches of fiduciary duty, abuse of control, unjust enrichment, gross mismanagement, and alleged violations of *§ 13(a)* of the Exchange Act and the Sarbanes-Oxley Act. In connection with these claims, Plaintiffs filed a Certificate of Review on September 13, 2005 and [*24] an amended Certificate of Review of Plaintiffs' Attorney Pursuant to *C.R.S. § 13-20-602(3)(a)* on October 18, 2005. Plaintiffs' First Amended Verified Complaint was filed on November 21, 2005. Comiskey & Company requests that I strike the Certificates as untimely or, in the alternative, require disclosure of the identity of the professional consulted and conduct an *in camera* review to determine the adequacy of the certificates in accordance with *Redden v. SCI Colorado Funeral Services, Inc., 38 P.3d 75 (Colo. 2001)*.

*C.R.S. § 13-20-602* provides that in an action for damages based on alleged professional negligence of a licensed professional, the plaintiffs attorney shall file with the court a certificate of review within sixty days after the service of the complaint unless the court determines that a longer period is necessary for good cause shown. *Sections 13-20-602(3)(a)(I),(II) & (c)* require that the certificate of review shall be executed by the attorney for plaintiff and shall declare:

> (I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; [*25] and
>
> (II) That the professional who has been consulted pursuant to subparagraph (I) of the paragraph (a) has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim . . . does not lack substantial justification within the meaning of section 13-17-102(4).
>
> . . .
>
> (c) . . . the certificate of review shall declare that . . . the person consulted can demonstrate by competent evidence that, as a result of training, education, knowledge and experience, the consultant is competent to express an opinion as to the negligent conduct alleged.

Plaintiffs' Certificates of Review are untimely. However, Plaintiffs contend that they were not required to file Certificates of Review in this case and did so only

after consulting with Comisky's counsel. Assuming, without deciding, that Certificates of Review are required, I find that Plaintiffs' Certificate of Review and Amended Certificate of Review contain the declarations required by *§ 602(3)* and that an *in camera* review of the contents [*26] of the Certificates is not necessary. I further find that Plaintiffs delay in filing the Certificates of Review caused no prejudice to Defendant Comisky. The Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to *C.R.S. § 13-20-602(4)* is **DENIED**.

C. Motion to Dismiss Nineteenth Claim for Relief

I now turn to the Motion of Defendant Comiskey & Company to Dismiss Nineteenth Claim for Relief Pursuant to *Fed. R. Civ. P. 12(b)(6)*, filed December 6, 2005 (docket # 116). Plaintiffs' Nineteenth Claim for Relief against Comiskey is for aiding and abetting other Defendants in alleged violation of *§ 13(a)* of the Exchange Act. As discussed above, there is no private right of action under *§ 13(a)*, and Plaintiffs claims against the Management Defendants under this subsection are properly dismissed. Therefore, I also dismiss Plaintiffs' claim for aiding and abetting violations of *§ 13(a)*. The Motion of Defendant Comiskey & Company to Dismiss Nineteenth Claim for Relief is **GRANTED**.

D. Motion to Dismiss Claims Against Accountant Defendants

I now turn to Defendant [*27] Comiskey & Company's Motion for Partial Summary Judgment as to Derivative Claims Alleged in First Amended Verified Complaint, filed December 2, 2005 (docket # 110) and Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims, filed December 6, 2005 (docket # 118). Both Comiskey & Company and Anderson & Whitney (collectively the "Accounting Defendants") seek dismissal of the derivative claims asserted against them.

Plaintiffs' Seventeenth, Eighteenth, Nineteenth Claims for Relief against the Accounting Defendants are for Professional Negligence and Accounting Malpractice; Aiding and Abetting Breaches of Fiduciary Duty, Abuse of Control, Unjust Enrichment and Gross Mismanagement; and Aiding and Abetting alleged violations of *§ 13(a)* of the Securities Exchange Act of 1934 and *Rules 13a-14* and *13a-15*, and *§ § 302* and *906* of the Sarbanes-Oxley Act of 2002. In addition, Plaintiffs assert a Twentieth Claim for Relief against Defendant Anderson & Whitney for Aiding and Abetting violations of *§ 14(a)* of the Exchange Act.

