UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLYMPIA LEVINSON STIEGELE, <br><br> Plaintiff, <br><br> v. <br><br> BERNARD C. BAILEY, PAUL T. PRINCIPATO, PETER NESSEN, THOMAS J. REILLY, DENIS K. BERUBE, BUDDY G. BECK, CHARLES E. LEVINE, WILLIAM K. AULET, MARCEL YON and HARRIET MOUCHLEY-WEISS, <br><br> Defendants, <br><br> v. <br><br> VIISAGE TECHNOLOGY, INC., <br><br> Nominal Defendant. | Case No. 05-10677 (MLW) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS AMENDED VERIFIED
SHAREHOLDER DERIVATIVE COMPLAINT**

Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000

## TABLE OF CONTENTS

Page

I.  THE RELEVANT INQUIRY IS THE DISINTERESTEDNESS AND
    INDEPENDENCE OF THE VIISAGE BOARD AT THE TIME THE
    AMENDED COMPLAINT WAS FILED...........................................................................1

II. PLAINTIFF HAS NOT ALLEGED THAT ANY DIRECTOR FACES A
    SUBSTANTIAL LIKELIHOOD OF PERSONAL LIABILITY AND
    THEREFORE IS INTERESTED. .....................................................................................3

    A.  Plaintiff's Allegations That The Directors Personally Made False
        Statements And/or Signed A Materially False SEC Report Or
        Served On The Board's Audit Committee Are Not Allegations
        That Any Director Faces A Substantial Likelihood Of Personal
        Liability And Therefore Is Interested. ....................................................................4

    B.  Plaintiff's Allegations Concerning The Importance Of The
        Company's Face Recognition Technology And Georgia Driver's
        License Contract Are Not Enough To Plead That Any Director
        Faces A Substantial Likelihood Of Personal Liability And
        Therefore Is Interested.............................................................................................7

    C.  Plaintiff's Allegations That The Directors Are Defendants In A
        Securities Class Action Lawsuit Based On Similar Allegations To
        Those Made In This Case Are Not Enough To Plead That Any
        Director Faces A Substantial Likelihood Of Personal Liability And
        Therefore Is Interested.............................................................................................8

    D.  Plaintiff's Allegations Of Certain Directors' Financial Dealings
        With Or Concerning The Company Are Not Enough To Plead That
        Any Director Faces A Substantial Likelihood Of Personal Liability
        And Therefore Is Interested....................................................................................10

    E.  No Director Defendant Is Subject To A Substantial Likelihood Of
        Personal Liability Based Upon Abdicating Their Oversight
        Responsibilities......................................................................................................14

III. PLAINTIFF HAS NOT ALLEGED ANY DIRECTOR DEFENDANT
     LACKS INDEPENDENCE.............................................................................................17

IV. PLAINTIFF HAS NOT ALLEGED THAT ANY DEFENDANT'S
    CONDUCT HAS CAUSED THE COMPANY DAMAGE..............................................18

V.  DEFENDANTS CAN RELY ON THE EXCULPATORY PROVISION
    IN VIISAGE'S BY-LAWS FOR DISMISSAL OF PLAINTIFF'S
    CLAIMS. .......................................................................................................................19

i

VI.    CONCLUSION ................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Beam v. Stewart*,
 845 A.2d 1040 (Del. 2004) .................................................................................................17

*Braddock v. Zimmerman*,
 906 A.2d 776 (Del. 2006) ................................................................................................1, 2

*Felker v. Anderson*,
 No. 04-0372-CV-W-ODS, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005) .........................14, 17

*Fina v. Valarco Corp.*,
 No. 01-CV-030180263S, 2005 WL 3112894 (Conn. Super. Ct. 2005) ...................................5, 9

*Grimes v. Donald*,
 673 A.2d 1207 (Del. 1996) ....................................................................................................3

*Guttman v. Huang*,
 823 A.2d 492 (Del. Ch. 2003) ...........................................................................................6, 16

*Harris v. Carter*,
 582 A.2d 222 (Del. Ch. 1990) .............................................................................................1, 2

*In re Abbott Lab. Derivative S'holders Litig.*,
 325 F.3d 795 (7th Cir. 2003) ..................................................................................................16

*In re Biopure Corp. Deriv. Litig.*,
 424 F. Supp. 2d 305 (D. Mass. 2006) ...........................................................................7, 8, 9, 13

*In re Cendant Corp. Derivative Litig.*,
 189 F.R.D. 117 (D. N.J. 1999) ..........................................................................................9, 17, 19

*In re Computervision Corp. Sec. Litig.*,
 869 F. Supp. 56 (D. Mass. 1994) ...............................................................................................5

*In re First Energy S'holder Derivative Litig.*,
 320 F. Supp. 2d 621 (N.D. Ohio 2004) .....................................................................................17

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 187 F.R.D. 133 (S.D.N.Y. 1999) ..............................................................................................15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 192 F.R.D. 111 (S.D.N.Y. 2000) ..........................................................................................15, 16

*In re Ply Gem Indus., Inc. Shareholders Litig.*,
 No. Civ. A. 15779-NC, 2001 WL 755133 (Del. Ch. June 26, 2001) ........................................20

*In re Polymedica Corp. S'holder Derivative Litig.*,
  No. 01-3446, 2002 WL 1809095 (Mass. Super. July 16, 2002)..........................................12, 13

*In re Stratosphere Corp. Sec. Litig.*,
  No. CV-S-96-708-PMP, 1997 U.S. Dist. LEXIS 14621 (D. Nev. May 20, 1997) ....................5

