UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OLYMPIA LEVINSON STIEGELE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BERNARD C. BAILEY, PAUL T. PRINCIPATO, ) | |
| PETER NESSEN, THOMAS J. REILLY, DENIS ) | |
| K. BERUBE, BUDDY G. BECK, CHARLES E. ) | Case No. 05-10677 (MLW) |
| LEVINE, WILLIAM K. AULET, MARCEL YON, ) | |
| and HARRIET MOUCHLEY-WEISS. ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| VIISAGE TECHNOLOGY, INC., ) | |
| ) | |
| Nominal Defendant. ) | |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED DERIVATIVE COMPLAINT

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, WILLIAM K. AULET,
and HARRIET MOUCHLEY-WEISS

By their attorneys,

Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Christopher A. Edwards (BBO #640758)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

4240716v1

The Defendants submit this supplemental memorandum in response to the Court's August 8, 2007 order requesting citation to any cases relevant to the question of director independence with facts similar to those presented by the instant case. In large measure the allegations of the Amended Shareholder Derivative Action are "unusual" and therefore there are not any reported cases that have similar fact patterns. With respect to certain subsets of Plaintiff's allegations there are cases that have addressed somewhat similar circumstances. In this memorandum Defendants will attempt to identify these subsets and cite some recent cases that may assist the Court in considering their allegations.

A.    **A Brief Review of the Legal Standard.**

At the risk of repetition of matters previously briefed, Defendants submit that it is useful briefly to review the legal standard for director interestedness in cases, like this one, where the derivative claims asserted against the directors are for inaction or a failure of oversight, not for an identified business decision. In <u>Stone v. Ritter</u>, 911 A.2d 362 (Del. 2006), the Delaware Supreme Court recently reaffirmed this standard:

> 'the standards for determining demand futility in the absence of a business decision' are set forth in <u>Rales v. Blasband</u>' [634 A.2d 927 (Del. 1993)]. To excuse demand under <u>Rales</u> 'a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to demand.

<u>Id.</u> at 367.

As in <u>Stone</u>, in the present case,

> the plaintiff[] attempt[s] to satisfy the <u>Rales</u> test . . . by asserting that the incumbent defendant directors 'face a substantial likelihood of liability.'

<u>Id.</u>

1

> Critical to this demand excused argument is the fact that directors'
> personal liability depends on whether or not their conduct can be
> exculpated by the section 102(b)(7) [of the Delaware Corporate
> law, also contained in Viisage's charter]. Such a provision can
> exculpate directors from breach of the duty of care, but not for
> conduct that is not in good faith or a breach of the duty of loyalty.

Id.

Also, as in Stone, Plaintiff in this case seeks to hold the outside directors liable for acts of

others, namely Bailey's and Aulet's allegedly false Sarbanes/Oxley Section 302 certification.

And Stone's admonition quoted from the earlier seminal case, In re Caremark Int'l Inc. Deriv.

Litig., 698 A.2d 959, 971 (Del. Ch. 1996), also applies equally here:

> a claim that directors are subject to personal liability for [failures
> of oversight] is possibly the most difficult theory in corporation
> law upon which a plaintiff might hope to win a judgment.

Id. at 372.

A finding of substantial likelihood of personal liability also presupposes that the conduct

complained caused the corporation to suffer loss. Bad faith conduct that the occasions no injury

to the corporation cannot give rise to a claim that the corporation could assert, much less a

shareholder assert on its behalf -- derivatively.[1]

### B.   The Face Recognition Technology and Tipper Claims.

At pages 19-33 of the Complaint, plaintiff alleges that Defendant Dennis Berube

(formerly chairman of the Viisage Board) made a series of false statements concerning the

efficacy of Viisage's face recognition technology and the testing of that technology at Logan

Airport and elsewhere. In these pages, Plaintiff also alleges, frequently in some detail, how

Mr. Berube tipped an employee at Piper Jaffray, a securities brokerage firm, regarding inside

---

[1] See, e.g., In re Caremark Int'l, 698 A.2d at 971, "to state a claim for breach of the duty of oversight, a plaintiff must show that the directors either knew or should have known that violations of the law were occurring, they took no steps in a good faith effort to prevent or remedy the situation and *that such failure resulted in plaintiff's losses*." (emphases supplied)

information concerning Viisage, which this broker then used in trading for his clients' accounts. This conduct by Mr. Berube is alleged to have occurred in 2002 -- four years before Plaintiff filed the amendment to her original derivative Complaint which first added these claims.