Plaintiffs' Nineteenth Claim for Relief has been dismissed, and Plaintiffs' claims for abuse of control, unjust enrichment and gross mismanagement have been dismissed. Therefore, [*28] the claims remaining against the Accounting

Defendants are the Seventeenth Claim for Relief for Negligence and Accounting Malpractice, the portion of the Eighteenth Claim for Relief for Aiding and Abetting Breaches of Fiduciary Duty, and the Twentieth Claim for Relief against Defendant Anderson & Whitney for Aiding and Abetting violations of *§ 14(a)*.

1. Rule 23.1

Defendant Comiskey & Company seeks partial summary judgment in its favor as to the derivative claims asserted against it based on Plaintiffs' failure to allege, pursuant to *Fed.R.Civ.P. 23.1*, that demand was made upon the directors of MDC, or MDC's other shareholders, to bring suit against Defendant Comiskey & Company, or that such demand would be futile. Defendant Anderson & Whitney has moved to dismiss Plaintiffs' derivative claims against it on the same grounds.

*Rule 23.1* provides in relevant part:

> In a derivative action . . . the complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the [*29] reasons for the plaintiff's failure to obtain the action or for not making effort.

"The recognized purpose behind *Rule 23.1* is to avoid multiplicity of suits against corporations by individual shareholders or small groups of shareholders." *Brooks v. Land Drilling Co., 564 F.Supp. 1518, 1521 (D. Colo. 1983)*. I have serious doubts as to whether the Accounting Defendants have standing to assert a defense under *Rule 23.1*. However, even if I assume that the Accounting Defendants have standing to assert this defense, I find that Plaintiffs are excused from the demand requirement in this case due to futility. "[F]ederal courts apply the demand futility exception as it is defined by the law of the State of incorporation." *Andropolis v. Snyder, 2006 U.S. Dist. LEXIS 54073, 2006 WL 2226189 *6 (D. Colo., Aug. 3, 2006)* (quoting *Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108-09, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991))*. MDC is incorporated in Nevada. The Nevada Supreme Court has determined that a twopronged demand futility analysis applies. *Shoen v. SAC Holding Corp., 137 P.3d 1171, 1182 (Nev. 2006)*. Under this analysis, the futility exception applies where the particularized [*30] factual allegations in the complaint create a reasonable doubt as to whether the directors are disinterested and independent and whether they are enti-

tled to protection under the business judgment rule. *Shoen, 137 P.3d at 1182.*

Here, the First Amended Complaint alleges that the entire board of MDC "looted [MDC's] assets through concealed 'off the books' payments, sham loans and other bogus transactions including their fraudulent acquisition of [MDC's] business for a promissory note issued by an insolvent company" owned by the Management Defendants. First Am. Comp. at pg. 2. The First Amended Complaint further alleges that the Management Defendants fraudulently "wiped out [MDC's] shareholders' equity, rendering the Company an insolvent shell and purportedly in debt to the Directors." *Id.* In addition, it is alleged that Plaintiffs, though counsel, sent a letter to the Management Defendants on or about November 29, 2004, notifying them of Plaintiffs' intent to file a derivative action. According to the First Amended Complaint, the Management Defendants responded to the letter by stating that "[t]he Company and the purported Defendants intend to respond following [*31] service of the complaint." First Am. Comp. at PP 182-185. These allegations, combined with the fact that Plaintiffs have asserted that the Accounting Defendants aided and abetted the Management Defendants in their alleged wrongful activities, sufficiently demonstrate that it would have been futile for Plaintiffs to demand that the MDC bring suit against the Accounting Defendants under the *Shoen* test. I further find that because the Management Defendants own 40% of MDC's public shares, demand on MDC's remaining shareholders was not required. *Golden v. Garafalo, 678 F.2d 1139, 1146 (2d Cir. 1982).* Comiskey & Company's Motion for Partial Summary Judgment as to Derivative Claims Alleged in First Amended Verified Complaint is **DENIED**. In addition, the portion of Defendant Anderson & Whitney's motion to dismiss based on *Rule 23.1*'s demand requirement is **DENIED**.