*In re Taser Int'l S'holder Derivative Litig.*,
  No. CV-05-123-PHX-SRB, 2006 WL 687033 (D. Ariz. March 17, 2006) ..........................6, 7

*In re White Elec. Designs Corp. Sec. Litig.*,
  No. CV04-1499PHX-SRB, 2006 U.S. Dist. LEXIS 6961 (D. Ariz. Feb. 14, 2006)...................5

*Malpiede v. Townson*
  780 A.2d 1075 (Del. 2001)........................................................................................................20

*Mehlenbacher v. Jitaru*,
  No. 04-CV-1118 (M.D. Fla. June 6, 2005) ............................................................................19

*Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
  No. Civ. A. 20228-NC, 2004 WL 1949290 n.38 (Del. Ch. Aug. 24, 2004) .............................20

*Sachs v. Sprauge*,
  401 F. Supp. 2d 159 (D. Mass. 2005).........................................................................................4

*Saito v. McCall*,
  No. Civ. A. 17132-NC, 2004 WL 3029876 (Del. Ch. Dec. 20, 2004) ......................................17

*Stone v. Ritter*,
  911 A.2d 362 (Del. 2006).................................................................................................14, 19

*Taam Assocs., Inc. v. Housecall Medical Res., Inc.*,
  No. 1:96CV2214 A JEC, 1998 U.S. Dist. LEXIS 22372 (N.D. Ga. March 31, 1998) ...............5

*Taddy v. Singh ("Primus")*,
  No. 1:04cv1051 slip op. at 16 n.13 (E.D. Va. December 8, 2004).............................................8

*Takara Trust v. Molex, Inc.*,
  429 F. Supp. 2d 960 (N.D. Ill. 2006)........................................................................................13

*Veeco Instruments, Inc. Sec. Litig.*,
  434 F. Supp. 2d 267 (S.D.N.Y. 2006) .......................................................................................9

*Wietschner v. Monterey Pasta Co.*,
  294 F. Supp. 2d 1102 (N.D. Cal. 2003).....................................................................................11

*Zimmerman v. Braddock*,
  No. Civ. A. 18473-NC, 2005 WL 2266566 (Del. Ch. Sept. 8, 2005) .................................12, 13

**Rules**

Fed. R. Civ. P. 23.1.................................................................................................................5

Fed. R. Civ. P. 9(b)...............................................................................................................5

Plaintiff's Opposition actually underscores her failure adequately to allege that pre-suit demand was excused under well-settled principles of Delaware and First Circuit law. Her arguments focus on the Viisage board in place at the wrong point in time, misinterpret the applicable standard, and then misapply that standard, citing clearly distinguishable cases and simply ignoring the relevant authority cited by defendants. Over one-half of the Opposition – 20 pages – merely rehashes the generalized, conclusory allegations of the Amended Complaint. Taken at face value, plaintiff's arguments amount to an assertion that if a securities class action complaint has been filed against a public company, demand is excused for a follow-on derivative action because all outside directors are of necessity, interested.

## I.    THE RELEVANT INQUIRY IS THE DISINTERESTEDNESS AND INDEPENDENCE OF THE VIISAGE BOARD AT THE TIME THE AMENDED COMPLAINT WAS FILED.

In their Opening Memorandum, defendants explained that under Delaware law, the Court must assess demand futility by addressing the disinterestedness and independence of the board on the date the Amended Complaint was filed. See Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Shareholder Derivative Complaint ("Opening Mem.") at 11-13 (citing *Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) and *Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990)). In the present case, between the time plaintiff filed her original complaint (April 2005) and when she filed her Amended Complaint (July 2006), the composition of the Viisage board changed dramatically – one director resigned and five new directors were added to the original nine-member board. Thus, to sustain her burden of pleading demand futility, plaintiff would have to plead the interestedness or lack of independence of seven members of the 13-member July 2006 board.

Plaintiff's response to defendants' argument is illuminating. It consists of six lines buried in a footnote. *See* Opposition at 22, n.6. There, plaintiff concedes that demand futility of her claims relating to the efficacy of Viisage's face recognition technology must be measured against the Viisage board in place in July 2006. She then announces that demand futility of the claims "that were alleged and not dismissed prior to plaintiff's Amended Complaint – are measured against the Board that existed when the original complaint was filed" and follows this pronouncement with a general citation to *Harris v. Carter*, with absolutely no explanation as to why she thinks this Chancery Court opinion supports her position. In fact, *Harris* holds that the existence of disinterested, independent board newly constituted after a derivate complaint has been filed is relevant to a Rule 23.1 demand inquiry "with respect to claims not already validly in litigation." *Id.* at 785. Plaintiff then simply ignores the Delaware Supreme Court decision *Braddock v. Zimmerman*. There the Court explains that demand futility with respect to an Amended Complaint, filed after the original complaint had been dismissed, must be measured against the board in place at the time of amendment because the original complaint was never validly in litigation. She does not even try to explain why her Amended Complaint is any different than the one in *Braddock*. It isn't.

As described in more detail in Viisage's opening memorandum, after briefing on defendants' motion to dismiss the original complaint was complete, plaintiff abandoned it and sought to remedy its obvious deficiencies by amendment. Under the circumstances, this Court may conclude that this abandoned complaint was never "validly in litigation." Moreover, the amendment adds allegations regarding acts and transactions not included in the original complaint. Under *Braddock*, this is a separate reason for requiring that the board in place at the time of the amendment be given the opportunity to pass on the new complaint.