The Plaintiff, however, fails to allege that any of the conduct described at pages 19-33 ever caused any loss to Viisage. For example, there are no allegations that Mr. Berube or Viisage was subject to investigation by the Securities and Exchange Commission or any other governmental or self-regulatory organization because of this alleged conduct. There are no allegations that any civil action was ever filed against Viisage, or anyone else, as a result of this alleged conduct. There are, in fact, no allegations that any defendant even knew about this supposed 2002 conduct, until the "source" emailed Peter Nessen -- after this litigation was filed. Compl. ¶147(o).[2]

Defendants are unaware of any case in which outside directors have been found "interested" as a result of alleged conduct that never gave rise to any loss on the part of the company and in which they are not alleged to have participated in any way. Indeed, Plaintiff does not identify which of the director defendants were even on the Board in 2002.

## C.    The Georgia Drivers License Litigation Claim.

At pages 33-68, Plaintiff repeats virtually verbatim the allegations made in the Class Action Complaint concerning Viisage's failure adequately to describe the proceedings brought by Viisage's competitor Digimarc against the Georgia Technology Authority and Georgia Department of Motor Vehicles Safety arising out of the award of a contract to Viisage to provide drivers licenses for the State of Georgia in its SEC filings and press releases. The damages that

---

[2] This was the same email in which the "source" demanded that Viisage pay him $625,000. See Transmittal Aff. of Baraniak in Support of Motion to Dismiss, Ex. C.

Plaintiff contends Viisage incurred as a result of these misstatements is the liability and expense associated with defending the federal securities laws class actions. Compl. ¶15.

Defendants are unaware of any case in which a derivative plaintiff has asserted that outside directors are interested, and demand on the Board excused, as a result of the language used by a corporation's officers to describe pending litigation against the company. Moreover, this Court has already ruled that the identical allegations in Class Action Complaint concerning the Georgia litigation failed to state a claim on which relief could be granted.

### D.    The Sarbanes/Oxley Section 302 Claims.

Plaintiff also parrots the claims asserted in the Class Action Complaint concerning the allegedly false certifications required by Section 302 of the Sarbanes/Oxley Act made by Defendants Bailey (Chief Executive Officer) and Aulet (Chief Financial Officer) in the Forms 10-Q filed by Viisage during 2004. See Compl. ¶¶84-85, 100, and 113. To review, in these Certifications, Bailey and Aulet, in words required by SEC regulations, certify their conclusions concerning the effectiveness of Viisage's "disclosure controls and procedures" as of the end of each quarter. As in the Class Action Complaint, the Derivative Complaint alleges that on March 2, 2005, Viisage announced that it would report that it had an "internal control deficiency that constitutes a "material weakness" because it had "insufficient personnel resources and technical accounting expertise within the accounting function to resolve non-routine or complex accounting matters." Compl. ¶129. The Derivative Complaint (like the Class Action Complaint) does not allege that any of Viisage's financial statements were ever inaccurate or incomplete in any way, but rather that the March 2, 2005 announcement demonstrates that the Section 302 Certifications were false when made. Compl. ¶137(f). There are no allegations in the Derivative Complaint regarding (a) information provided to the Board of Directors concerning Viisage's internal or disclosure controls, (b) the frequency with which the Board or

4

Audit Committee met to consider such controls or (c) the Board's exposure to any "red flags" which in any way suggested that Bailey and Aulet were acting in bad faith when they signed their Section 302 certifications.

Once again, the Defendants are not aware of any case in which a derivative complaint was premised on the making of an allegedly false section 302 certification or the report of a material weakness in internal or disclosure controls under Sarbanes/Oxley Section 404, let alone a case in which an outside director was found "interested," because his company had made SEC filings involving either.

There are, however, many cases involving far more serious failures of internal controls, where financial restatements and significant fines resulted, in which courts nevertheless concluded that the outside directors were disinterested and demand on the board was not excused, because the derivative complaint did not contain particularized allegations describing either (a) a sustained or systematic failure of the board to exercise oversight or (b) "Red Flags" of officer misconduct that the Board ignored. See Stone, 911 A.2d at 372-373. Here are three such recent cases.