2. Accountant-Client Privilege

Defendant Anderson & Whitney also asserts in its motion to dismiss that the derivative portion of Plaintiffs' claims against it must be dismissed because MDC has a statutory accountant-client privilege with Anderson & Whitney, and Anderson & Whitney cannot fairly [*32] defend against these claims without breaching its duty to MDC. Anderson & Whitney contends that it is entitled to be protected from compelled disclosure of privileged information pursuant to *C.R.S. § 13-90-107(1)(f)(I),* which provides that "a person shall not be examined as a witness in the following cases: (f) A certified public accountant shall not be examined without the consent of his or her client as to any communication made by the client to him or her . . . in the course of professional employment. . . ." Anderson & Whitney further contend that, MDC has not waived the privilege, that Plaintiffs as

shareholders do not have the corporate authority to waive the privilege, that it is precluded from disclosing any information regarding what MDC's employees, officers, and directors may or may not have disclosed to them during the course of their audit work, and that it is unable to defend itself without disclosing such communications.

There are several reasons why this issue cannot be decided at this juncture of the case. First, Anderson & Whitney has not adequately briefed why state, as opposed to federal, privilege law should apply. The First Amended [*33] Complaint alleges that this is a shareholders' derivative action brought pursuant to *Fed.R.Civ.P. 23.1* for alleged violations of Federal securities law and that this Court has jurisdiction over pendant state law claims pursuant to *28 U.S.C. § 1367(a).* Plaintiffs have asserted claims against Anderson & Whitney based on both state and federal law. "It is well settled that there is no confidential accountant-client privilege under federal law. Furthermore, in federal cases there is no state created accountant-client privilege." *In re Grand Jury Proceedings, 658 F.2d 782, 784 (10th Cir. 1981).* Moreover, even if I were to apply state privilege law in this case, the parties have not adequately briefed whether Colorado or Nevada's privilege law governs this dispute. Finally, I have reservations as to whether Anderson & Whitney has standing to assert the accountantclient privilege, given that the privilege presumably belongs to MDC, and it appears that MDC has not asserted the accountant-client privilege in this case. In addition, Anderson & Whitney has raised this privilege issue in a motion to dismiss, rather [*34] than in the context of a particular discovery dispute. In support of its argument that the claims against it should be dismissed, it cites a single case from the California Court of Appeals which holds that a derivative action against the corporation's outside counsel raised attorney-client privilege issues which prevent the attorney defendants from mounting a meaningful defense to the action. *McDermott, Will & Emery v. Superior Court, 83 Cal.App.4th 378, 383, 99 Cal. Rptr. 2d 622 (Cal. App. 2000).* That case dealt with the attorney-client privilege, not the account-client privilege, and did not recognize the exception to the attorneyclient privilege set forth in *Garner v. Wolfinbarger, 430 F.2d 1093, 1103-04 (5th Cir. 1970).* As noted in previous orders, this Court has applied the *Garner* doctrine and upheld the Magistrate Judge's decision to compel disclosure of certain documents alleged to be protected by the attorney-client privilege. I am not bound by the *McDermott* decision and find it to be of limited utility in the context of this case. For these reasons, Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims is **DENIED**.