2

Plaintiff addresses none of these points because she has no answer to them.    In consequence, plaintiff must allege particularized facts establishing that seven out of Viisage's thirteen board members in July 2006 were either interested or lacked independence.  Notably, plaintiff fails to even mention, and therefore concedes, the disinterestedness of the five new board members added between the time the original and Amended Complaints were filed.  As a result, to avoid demand, plaintiff must allege particularized facts showing that seven of the remaining eight directors – Messrs. Bailey, Principato, Nessen, Reilly, Berube, Beck, and Levine and Ms. Mouchley-Weiss – were interested or lacked independence.    While she has not sufficiently alleged the interestedness or lack of independence of *any* of these board members, most notably:  (i) she alleges nothing about Ms. Mouchley-Weiss other than she was a director; (ii) with respect to Mr. Nessen, she can only say that he was also on the audit committee;  and (iii) as to Mr. Levine, she adds that he sold shares of Viisage at unspecified times between May 2004 and January 2005, but fails to disclose that these sales were pursuant to a 10b5-1 Plan on file with the SEC that predetermines stock sales so that he cannot be accused of making sell decisions based on inside information.

## II.    PLAINTIFF HAS NOT ALLEGED THAT ANY DIRECTOR FACES A SUBSTANTIAL LIKELIHOOD OF PERSONAL LIABILITY AND THEREFORE IS INTERESTED.

Plaintiff's Opposition asserts that she may satisfy pleading requirements and survive a motion to dismiss by simply raising a "reasonable doubt" as to a majority of the board's disinterestedness or independence.  Opposition at 22.  That is not the standard.  A shareholder is given the "keys to the courthouse" only in "an appropriate case where the claim is not based on mere suspicions or stated solely in conclusory terms."  *Id.* (citing *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996)).  This is not an "appropriate case."  As defendants discussed in their

3

Opening Memorandum, where, as here, no specific board action is challenged, to plead that a director has a disabling interest, a complaint must allege specific facts demonstrating that the director faces a substantial likelihood of personal liability in the present lawsuit. *Sachs v. Sprauge*, 401 F. Supp. 2d 159, 164 (D. Mass. 2005). Plaintiff's attempts to meet this standard are imaginative but patently inadequate. Defendants address each of the following contentions: (1) two directors made false statements and others signed their names to SEC filings incorporating them; (2) three directors served on Viisage's board's audit committee; (3) all directors must have known of the falsity of the Company's statements concerning its facial recognition technology and the Georgia driver's license litigation (including some not on the Board when they were made); (4) all directors are defendants in a class action lawsuit based, in part, on allegations similar to those alleged in the Amended Complaint; and (5) some directors engaged in insider sales of Viisage stock.

> **A.     Plaintiff's Allegations That The Directors Personally Made False Statements And/or Signed A Materially False SEC Report Or Served On The Board's Audit Committee Are Not Allegations That Any Director Faces A Substantial Likelihood Of Personal Liability And Therefore Is Interested.**

Plaintiff argues that each of the eight directors at issue face a substantial likelihood of personal liability based on their either having personally made a false statement or having signed various reports filed with the SEC, which reports contained false statements; however, she actually links only two defendants to identified false statements. She alleges that in 2002 defendant Berube made false statements concerning the efficacy of the face recognition technology, while in July 2004, defendant Bailey made false statements concerning Viisage's role in the Georgia driver's license contract litigation. Plaintiff cites no case, and defendants are aware of none, holding that mere misstatements, without allegations that they were knowingly or

4

recklessly made, subject the speaker to a substantial likelihood of personal liability. But, for purposes of this motion, it is sufficient to note that the allegation that Berube and Bailey made unrelated false statements (albeit two years apart), says nothing about the potential liability of Viisage's outside directors to Viisage about whom plaintiff alleges nothing explaining why they knew such statements were false. Because plaintiff bases her allegations of director interestedness on the substantial likelihood that a majority of the board faces personal liability for securities fraud, she must plead that fraud with the particularity required by Fed. R. Civ. P. 9(b), in addition to Fed. R. Civ. P. 23.1's requirement of allegations of particularized fact. *See, e.g., In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 63 (D. Mass. 1994); *In re White Elec. Designs Corp. Sec. Litig.*, No. CV04-1499PHX-SRB, 2006 U.S. Dist. LEXIS 6961, at *26 (D. Ariz. Feb. 14, 2006); *Taam Assocs., Inc. v. Housecall Medical Res., Inc.*, No. 1:96CV2214 A JEC, 1998 U.S. Dist. LEXIS 22372, at *40 (N.D. Ga. March 31, 1998); *In re Stratosphere Corp. Sec. Litig.*, No. CV-S-96-708-PMP, 1997 U.S. Dist. LEXIS 14621, at *20 (D. Nev. May 20, 1997). Clearly, she has failed to do so.