- Stone v. Witter, supra: Nominal defendant AmSouth Bank Corporation paid $50 million in fines for operating an inadequate anti-money-laundering program and failing to file suspicious activity reports, an investigation concluded that AmSouth's internal compliance program lacked adequate board and management oversight, but board members still disinterested because no allegations of sustained or systematic failure of board to exercise oversight.

- In re Federal National Mortgage Association Securities, Derivative and ERISA Litigation, 2007 U.S. Dist. LEXIS 39348, *29-30 (D.C. May 31, 2007): Office of Federal Housing Enterprise Oversight finds that Fannie Mae misapplied generally accepted accounting principles, and had inadequate internal controls. Fannie Mae restates $9 billion in earnings and suffers hundreds of millions of dollars in losses. Plaintiff's allegations that outside directors lack independences because of substantial likelihood of liability for accounting violations insufficient because they do not adequately allege that "directors failed to implement internal controls" and/or "failed to monitor or oversee the system of oversight."

5

- *Ferre v. McGrath et al.*, 2007 U.S. Dist. LEXIS 29490, at *23 (S.D. N.Y. February 16, 2007) educational corporation found out of compliance with New York rules and regulations and to have engaged in corrupt admission policies but plaintiff failed to "allege a single particularized fact suggesting that directors were advised about "any red flags indicating misconduct and they were therefore "disinterested."

### E.    Membership in the Audit Committee.

Plaintiff seeks to establish disabling "interestedness" on the part of defendants Nessen, Reilly, and Levine because they are members of Viisage's audit committee. The Complaint does not, however, contain any particularized allegations of any kind concerning audit committee action or inaction, or exposure to Red Flags indicating some material problem with either internal or disclosure controls. Recent decisions have restated the principle that bald allegations of audit committee membership add nothing to a derivative complaint.

- *Ferre v. McGrath*, supra at 18. "Delaware public policy does not excuse director demand based on bootstrap allegations" regarding membership in the audit committee.

- *In re Coca-Cola Enterprises, Inc. Deriv. Lit.*, 478 F.Supp.2d 1369, 1378 (N.D. GA. 2007). "Courts applying Delaware case law have consistently held . . . that a director is not interested merely by virtue of sitting on an Audit Committee while the corporation faces accounting and audit irregularities. . . . Just as in a general failure of oversight claim, the Plaintiff must provide particularized allegations showing the information that the Audit Committee saw and upon which it failed to act. . . . Plaintiff has failed to allege the existence of any "red flags" that should have alerted these committee members to improprieties in [company's] reporting of finances." [internal citations omitted.]

- *In re IAC/Interactive Securities Litigation*, 478 F.Supp.2d 574, 674 (S.D. N.Y. 2007). Allegations of Audit Committee membership insufficient where plaintiffs "failed to plead with particularity what obvious signs were ignored or what additional measures the directors should have taken. . . . Plaintiffs do not . . . allege that directors' purported failure of oversight resulted in inaccurate financial statements that necessitated later restatements." [internal citations omitted.]

F.    **Outside Director Stock Sale.**

At pages 67-69, plaintiff alleges that Berube, Beck, Yon[3], Levine, and Reilly are interested because they sold Viisage stock.  What must be alleged for director trading to give rise to interestedness or a lack at independence is well established under Delaware law: "plaintiff . . . must allege with detail that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." Rattner v. Bidzos, 2003 Del. Ch. LEXIS 103.  This can be accomplished by allegations that describe the roles defendant played in the company and the information that would have come to him; the timing of trades and the temporal proximity to the receipt of alleged insider information; and whether these trades differed substantially from the defendants past trading practices.  See id.  There are no such allegations in this Complaint -- only a list of trades and dates.  Defendants are aware of no case where listing trade dates and nothing more has been found sufficient to establish that a director was "interested".  Here are some recent cases in which courts have rejected director trading as a means of establishing demand futility based conclusory allegations such as those found in the present Complaint.

- In re Coca-Cola Enterprises, Inc. Deriv. Ltd., supra at 1379-80.  Here the court rejected as wholly insufficient this conclusory allegation to establish director interestedness.