E. Motions to Strike First [*35] Amended Verified Complaint for Failure to Comply with Rules 8 and 9(b)

Finally, I address the MDC Defendants' motion to strike Plaintiffs' First Amended Verified Complaint ("Amended Complaint") for Failure to Comply with *Rules 8 & 9(b)*, filed December 2, 2005 (docket # 106), and Defendant Comiskey & Company's Motion to Strike First Amended Verified Complaint for Failure to Comply With *Rules 8* and *9(b)*, filed December 2, 2005 (docket # 112).

The MDC Defendants contend that the First Amended Complaint improperly contains redundant and immaterial legal conclusions, factual arguments and prolix statements of law. Specifically, the MDC Defendants request that I strike the First Amended Complaint following resolution of the their motion to dismiss and permit Plaintiffs to file an amended complaint containing a short and plain statement of their remaining claims. Similarly, Defendant Comiskey & Company contends that the First Amended Complaint is lengthy, repetitive, and replete with legal and factual argument. Defendant Comiskey & Company also asserts that the claims asserted against it do not meet the heightened pleading requirements of *Rule 9(b)*, and requests that I order Plaintiffs [*36] to refile a complaint that complies with *Rules 8* and *9*.

*Fed.R.Civ.P. Rule 8(a)* states that a complaint "shall contain (1) a short and plain statement of grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." The requirements of *Rule 8(a)* guarantee that "defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." *TV Communications Network, Inc. v. ESPN, Inc., 767 F. Supp. 1062, 1069 (D. Colo. 1991), aff'd, 964 F.2d 1022 (10th Cir. 1992)*. The philosophy of *Rule 8(a)* is reinforced by *Rule 8(e)(1)* which provides that "[e]ach averment of a pleading shall be simple, concise and direct." Taken together, *Rule 8(a)* and *(e)(1)* underscore the emphasis placed on clarity and brevity by the federal pleading rules. Prolix, vague, or unintelligible pleadings violate the requirements of *Rule 8*. A decision to dismiss a pleading pursuant to *Rule 8* is within the trial court's sound discretion. *See Atkins v. Northwest Airlines, Inc., 967 F.2d 1197, 1203 (8th Cir. 1992)*; [*37] *Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969)*.

I note that Plaintiffs' First Amended Complaint is 94 pages in length and contains 318 individually numbered paragraphs, several of which contain numerous subsections. Plaintiffs contend that the length of the First Amended Complaint is generated by their need to meet the heightened pleading standards for asserting common law securities fraud claims. As set forth above, I have dismissed Plaintiffs' Third, Fourth, Fifth, Eighth, Ninth, Tenth, Twelfth, Thirteenth and Nineteenth Claims for

Relief. Many of the allegations in the First Amended Complaint relate exclusively to claims that have been dismissed. However, at this stage of the litigation it would serve no useful purpose to require Plaintiffs to file a Second Amended Complaint. Therefore, the MDC Defendants' Motion to Strike is **DENIED**.

I now turn to Defendant Comiskey & Company's Motion to Strike the Verified Complaint for Failure to Comply With *Rule 8* and *9(b)*. As previously discussed, the remaining claims against Defendant Comiskey & Company are for Professional Negligence, Accounting Malpractice, and a claim for Aiding and Abetting Breach [*38] of Fiduciary Duty.

*Rule 9(b)* states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "*Rule 9(b)* does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid." *Schwartz v. Celestial Seasonings, Inc, 124 F.3d 1246, 1253 (10th Cir. 1997)*. "Instead, *Rule 9(b)* requires that the pleadings give notice to the defendants of the fraudulent statements for which they are responsible." *Id.* In other words, the complaint must give the defendants notice of what they are charged with, and "[n]o more is required by *Rule 9(b)*." *Id.* This Court has explained the purpose of *Rule 9(b)* as follows:

> The point of the rule is to provide enough notice to each defendant of the misrepresentations the defendant made so that he can answer and otherwise defend himself. . . . The rule does not require extensive factual pleading. As an exception to rule eight's requirement that pleadings should be simple, concise and direct, *rule 9* is read restrictively, not expansively. [*39] . . . It does not require plaintiffs to plead extensive facts. It only requires that plaintiff prove the circumstances of the fraud.