Plaintiff actually makes no serious argument that she has alleged particularized facts that any defendant knew of any fraud let alone the outside directors. Rather, she claims that all directors face a substantial likelihood of personal liability, and therefore are "interested" for the sole reason that they signed reports filed with the SEC. To support her argument, she cites *Fina v. Valarco Corp.*, No. 01-CV-030180263S, 2005 WL 3112894, at *7 (Conn. Super. Ct. 2005), an unpublished, Connecticut Superior Court decision. *Fina* purports to apply Delaware law, but cites none for its holding that merely alleging that a director signed an SEC report or served on a board's audit committee is sufficient to plead directorial interestedness. In *Fina*, the corporation in question was alleged (i) to have engaged in antitrust conspiracies extending over a four-year

5

period, (ii) to be subject to investigations for anticompetitive conduct in the United States, Canada, Europe and Japan, and (iii) to have already agreed to pay $57 million in fines. Plaintiff alleged that the company's financial statements were false and misleading because they failed to disclose the existence of an anti-competitive price fixing scheme implemented to obfuscate its deteriorating financial condition. *Id.* The court held that these allegations, coupled with allegations that a majority of the board either signed a false Form 10-K and/or served on the audit committee, was enough to plead interestedness. Presumably, the scope of the company's admitted criminal activity suggested to the trial judge that the board must have known about it. Nonetheless, the holding cannot be squared with Delaware or federal law, both of which require more to impose liability for allege misrepresentations. *See, e.g., Guttman v. Huang,* 823 A.2d 492, 507 (Del. Ch. 2003) (holding that demand was not excused as to company's audit committee members). To demonstrate a substantive likelihood of personal liability requires particularized pleadings demonstrating that the directors knew the financials were false or that they ignored numerous "red flags" that should have alerted them to the problem implying that they had abdicated their oversight responsibilities. *Id.* In any event, in this case there are no allegations of bad financial statements or criminal activity, or anything approaching them.

Nor do allegations that certain directors – Messrs. Nessen, Reilly and Levine – served on Viisage's audit committee serve as a proxy for the necessary particularized allegations of knowledge of fraud necessary to allege a substantial likelihood of personal liability and directorial interest. Plaintiff's reliance on *In re Taser Int'l S'holder Derivative Litig.*, No. CV-05-123-PHX-SRB, 2006 WL 687033 (D. Ariz. March 17, 2006), for this proposition is clearly misplaced. In *Taser*, the court did not, as plaintiff contends, hold that demand was excused because three out of four outside directors were on the audit committee and "could not possibly

6

approve" the company's press release and earnings guidance without knowing how the quarter was progressing. *See* Opposition at 25. That is some of what the plaintiff in *Taser* alleged, but not what the court based its ruling upon. In that case, plaintiffs also alleged material misstatements in press releases concerning a report on the safety of plaintiffs' only product -- a now infamous stun gun. Immediately following these press releases, defendants sold in the aggregate $88 million of stock. Defendants actually conceded the interestedness of the inside directors, and the Court held that three of the four outside directors, who sold 100% of their stock in Taser for a combined total of $13.4 million, were interested. *In re Taser*, 2006 WL 687033, at *9-10. The instant case is not remotely similar.

In fact, since every public company must have an audit committee and make SEC filings which their directors must sign, plaintiff's position in this case is really a claim that once one alleges that any officer has made a false statement, all defendants are, *a fortiori*, interested.

> **B.    Plaintiff's Allegations Concerning The Importance Of The Company's Face Recognition Technology And Georgia Driver's License Contract Are Not Enough To Plead That Any Director Faces A Substantial Likelihood Of Personal Liability And Therefore Is Interested.**

Because plaintiff did not (and cannot) plead particularized facts of the directors' knowledge of fraud, she attempts to do indirectly that which she cannot do directly. Instead of alleging particularized facts that any director knew of the falsity of any statement surrounding the Company's face recognition technology or Georgia driver's license contract, plaintiff asks the Court to infer such knowledge based on their importance to the Company. She relies on *In re Biopure Corp. Deriv. Litig.*, 424 F. Supp. 2d 305, 308 (D. Mass. 2006) for license to draw this inference. That case involved allegations that directors breached their fiduciary duties by wrongfully concealing the fact that the Food and Drug Administration had placed a clinical hold

7

on the Company's "principal product." *Id.* at 306. Acknowledging that a director's position alone cannot support an inference of knowledge of falsity, the court held that because the FDA's placing a clinical hold "on the company's principal product," was of such overwhelming significance to Biopure, it was adequate to allege a "sustained and systematic failure of the board to exercise oversight" and, therefore, raised a reasonable doubt that the directors' conduct was immunized by the business judgment rule. In consequence, demand futility was adequately pled. In this case, two alleged misstatements, made two years apart, neither of which went to core of Viisage's business prospects, are not equivalent to the conduct alleged in *Biopure*. Indeed, in the present case, the Amended Complaint does not even allege any adverse consequence to Viisage arising out Berube's alleged misrepresentation of the Logan Airport facial recognition test, which occurred five years ago. Nor has plaintiff been able to identify any adverse consequence to Viisage's business from the alleged failure properly to describe the Georgia litigation, other than being subject to a 10b-5 claim of potentially dubious merit.

> **C.    Plaintiff's Allegations That The Directors Are Defendants In A Securities Class Action Lawsuit Based On Similar Allegations To Those Made In This Case Are Not Enough To Plead That Any Director Faces A Substantial Likelihood Of Personal Liability And Therefore Is Interested.**

Merely being named as a defendant in a securities class action is not enough to give rise to a substantial likelihood of personal liability of any defendant in follow-on derivative litigation. See Opening Mem. at 28 (citing *Taddy v. Singh ("Primus")*, No. 1:04cv1051 slip op. at 16 n.13 (E.D. Va. December 8, 2004)). To avoid this, plaintiff cites cases involving egregious corporate wrongdoing and where accompanying securities class actions alleged fraud against defendants with such specificity and on such a grand-scale, often with significant associated insider trading, that courts found outside directors to be "interested" in the cognate derivative cases. For