  > As a result of their access to and review of internal corporate documents, conversations, and connections with other corporate officers, employees; and attendance at management and Board meetings, each of the defendants knew the adverse, non-public information regarding improper accounting.

---

[3] Defendant Yon, who directed the trades by Odeon, was, in fact, only briefly a director following the sale of his company to Viisage and stepped down when Odeon sold the balance of its shares.  As noted in a prior brief, to counsel's knowledge, he was never served with a copy of the Amended Complaint.  In the Viisage class action plaintiff's counsel agreed to his dismissal.  See Order of February 27, 2007.

7

4240716v1

This passage is very nearly identical to the allegation employed by plaintiff in this case. See Compl. ¶147(a).

- In re IAC/Interactive Securities Litigation, 478 F.Supp.2d 574, 603-04 (S.D. N.Y. 2007). Court finds $40.6 million of trades do not establish interestedness because no allegations of unusual trading activity and possession of material, non-public information.

- Ferre v. McGrath, supra at 4. Court holds that absence of particularized allegations that outside directors were in possession of inside information concerning unsavory admission practices when they sold stock precludes a finding of interestedness.

Defendants offer an additional observation with respect to Levine's stock sales (which plaintiff even fails to date). As noted in defendants opening brief, these sales were made pursuant to a pre-existing 10b5-1 sales plan. Just as in In re IAC/Interactive, supra, plaintiff fails to acknowledge this in either her Complaint or her memoranda. And just as in In re IAC/Interactive, here too, because these "sales were part of a periodic divestment plan, the timing and amount of sale do not raise a strong inference of scienter." Id.

### G.    Director Independence

The Court's order asks for cases addressing directorial independence under facts similar to those alleged in the present case. "A director can be shown to lack independence when a plaintiff pleads facts that establish 'that directors are beholden to [the controlling person] or so under their influence that their discretion would be sterilized." In re Fannie Mae Der. Lit., supra, at *32, citing, Rales 639 A.2d at 636. Here the only allegations that one director controls another involves Berube and Principato, and arises out of their respective relationship to Lau Technologies, Inc., formerly Viisage's largest shareholder. See Compl. ¶ 20, 23 and 147(j) and (k). Leaving aside the question of whether these allegations are sufficient properly to allege that Berube "controls" Principato, the Complaint contains no other allegations that any director controls, or is controlled by, another director. (As of the date the amended complaint was filed,

8

Viisage had thirteen directors; as of the date of the original complaint, it had nine.) Therefore, even if Principato's independence from Berube is inadequate, there are no allegations effecting any other director. Defendants are aware of no cases where the lack of independence of one member of a nine or thirteen member board excused demand.[4]

Respectfully submitted,

BERNARD C. BAILEY, PAUL T. PRINCIPATO,
PETER NESSEN, THOMAS J. REILLY,
DENIS K. BERUBE, B.G. BECK,
CHARLES E. LEVINE, WILLIAM K. AULET,
and HARRIET MOUCHLEY-WEISS

By their attorneys,

/s/ Mitchell H. Kaplan
Mitchell H. Kaplan (BBO #258940)
John R. Baraniak, Jr. (BBO #552259)
Christopher A. Edwards (BBO #640758)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: August 10, 2007

---

[4] Plaintiff alleged that Berube (through his interest in Lau Technologies) and Beck controlled approximately 11.4% and 11.9% of Viisage's common stock, respectively. Compl. ¶147(m). While that may affect their ability to control matters requiring shareholder vote, it has nothing whatever to do with the independence of Viisage's directors. While the Complaint does not allege that their control of Viisage stock results in dominion over another director, it seems to imply that. In fact, Berube's and Beck's stock ownership is wholly unrelated to the independence of other outside directors. To defendants knowledge there is no case that has a contrary holding. See In re IAC/Interactive Corp., 478 F.Supp. at 600 ("Delaware courts have repeatedly held that majority voting power, without more, is not enough to 'strip the directors presumptions of independence and list their acts have been taken in good faith and in the best interests of the corporation.' Aronson, 473 F.2d at 815-16; see Stewart, 845 A.2d at 1051 (finding 94% voting power insufficient to rebut presumption of directors' independence).")

9