*Gardner v. Investors Diversified Capital, Inc., 805 F. Supp. 874, 876 (D. Colo. 1992)*. With regard to private actions commenced pursuant to the Private Securities Litigation Reform Act ("PSLRA"), which alleges that the defendant (A) made an untrue statement of material fact; or (B) omitted material facts, the complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state

with particularity all facts on which that belief is formed." *See 15 U.S.C. § 78u-4(b)(1)*.

The principal allegations concerning Defendant Comiskey & Company are found in PP 49-56 and 142-166 of the First Amended Complaint. Plaintiffs allege that during Comiskey & Company's tenure as MDC's auditor, Comiskey & Company's audits did not comply with applicable rules and regulations, MDC's financial statements were false and misleading, Comiskey & Company [*40] should have known that MDC's financial statements were false and misleading, and Comiskey & Company failed to properly audit MDC's financial statements. As to allegations that Comiskey & Company should have known that MDC's financial statements were false and misleading, Plaintiffs have identified each of the allegedly false SEC Report financial statements audited and reviewed by Comiskey & Company and the statements in those reports which Plaintiffs contend are misleading. First Am. Comp. at PP 93-105. I find that the First Amended Complaint adequately sets forth allegations for fraud against Comiskey & Company with the particularity required by *Rule 9(b)* and the PSLRA. Defendant Comiskey & Company's Motion to Strike First Amended Verified Complaint for Failure to Comply With *Rules 8* and *9(b)* is **DENIED**.

IV. CONCLUSION

In conclusion, for the reasons set forth above, it is hereby

ORDERED that Defendants' Norman M. Dean, James E. Miller, Clark E. Miller, Miller Diversified Corporation and Miller Feedlots, Inc. Combined Motion to Dismiss and Motion to Strike First Amended Complaint, filed December 2, 2005 (docket # 106) is **GRANTED IN PART AND DENIED IN PART**. It [*41] is **GRANTED** to the extent that Plaintiffs' Third, Fourth, Fifth, Eight, Ninth, Tenth, Twelfth, and Thirteenth

Claims for Relief are **DISMISSED**. It is **DENIED** with respect to Defendants' request for dismissal of Plaintiffs' Sixth Claim for Relief, and it is **DENIED** with respect to Defendants' request to strike the First Amended Complaint. It is

FURTHER ORDERED that Defendant Comiskey & Company's Motion for Partial Summary Judgment as to Derivative Claims Alleged in First Amended Verified Complaint, filed December 2, 2005 (docket # 110) is **DENIED**. It is

FURTHER ORDERED that Defendant Comiskey & Company's Motion to Strike First Amended Verified Complaint for Failure to Comply With *Rules 8* and *9(b)*, filed December 2, 2005 (docket # 112) is **DENIED**. It is

FURTHER ORDERED that Defendant Comiskey & Company's Motion to Strike Certificates of Review and to Dismiss First Amended Verified Complaint Pursuant to *C.R.S. § 13-20-602(4)*, filed December 2, 2005 (docket # 114) is **DENIED**. It is

FURTHER ORDERED that the Motion of Defendant Comiskey & Company to Dismiss Nineteenth Claim for Relief Pursuant to *Fed. R. Civ. P. 12(b)(6)* [*42] , filed December 6, 2005 (docket # 116) is **GRANTED**, and Plaintiffs' Nineteenth Claim for Relief is **DISMISSED**. It is

FURTHER ORDERED that Anderson & Whitney's Rule 12(b)(6) Motion to Dismiss Claims, filed December 6, 2005 (docket # 118) is **DENIED**.

Dated: September 26, 2006

BY THE COURT:

s/ Wiley Y. Daniel

U. S. District Judge