8

example, *In re Cendant Corp. Derivative Litig.*, 189 F.R.D. 117, 124-25 (D. N.J. 1999), involved one of the most telling examples of corporate fraud pre-Enron. *Cendant* clearly does not hold that simply being named as a defendant in a securities litigation disables a director from considering a shareholder demand. In *Cendant*, the plaintiffs alleged, in part, that the audit committee was specifically informed that income was overstated by $23 million and could not be reconciled; that the accounting irregularities were so basic that they were discovered after one day of investigation; that the officers and directors were told that in excess of $100 million of income was non-recurring; that more than $200 million in adjustments were necessary to meet budget; and that 10 directors sold approximately 4 million shares. *Id.* By contrast, here, there was no restatement of any reported financial result and no allegation that any director was told that any financial reporting error of any kind had occurred. To the contrary, this case lacks allegations of any misstatement in any financial report prepared or filed by Viisage.[1]

The generalized allegations in the present case do not come close to those contained in *Fina, Taser, Biopure* and *Cendant*, where the adverse corporate event or financial fraud is of such a character or scope that a court concluded that members of the board or the audit committee must have known about it. Nor does this case allege massive trading by directors on the heels of fraudulent statements. If directors such as Mouchley-Weiss, Nessen and Levine are disabled from considering whether it is in the best interests of Viisage to pursue the claims asserted in this derivative action for the reason other than they are outside directors of a public company, then the demand requirement is effectually rendered a nullity. Moreover, in this case, if any two of them are disinterested, so is the majority of the Viisage Board, and the Court's

---

[1] *Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 275 (S.D.N.Y. 2006) is similar to *Cendant*. *Veeco* had a massive restatement of financials and engaged in repeated violations of federal export control laws, which continued after the audit committee was informed of their existence.

9

work is concluded. Nonetheless, in the following sections, defendants will demonstrate that all of the outside directors are disinterested.

> **D.**     **Plaintiff's Allegations Of Certain Directors' Financial Dealings With Or Concerning The Company Are Not Enough To Plead That Any Director Faces A Substantial Likelihood Of Personal Liability And Therefore Is Interested.**

Plaintiff argues that five directors – Messrs. Berube, Beck, Yon, Reilly and Levine – face a substantial likelihood of personal liability based on their financial dealings with the Company, primarily sales of Viisage stock and repayment to them by Viisage of loans, while they possessed material, non-public information. *See* Opposition at 20, 28-30. In an attempt to lower the pleading hurdle, plaintiff contends that "to adequately allege that a director is 'interested' in an insider trading claim, a plaintiff need only plead facts which support the inference 'that each sale by each individual defendant was entered into' on the basis of adverse, material non-public information and that the directors had either direct knowledge of this information or such knowledge can be imputed to them." Opposition at 29.

Even accepting, *arguendo*, this pleading standard, plaintiff has not adequately alleged that any of these directors knew that a material statement was false or facts from which that knowledge can permissibly be imputed at the time he sold stock. *See* 4-8, *supra.*

An examination of the alleged improper insider transactions themselves does not reveal the required particularized allegations necessary to allege a substantial likelihood of personal liability. Plaintiff relies upon defendant Beck's receipt of $779,779 in proceeds from the sale of shares in Viisage's August 2004 secondary offering, the receipt of Lau, a company controlled by defendant Berube, of the same sum, and open market sales of Viisage shares during the relevant period by Lau (worth nearly $3 million), Levine (worth $100,000) and Reilly (worth ($87,000). See Opposition at 20-21.

10

Entirely missing from the Amended Complaint are allegations of exactly when some of these directors sold shares, their trading history, or how many shares each director retained.

For example, plaintiff alleges that defendant Levine sold 13,500 shares of Viisage stock, sometime between May 17, 2004 and January 18, 2005. She does not even try to link any sale of any false statement. In fact, Levine sold stock in the fourth quarter 2004 and those sales were made pursuant to a pre-existing SEC Rule 10b5-1 trading plan adopted by Mr. Levine in 2002. *See* Baraniak Aff., Exhibit A (copies of Mr. Levine's Form 4's). The purpose of adopting a 10b5-1 trading plan is to avoid being accused of having "entered into and completed [a stock sale] on the basis of, and because of, adverse material non-public information." *See Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003) (the existence of a trading plan supports the reasonable inference that stock sales were "pre-scheduled and not suspicious."). Certainly, if plaintiff was able to review SEC Forms 4 to identify Mr. Levine's trades, she would have learned that they were made pursuant to a trading plan. Moreover, the amount of shares sold by Mr. Levine hardly qualify as unusual trading. Plaintiff chooses not to address the fact that Levine continued to own 51,545 shares and options to purchase 79,136 shares. *See* Baraniak Aff., Exhibit A, (copy of Mr. Levine's Form 4, dated December 17, 2004).

As to Mr. Beck, he sold no shares during the fourth quarter of 2004. Rather the only stock he is alleged to have sold (and in fact did sell) were the 141,778 shares that he was permitted to sell in the August 4, 2004 follow-on offering. Clearly, his decision to sell these shares was not tainted by inside information concerning misrepresentations of third quarter results announced in October. Even more notably, Mr. Beck held 5,217,873 shares during the "Relevant Period." This is scarcely an indication that Beck sought to profit from insider sales.

11

(Compare the stock sales by directors *Tower* and *Cendant*.) *See* Baraniak Aff., Exhibit B (copy of Mr. Beck's Form 4, dated December 30, 2004).

Similarly, plaintiff alleges that Mr. Reilly sold 10,000 shares, but fails to mention that he retained 17,577 shares and options to purchase 90,496 shares, and that Lau Technologies sold 522,380 shares, but fails to mention that it retained 5,533,592 shares. *See* Baraniak Aff. Exhibits C (copy of Mr. Reilly's Form 4, dated December 15, 2004) and D (copy of Lau Acquisition Corporation's Form 4, dated December 15, 2004). There are no allegations explaining why any of these stock sales represented unusual trading, and the undisputed fact that all defendants retained the vast majority of their shares in Viisage precludes the adverse inference that plaintiff asks the Court to draw from such sales as may have occurred in the fourth quarter.

The cases plaintiff cites in her Opposition make quite clear that not all insider sales are suggestive of personal liability. *See, e.g.*, *In re Polymedica Corp. S'holder Derivative Litig.*, No. 01-3446, 2002 WL 1809095, at *12 (Mass. Super. July 16, 2002) ("the mere allegation that a director traded stock does not establish a breach of the duty of loyalty."). A plaintiff "has . . . to go beyond mere cursory allegations of insider trading." *Zimmerman v. Braddock*, No. Civ. A. 18473-NC, 2005 WL 2266566, at *7 (Del. Ch. Sept. 8, 2005). As the court in *Zimmerman* explained,

> the Court must be careful not to leave the directors of Delaware corporations at risk of burdensome legal challenges whenever they sell stock in the corporation. There are incentive-based rationales as to why directors should be encouraged to invest in stock of the corporation. Not permitting directors adequate opportunities, however, to liquidate their holdings (or placing insider trading liability upon them without sufficient allegations of fault) destroys the very incentive that holding company stock provides directors.

*Id.* For this reason, plaintiff must allege particularized facts indicating that each selling defendant possesses non-public information and sold their shares because of that information.

Such allegations are entirely missing from both the Amended Complaint and Opposition. Plaintiff argues that defendant Berube knew of the falsity of the Company's statements by virtue of his position as Viisage's chairman. Opposition at 29. This is not enough, as plaintiff's own cases recognize. *See In re Biopure Corp. Deriv. Litig.*, 424 F. Supp. 2d 305, 308 (D. Mass. 2006). She also alleges that he had first hand knowledge of the falsity of Viisage's claims concerning its face recognition technology, but fails to advise the Court that the tests to which she makes reference occurred in 2002 – two and one-half years before the stock sales that she criticizes. This is because her face recognition misstatement claim added by the amended complaint is simply tacked onto the original allegations concerning events occurring in the late Fall of 2004.

The cases plaintiff relies on involve facts and sales very different from those alleged here. The court in *Zimmerman* held that "[w]hen the sheer size of the trades (collectively, approximately $248 million dollars) is combined with the Plaintiff's well-pled allegations of insider trading culpability, the Selling Defendants, for motion to dismiss purposes, can be viewed as facing substantial personal liability." *See Zimmerman*, 2005 WL 2266566, at *8. That court also noted that "[i]f the proceeds from the trades were not material to the directors, this would undercut suspicion of their trades and would frustrate the plaintiff's efforts to demonstrate that the loyalty of those directors is in doubt." *Id.* And in *Polymedica*, the plaintiff alleged that four of the six director defendants sold approximately $10 million of shares and that these sales were "not a part of any normal or regular pattern or practice." *Polymedica*, 2002 WL 1809095, at *10. In the instant case, neither the Amended Complaint nor Opposition contain similar allegations.[2]

---

[2] In *Takara Trust v. Molex, Inc.*, 429 F. Supp. 2d 960, 981 (N.D. Ill. 2006), the court based its finding that the stock sales were suspicious and therefore provided some support, insufficient by itself, for a finding of defendants' scienter necessary to state a claim under Section 10(b) of the Securities Exchange Act. The final case plaintiff relies

E.    **No Director Defendant Is Subject To A Substantial Likelihood Of Personal Liability Based Upon Abdicating Their Oversight Responsibilities.**

Unable to allege direct misconduct by any director, plaintiff falls back on an alternative argument that the directors' face a substantial likelihood of personal liability for breaching their duties of good faith and fair dealing because they entirely shirked their oversight responsibilities. She singles out in particular defendants Nessen, Reilly and Levine, all audit committee members, for breaching their oversight duties "by failing to ensure that the Company implemented effective internal controls over financial reporting." Opposition at 31-32. Moreover, plaintiff claims that the director defendants' unwillingness to take action against defendant Berube for his face recognition technology comments and alleged dealings with Piper Jaffrey constitutes a separate actionable abdication of responsibility. Plaintiff's allegations do not state a *Caremark* claim.

As explained in their Opening Memorandum, a *Caremark* claim is extremely difficult to allege. Since that Memorandum was filed, the Delaware Supreme Court has had occasion to revisit, reaffirm, and elaborate on the *Caremark* standard for liability. In *Stone v. Ritter*, 911 A.2d 362, (Del. 2006), the Delaware Supreme Court affirmed the dismissal of derivative action because the plaintiff failed to adequately plead demand futility. The Supreme Court commented that the Chancery Court described the derivative complaint as a "classic *Caremark* claim" based on alleged "ignorance of liability creating activity within the corporation." The Supreme Court took the occasion to restate what must be pled to adequately allege demand futility in this type of case:

---

upon, *Felker v. Anderson*, No. 04-0372-CV-W-ODS, 2005 WL 602974, at *3 (W.D. Mo. Feb. 11, 2005) applies Maryland, not Delaware law, and cites, without discussion or analysis, stock sales combined with other allegations as sufficient to allege directorial interest.

14

> *Caremark* articulates the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention. In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

*Id.* at 370. Plaintiff's allegations do not come close to meeting this standard. The Amended Complaint contains no allegations concerning what the directors knew about the internal controls or when, let alone that they purposefully ignored any red flags with respect to them. That they chose not to act upon unsupported allegations lodged against defendant Berube in an e-mail sent by a disgruntled investor, who simultaneously tried to extort $625,000 from Viisage, is hardly evidence that the directors consciously chose not to discharge their fiduciary responsibilities.

Each of the cases plaintiff cites as supporting this argument involve widespread and egregious financial reporting fraud. For example, in *In re Oxford Health Plans, Inc. Sec. Litig.*, 192 F.R.D. 111 (S.D.N.Y. 2000), the plaintiffs pleaded detailed facts demonstrating that the defendants were aware of the nature and magnitude of the company's computer problem and that its financial statements were based on inherently unreliable data, including that: (i) the CEO/Chairman was told by the chief information officer that the planned computer conversion could not be done reliably; (ii) defendants received a report from an outside consultant informing them that the computer system was deficient; (iii) defendants had a state insurance department report indicating that the company's internal controls and accounting practices were deficient; and (iv) defendants knew the system could not age the premiums receivable or unpaid claims. *Id.* at 114 (referring to *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 139 (S.D.N.Y. 1999)). The Court also makes reference to "allegations of misconduct in connection with the

15

knowing or reckless issuance of materially false statements concerning financial results and operations of the company." *Id.* at 117.[3]

Similarly, the facts pleaded in *In re Abbott Lab. Derivative S'holders Litig.*, 325 F.3d 795, 799-801 (7th Cir. 2003), contrast starkly with those in this case. In *Abbott*, the court excused demand where, over a six year period, the directors were aware that the FDA had inspected thirteen of the company's facilities, issued formal written warnings to the company, imposed a compliance program with which the company failed to comply (the noncompliance with which the company disclosed to the SEC), and prohibited the company from selling certain products and fined the company $100 million.

By contrast, here, we have no restatement, no particularized allegation of any falsely reported financial result, no allegation of regulatory problems. All we have is the Company's disclosure on March 2, 2005, that it had determined "in connection with the preparation of the Company's consolidated statements for the year ended December 31, 2004" that it "had an internal control deficiency that constitutes a 'material weakness' as defined by the Public Accounting Oversight Board's Accounting Standard No. 2" due to "insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters." Complaint ¶ 129. This deficiency did not give rise to any change in the Company's reported results. There is no allegation that any director was aware of it before it was disclosed and no allegation of the existence of any "red flag," let alone that such "red flag" was brought to the attention of any director or the audit committee. In *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003), the Court held that plaintiff failed to establish demand futility, even in the face of a restatement that covered three years of financial

---

[3] In this decision, Judge Brieant "assumes familiarity" with the complaint in the *Oxford Securities Litigation* and the magnitude of the Oxford financial fraud is not described in this opinion.

reports because, among other reasons, the complaint failed to plead that the audit committee members "devoted patently inadequate time to its work, or . . . had clear notice of serious accounting irregularities." So, too, does plaintiff fail to plead the audit committee's inattention to their duties.[4]

### III.  PLAINTIFF HAS NOT ALLEGED ANY DIRECTOR DEFENDANT LACKS INDEPENDENCE.

Plaintiff argues that she has also pled demand futility by alleging that the eight director defendants at issue were not independent. As defendants have explained in their Opening Memorandum at 31-32, a director lacks independence only when it is alleged that the director is so beholden to an interested director that he or she would be willing to risk his or her reputation rather than sue the interested director. *Id.* (citing *Beam v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004)). Here, plaintiff has not adequately pled that any director is interested nor that any such infected director dominated the rest of the board.

Plaintiff asserts that she has alleged "facts in the Complaint that demonstrate that Director Defendants Principato, Berube, Beck, Yon, Levine, Reilly, Nessen, Mouchley-Weiss and Bailey are not independent of other interested directors in particular Defendant Berube." Opposition at 37. She then goes on to reference a series of indirect relationships. Of Principato, she alleges merely that he serves as CFO of Lau Technologies, Viisage's largest shareholder. *Id.*

---

[4] The other cases cited by plaintiff to support their *Caremark* claim also lend no support. *Cendant* involved hundreds of millions of dollars in obvious accounting adjustments. *See In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 124-25 (D. N.J. 1999) and page 9, *supra*. In *Saito v. McCall*, No. Civ. A. 17132-NC, 2004 WL 3029876, at *7 (Del. Ch. Dec. 20, 2004), the court found well-pled facts that board members were aware of significant accounting irregularities, including specific information concerning $40 to $55 million of accounting issues. The court in *Felker v. Anderson*, No. 04-0372-CV-W-ODS, 2005 WL 602974, at *3 (W.D. Mo. February 11, 2005), found that the complaint there "particularly allege[d]" defendants were involved in the dissemination of false information and breached fiduciary duties. Finally, in *In re First Energy S'holder Derivative Litig.*, 320 F. Supp. 2d 621, 624 (N.D. Ohio 2004), demand was automatically excused as a matter of Ohio law, contrary to the Delaware law applicable here, because all of the directors were named in the complaint as wrongdoers *and* defendants.

17

She alleges that Berube is an Executive Vice President of Lau and its Chief Operating Officer and, with his wife, controls Lau. *Id.* Plaintiff, however, never connects the dots. Even if the Court were to infer that plaintiff is alleging that Principato was beholden to Berube, it would establish only a link between Principato and Berube, and this would disable Principato only if Berube were himself "interested." While such linkage itself seems strained, it clearly does not infect any other member of Viisage's thirteen member Board.

Plaintiff also cites a disclosure in Viisage's 2004 Form 10-K to the effect that "both Lau and Mr. Beck have a strong influence on matters requiring approval by our stockholders." *Id.* This is because they were the two largest stockholders of the company. Exactly how this equates to an allegation that defendants Berube or Beck controlled any other director is mystifying.

Finally, plaintiff relies once again upon the allegation that none of the directors took action against defendant Berube when an unidentified Source informed them of Berube's alleged wrongdoing (and attempted to extort $625,000) as indicia that they were controlled by Berube. *Id.* at 38. For the reasons given at page 15, *supra*, this allegation says nothing about any director's independence.

## IV.    PLAINTIFF HAS NOT ALLEGED THAT ANY DEFENDANT'S CONDUCT HAS CAUSED THE COMPANY DAMAGE.

Plaintiff cites the "unnecessary legal and auditors' fees" incurred in connection with the evaluation of the Company's deficient internal control processes" as causing damage to the Company. *See* Opposition at 33. Not only are such allegations insufficient, *see* Opening Memorandum at 26, but also the March 2, 2005 public statement, to which the Amended Complaint makes reference in support of this claim, is clear in stating that such fees were the result of Sarbanes-Oxley compliance protocols, not to correct misstated financials. Surely, plaintiff is not alleging that expenses incurred by Viisage to comply with Section 404 of the

18

Sarbanes-Oxley Act give rise to liability on the part of the board. *Contrast Cendant*, 189 F.R.D. at 125-26 (defendants' wrongdoing found to have cost company well over $500 million in out-of-pocket expenses, including over $100 million for audit committee investigation). Plaintiff also cites Viisage's exposure to "millions of dollars in liability for securities fraud" and the fact that it has, and will continue to, incur significant legal and investigatory expenses. Opposition at 33. She claims that such damages "pass muster under the notice pleading standards of Rule 8," *id.* (citing *Mehlenbacher v. Jitaru*, No. 04-CV-1118 (M.D. Fla. June 6, 2005)). *Mehlenbacher* could not be more inapposite. It applies an idiosyncratic Nevada rule that "[w]here the board participated in the wrongful act or is controlled by the principal wrongdoer, it is generally held that no demand is needed." This is not Delaware law. Further, these are not the allegations of this case. In *Mehlenbacher*, two inside directors caused the corporation "to issue them $40 million worth of stock" and the other directors, among other things, recommended that the shareholders ratify it.

## V.    DEFENDANTS CAN RELY ON THE EXCULPATORY PROVISION IN VIISAGE'S BY-LAWS FOR DISMISSAL OF PLAINTIFF'S CLAIMS.

Plaintiff makes two arguments with respect to the standard exculpatory provisions in Viisage's By-laws protecting them from monetary liability for breach of the duty of care. First, she argues that the exculpatory provision does not cover alleged misconduct involving an abdication of fiduciary responsibility. That is a tautology. To state a claim for monetary damages against a director with respect to a transaction in which he does not have a financial interest, one has to adequately allege an intentional failure to act in the fact of a known duty to act. *See Stone v. Ritter*, 911 A.2d at 370. For the reasons stated above, this Amended Complaint fails even to begin to adequately plead a conscious disregard of directors' duties.

19

Second, plaintiff contends that the exculpatory provision can be invoked only as an affirmative defense and thus it is inappropriate to consider it on a motion to dismiss. The case law, however, says otherwise. *See Malpiede v. Townson,* 780 A.2d 1075, 1092 (Del. 2001); *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. Civ. A. 20228-NC, 2004 WL 1949290, at * 9 n.38 (Del. Ch. Aug. 24, 2004).[5]

### VI.    CONCLUSION

For the foregoing reasons, as well as the reasons put forth in defendants' Opening Memorandum, defendants respectfully request that the Court dismiss plaintiff's Amended Complaint in its entirety and with prejudice.

> BERNARD C. BAILEY, PAUL T. PRINCIPATO,
> PETER NESSEN, THOMAS J. REILLY,
> DENIS K. BERUBE, BUDDY G. BECK,
> CHARLES E. LEVINE, WILLIAM K. AULET and
> HARRIET MOUCHLEY-WEISS
>
> By their attorneys,
>
> /s/ John R. Baraniak, Jr.
> Mitchell H. Kaplan (BBO #258940)
> John R. Baraniak, Jr. (BBO #552259)
> CHOATE, HALL & STEWART LLP
> Two International Place
> Boston, Massachusetts 02110
> (617) 248-5000

Dated: February 13, 2007

---

[5]  *McCall v. Scott*, 239 F.3d 808, 818 (6th Cir. 2001), a case cited by plaintiff, actually supports defendants' position on this issue, holding that exculpatory clauses can be considered on a motion to dismiss. *See, also, In re Ply Gem Indus., Inc. Shareholders Litig.*, No. Civ. A. 15779-NC, 2001 WL 755133, at *10 (Del. Ch. June 26, 2001).

## CERTIFICATE OF SERVICE

This is to certify that on February 13, 2007, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

William B. Federman
Stuart W. Emmons
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel.: (405) 235-1560
Fax: (405) 239-2112

and

Alan L. Kovacs (BBO #278240)
LAW OFFICE OF ALAN L. KOVACS
2001 Beacon Street, Suite 106
Boston, MA 02135
Tel.: (617) 964-1177
Fax: (617) 332-1223

**Attorneys for Plaintiff**

/s/ John R. Baraniak, Jr.
John R. Baraniak, Jr.